UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,

    Plaintiff,

v.                                         Case No. 4:18-cv-371-MJF

CHARLES D. MCCOY, *et al.*,

    Defendants.
_____/

## DECISION AND ORDER

In this civil action pursuant to 42 U.S.C. § 1983, Plaintiff is suing ten correctional officers. Plaintiff alleges that seven Defendants used excessive force and three Defendants failed to protect Plaintiff from the excessive use of force—all in violation of the Eighth Amendment. Defendants have moved for partial summary judgment. Plaintiff filed a response in opposition, Defendants filed a reply, and Plaintiff filed a surresponse. For the reason set forth below, Defendants' motion for summary judgment is granted as to Count One and with respect to Plaintiff's official-capacity claims as to Count Two and Three; but it is denied to the extent Defendants seek to preclude Plaintiff from recovering compensatory damages.[1]

---

[1] The parties consented to this court exercising jurisdiction in this case. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I. BACKGROUND

Plaintiff, a prisoner proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. He alleges that ten Defendants violated the Eighth Amendment. Specifically, in his second amended complaint, Plaintiff alleges the following claims:

- Count One: Defendant McCoy struck Plaintiff in the face with a weapon after McCoy sexually assaulted Plaintiff.

- Count Two: Defendants McCoy, Stephens, Williams, Shelton, McDonald, White, and Roe beat Plaintiff while he was restrained.

- Count Three: Defendants Holland, Cooley, and Johnson failed to intervene and protect Plaintiff when McCoy, Stephens, Williams, Shelton, McDonald, White, and Roe beat Plaintiff.

Doc. 90 at 11-12. For relief, Plaintiff seeks $2,000,000 per Defendant for pain, suffering, and permanent nerve damage. *Id.* at 12.

The information below is drawn from the evidence in the summary judgment record. When the parties offer conflicting accounts of the events in question, the undersigned "sets forth the facts, drawn from the evidence presented, in the light most favorable to the non-moving party." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021) (quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)). Matters stated

as "facts" for purposes of summary judgment review may, therefore, not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

A.     **Facts Drawn from Plaintiff's Second Amended Verified Complaint**

On April 13, 2018, the Florida Department of Corrections ("FDC") incarcerated Plaintiff at Jefferson Correctional Institution ("Jefferson C.I."). At approximately 10:30 a.m., Defendants conducted a search of the delta Dormitory.[2] During this search, McCoy determined that Plaintiff was not assigned to the delta Dormitory.

After McCoy conducted an initial search of Plaintiff, McCoy took Plaintiff into the bathroom for a strip search. Plaintiff alleges that Defendant McCoy "made noises of approval" as Plaintiff lifted his penis and testicles during the strip search and that McCoy "fondled the Plaintiff's penis" with a metal-detector wand. Plaintiff alleges that he felt uncomfortable and admits that he ran from McCoy. Plaintiff alleges that McCoy pursued Plaintiff, grabbed Plaintiff by the shoulder, and struck Plaintiff in the side of the head with the metal-detector wand. Plaintiff alleges that he evaded McCoy's grip and McCoy was injured during this scuffle.

Defendants Stephens, Williams, Shelton, McDonald, White, and Roe entered the bathroom area. McCoy told Defendants Stephens, Williams, Shelton, McDonald,

---

[2] It is unclear from the record if all ten Defendants were participating in the search of the delta Dormitory.

White, and Roe that Plaintiff had hit McCoy in the face. McCoy instructed Defendants to take Plaintiff down. Defendants converged on Plaintiff, and Plaintiff attempted to run towards Warden Holland and Defendant Cooley, who were standing in the doorway of the bathroom. Stephens, Williams, Shelton, McDonald, White, McCoy, and Roe forced Plaintiff to the floor and restrained his hands.

Once Plaintiff was retrained, McCoy allegedly ordered Stephens, Williams, Shelton, McDonald, White, and Roe to continue beating Plaintiff. Stephens, Williams, Shelton, McDonald, White, McCoy, and Roe punched Plaintiff in the face and head, threatened to drown Plaintiff in the toilet, and struck Plaintiff in the head and face with the metal-detector wand. Plaintiff states that he called for help from Defendants Holland, Cooley, and Johnson who were watching the incident. But these Defendants did not intervene. During the beating, Plaintiff lost consciousness.

After he regained consciousness, Shelton slammed Plaintiff's face into the wall approximately seven times. Stephens and Shelton then escorted Plaintiff to the medical department. During this escort, Shelton allegedly bent and twisted Plaintiff's wrist in an attempt to break Plaintiff's wrist.

**B.    Plaintiff's Medical Records**

After Defendants' use of force, Plaintiff received post-use-of-force examinations at both Jefferson C.I. and Union Correctional Institution. Both examinations revealed abrasions and lacerations on Plaintiff's back, chest, face, and

feet. Doc. 141-3 at 1, 4, 7. Additionally, Plaintiff complained of generalized pain, including pain in his back and head. *Id.* at 5. Plaintiff was prescribed over-the-counter pain medication and was directed to return to sick call if needed. Plaintiff did not seek additional medical care for the abrasions or lacerations, however.

Ten days after the use of force, on April 23, 2018, Plaintiff used "sick call" to complain of severe back pain. Doc. 154-1 at 151, 152-55. Medical staff prescribed ibuprofen and an analgesic balm. On May 11, 2018, medical personnel produced an x-ray image of Plaintiff's spine, which showed no abnormalities. Doc. 141-3 at 9; Doc. 154-1 at 122. The medical personnel directed Plaintiff to continue with his activities of daily living. Doc. 157-1 at 9.

The record reflects that for nearly three months Plaintiff did not seek additional medical treatment for back pain. Indeed, Plaintiff did not again sign up for sick call until August 9, 2018. On August 9, 2018, Plaintiff complained of moderate lower back pain. Over the course of two years, medical staff continued to treat Plaintiff for chronic lower back pain, which Plaintiff asserted was caused by the use-of-force incident. Medical staff diagnosed Plaintiff with chronic lower back pain and noted possible sciatic pain. Doc. 154-1 at 140. To alleviate the pain, medical staff prescribed Plaintiff over-the-counter medication, naproxen, and prednisone. Additionally, medical staff recommended stretching and exercise. *Id.* at 114-55.

C.     **Plaintiff's Disciplinary Report**

It is undisputed that after the April 13, 2018 incident, Plaintiff was convicted of a disciplinary report ("DR") for "battery or attempted battery of a correctional officer." The basis for this DR, as written by Defendant McCoy, is as follows:

> On 4/13/2018 at approximately 11:51am, while in the bathroom area of D dormitory of wing 2, I was conducting a strip search of inmate Cooper, Gregory DC# T57324 on suspicion of having contraband and being unauthorized in the Housing Unit. I instructed inmate Cooper to bend and cough which caused a cellular device to fall from his rectum. As I attempted to retrieve the cellphone from him, Inmate Cooper, with a closed fist suddenly struck me to my head and facial area and proceeded to a toilet stall. Inmate Cooper's attempt to flee was disrupted and he was redirected to the ground and placed in restraints.

Doc. 141-1 at 25. The disciplinary panel found Plaintiff guilty of the DR, and Plaintiff lost thirty days of good-time credit. *Id.* at 23-24.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the

case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

**A.     Summary Judgment for Defendants on the Official-Capacity Claims**

Plaintiff's second amended complaint does not specify whether Plaintiff is suing Defendants in their official or individual capacities. But in his response to Defendants' motion for partial summary judgment, Plaintiff states that he is asserting both official- and individual-capacity claims. Doc. 154 at 1 ¶ 5.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66

(1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997)). In other words, a suit against these Defendants in their official capacity is a claim against the FDC. Notably, the FDC is "a state agency that is clearly the equivalent of the State of Florida for Eleventh Amendment purposes." *Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996).

Generally, the Eleventh Amendment bars suits by an individual against a state, its agencies, and its employees unless Congress has abrogated the state's sovereign immunity, or the state has consented to suit. *See Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). Additionally, under *Ex parte Young*, an individual may sue state officers in their official capacities for prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Congress has not abrogated the states' sovereign immunity in actions under section 1983, and the State of Florida has not waived its immunity in section 1983 actions. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67-68 (1989). Plaintiff did not request any prospective injunctive relief. Accordingly, Plaintiff's official-

capacity claims are barred, and Defendants are entitled to summary judgment on these claims.

B.    <u>**Summary Judgment for Defendant McCoy on Count One**</u>

In Count One of his second amended complaint, Plaintiff asserts that McCoy "violated the Eighth Amendment after striking Plaintiff in the face with a weapon after [McCoy] sexually assaulted Plaintiff." Doc. 90 at 12. McCoy seeks summary judgment on this claim because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. Doc. 141 at 14-19.[3]

In *Heck v. Humphrey*, the Supreme Court "sought to 'avoid the problem inherent in two potentially conflicting resolutions arising out of the same set of events by foreclosing collateral attacks on convictions through the vehicle of a § 1983 suit." *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1192 (11th Cir. 2020). In *Heck*, the Supreme Court held that a district court must consider whether a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction" or sentence. 512 U.S. at 487. If so, the complaint "must be

---

[3] In response to Defendants' motion for partial summary judgment, Plaintiff argues that *Heck* does not bar his claim that Defendants continued to use force *after Plaintiff was fully restrained*. Doc. 150 at 23 ¶ 1. Plaintiff's claim that seven Defendants used excessive force after Plaintiff's hands were restrained is found in Count Two. Doc. 90 at 12. Defendants did not move for summary judgment on Count Two or Count Three based on *Heck* and its progeny.

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The Supreme Court extended this holding to claims brought by prisoners challenging prison disciplinary actions, even when the prisoner does not explicitly seek to restore his prison gain time or to otherwise shorten his sentence. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Thus, "[t]he *Heck* rule, as extended by *Edwards v. Balisok*, strips a district court of jurisdiction in a § 1983 suit brought by an imprisoned plaintiff 'if a judgment in favor of the plaintiff would necessarily imply the invalidity' of a punishment that 'deprive[d] him of good-time-credits.'" *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018) (quoting *Edwards*, 520 U.S. at 643). But "*Heck* bars a § 1983 suit only when it is a 'logical necessity' that judgment for the plaintiff in that suit would contradict the existing punishment." *Id.* at 1238; *see Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (rejecting the view that *Heck* applies to all suits challenging prisoner disciplinary proceedings). In other words, "[s]o long as there would still exist a construction of the facts that would allow the underlying [punishment] to stand, a section 1983 suit may proceed." *Dixon*, 887 F.3d at 1238 (citation and quotations omitted); *Sconiers v. Lockhart*, 946 F.3d 1256, 1269 (11th Cir. 2020).

Additionally, *Heck* may bar a prisoner's suit "if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his

[punishment was] based." *Dixon*, 887 F.3d at 1238 (citing *Dyer v. Lee*, 488 F.3d 876, 883 n.9 (11th Cir. 2007)). This "gloss on *Heck*" applies only in a narrow category of case "where the allegation in the § 1983 complaint is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success of the § 1983 suit itself." *Id.* Thus, "when a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply." *Id.*

A determination of whether a claim is barred by *Heck* turns on the plaintiff's allegations. Here, in Count One of his second amended complaint, Plaintiff alleged that during the strip search, McCoy "fondled" Plaintiff's penis with a metal detector and "made sounds of approval." Doc. 90 at 7 ¶ 10; *id.* at 12 (directing the court to paragraphs 10-12 of his statement of facts). Because Plaintiff felt violated and uncomfortable, he attempted to run away from Defendant McCoy. *Id.* at 8 ¶ 11. In order to stop Plaintiff from fleeing, McCoy grabbed Plaintiff's shoulder and struck Plaintiff in the head with the metal detector. *Id.* at ¶ 12.

It is undisputed that following McCoy's use of force in this incident, Plaintiff was convicted of a DR for "battery or attempted battery on a correctional officer." Doc. 141-1 at 23-27; Doc. 154 at 12 ¶ 7. Specifically, the DR stated that while McCoy was conducting a strip search of Plaintiff, "a cellular device" fell from

Plaintiff's rectum.[4] As McCoy attempted to retrieve the phone from Plaintiff, Plaintiff used closed fists to hit McCoy in the head and face. Doc. 141 at 27. Plaintiff then attempted to flee to the toilet area, but Plaintiff's attempt to flee was "disrupted" by correctional officers. *Id.* As a result of this conviction, Plaintiff lost thirty days of good-time credit. *Id.* at 23-24.

Plaintiff's allegations in Count One that he did not strike McCoy and that McCoy unprovokedly struck Plaintiff in the face necessarily are at odds with Plaintiff's conviction of the DR. Specifically, if a jury were to find in favor of Plaintiff that McCoy engaged in an unprovoked use of force, this would necessarily imply the invalidity of the DR and Plaintiff's loss of gain time.[5] *See Thore v. Howe*,

---

[4] During the investigation of the DR, Plaintiff asserted that it was tobacco wrapped in black tape—not a cell phone—that fell during the strip search. He conceded that he fled from McCoy and flushed the contraband down the toilet. Doc. 141-1 at 31.

[5] Although Plaintiff does not explicitly raise a claim of sexual assault in violation of the Eighth Amendment, such a claim would be barred by *Heck* insofar as it is inconsistent with his conviction of "battery or attempted battery on an officer." Furthermore, Plaintiff has not created a genuine issue of material fact as to whether a "sexual assault" occurred. "The 'sexual assault' of a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021). There are times when "prison officials have a legitimate penological purpose to touch a prisoner in what may be an invasive manner, and we also account for the deference owed to prison staff." *Id.* at 1197. The fact that a correctional officer made strange or "sexual" sounds during a strip search does not convert a search into a sexual assault. Plaintiff also has not created

466 F.3d 173, 181 (1st Cir. 2006). It also is undisputed that Plaintiff has not invalidated or overturned his conviction of this DR. Doc. 154 at 12 ¶ 7. McCoy, therefore, is entitled to summary judgment on Plaintiff's claim that McCoy "violated the Eighth Amendment after striking Plaintiff in the face with a weapon after [McCoy] sexually assaulted Plaintiff."

## C.     Defendant's Argument That Plaintiff Suffered Only *De Minimis* Injury

Defendants also seek summary judgment on Plaintiff's claims to the extent that Plaintiff seeks compensatory damages. They argue that Plaintiff's injuries are *de minimis* and therefore do not qualify for such relief.[6]

The Prisoner Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), was enacted in "an effort to stem the flood of prisoner lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). The PLRA states in part: "No Federal civil action may be brought by a

---

a genuine issue regarding whether McCoy had a legitimate penological purpose to strip search Plaintiff. Indeed, Plaintiff concedes that he had contraband secreted in his rectum, namely tobacco. Doc. 141-1 at 31. In Florida prisons, tobacco is contraband. *See* Fla. Admin. R. 33-401.401(6).

[6] Plaintiff argues that under *Hudson v. McMillian*, to state an Eighth-Amendment claim, he was not required to allege that he suffered a serious injury. Doc. 154 at 25 ¶¶ 7-13. Although this generally is an accurate summary of the law as to the elements of an Eighth-Amendment excessive-force claim, the PLRA bars compensatory damages for emotional and mental damages unless a Plaintiff establishes that he suffered a physical injury that is more than *de minimis*. *Pierre v. Padgett*, 808 F. App'x 838, 844 (11th Cir. 2020).

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). This provision does not preclude an award of compensatory or punitive damages in all cases in which a physical injury is lacking. *Hoever v. Marks*, 993 F.3d 1353, 1356 (11th Cir. 2021). Rather, section 1997e(e) precludes claims for damages "brought 'for mental or emotional injury . . . without a prior showing of physical injury.'" *Id.* at 1358 (quoting 42 U.S.C. § 1997e(e)). Thus, "the text of § 1997e(e) bars only requests for compensatory damages stemming from purely mental or emotional harms." *Id.*

The federal courts have not achieved a consensus as to any test to determine when a physical injury is greater than *de minimis*. *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020). But injuries that "attest to a routine discomfort associated with confinement" generally will be *de minimis*. *Id.* (first discussing *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003); then discussing *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999)).

The only issue remaining before this court is whether Plaintiff's chronic back pain, as alleged by Plaintiff, is more than a *de minimis* injury.[7] It is undisputed that

---

[7] Plaintiff also suffered lacerations, abrasions, and bruises on his back, chest, face, and feet. Plaintiff states that he also had pain in his hand. Plaintiff never sought

during both post-use-of-force examinations, medical staff indicated that Plaintiff had abrasions to his back. Doc. 141-3 at 1, 3-5; Doc. 154-1. Additionally, Plaintiff complained of pain in his back. Doc. 141-3 at 5.

On April 23, 2018—ten days after the alleged use of excessive force—Plaintiff used sick call to complain of severe back pain. Doc. 154-1 at 151, 152-55. His complaints caused medical providers to obtain x-ray images of Plaintiff's spine, which indicated no abnormalities. Doc. 141-3 at 9; Doc. 154-1 at 122. Medical personnel prescribed over-the-counter medication and directed Plaintiff to continue his activities of daily living that were not affected by the back pain.

Plaintiff did not seek additional treatment for back pain until August 2018. Plaintiff then repeatedly continued to seek treatment for his back pain, which he attributed to the excessive-use-of-force incident. In December 2018, medical staff diagnosed Plaintiff with chronic lower back pain, noting probable sciatic pain. Doc. 154-1 at 140. Plaintiff continued to seek treatment through at least January 2021. *Id.*

---

additional treatment for the laceration, abrasions, and bruises, and, after Defendants' use of force, Plaintiff sought treatment for his hand only one time. At that examination on April 23, 2018, Plaintiff did not complain of any pain, and there was no swelling or physical abnormalities. Doc. 154-1 at 149. Without further evidence to the contrary, these injuries are properly characterized as "*de minimis*." *Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (holding that a laceration on an inmate's forehead, several small abrasions and cuts, and a swollen right eye were *de minimis* injuries especially because there was no evidence of broken bones, additional injuries, or permanent pain).

at 125. To treat the pain, medical personnel prescribed naproxen, prednisone, Flexeril, and over-the-counter medication.[8] *Id.* at 114-55.

The evidence, viewed in its entirety, is sufficient for a reasonable jury to find that Plaintiff's alleged chronic back pain is not a "routine discomfort" generally associated with confinement. *Benoit v. Bordelon*, 596 F. App'x 264, 269 (5th Cir. 2015) (holding that the district court did not clearly err in finding that back pain, "which persisted at least a year, was more than de minimis"); *see generally Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996) (noting that the plaintiff's allegations that the use of force exacerbated his back injuries and the medical record corroborating the allegations was sufficient to constitute evidence of "more than a 'de minimis' injury").

Defendants argue that Plaintiff's back injury was *de minimis* because Plaintiff's x-ray images showed no physical abnormalities and Plaintiff did not seek medical treatment until he initiated this action. This indicates, Defendants argue, that Plaintiff was attempting to create medical evidence in anticipation of this litigation. Doc. 157 at 4. Plaintiff, however, provided evidence that he complained of back pain during the post-use-of-force examination and for at least two or three weeks

---

[8] Naproxen is a nonsteroidal anti-inflammatory drug similar to ibuprofen used to treat inflammation and pain in the body. Doc. 157-1 at 3 ¶ 14. Prednisone is a corticosteroid used to treat inflammation in the body. *Id.*

thereafter. For purposes of Defendant's motion for partial summary judgment, this court must accept Plaintiff's version of events. Additionally, medical staff suggested it was sciatic pain. Doc. 154-1 at 140.

Because Plaintiff has created a triable issue that his chronic lower back pain amounts to greater than *de minimis* physical injury, this court must deny Defendants' motion for partial summary judgment on this issue. *See Spears v. Jordan*, No. 3:19-CV-1072-BJD-JBT, 2021 WL 3471697, at *5 (M.D. Fla. Aug. 6, 2021) (denying summary judgment because the plaintiff sought treatment from medical providers on at least four occasions to address his multiple injuries, and the doctor ordered two x-rays); *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1378 (N.D. Fla. 2015) (denying summary judgment when plaintiff stated in his verified declaration that for several months plaintiff "suffered numbness in his right hand, left knee, and both feet" and "syncope episodes, for which he apparently is still being treated"); *Goodwin v. Hatten*, No. 1:07-cv-00123-MP-AK, 2010 WL 750290, at *5 (N.D. Fla. Mar. 1, 2010) (denying summary judgment on an excessive-force claim when plaintiff's medical records corroborated plaintiff's allegations of injury.

## IV. CONCLUSION

1. Defendants' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

2. Defendants are entitled to summary judgment on Plaintiff's official-capacity claims and as to Count One of Plaintiff's second amended complaint.

3. As to damages, Defendants' motion for partial summary judgment is **DENIED** to the extent Plaintiff has created a genuine issue regarding the magnitude of his injuries and can recover compensatory damages for emotional and mental injuries.

**SO ORDERED** this 25th day of January, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**