UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER, # T57824
     Plaintiff,

v.                        CASE NO.: 4-18-CV- 371- MW/MJF

CHARLES D MCCOY, ET .AL.,
_____ Defendant. _____ /

## PLAINTIFF'S STATEMENT OF FACTS

1. On April 13, 2018, at approximately 10:20-11:00 a.m., at Jefferson C.I., the plaintiff was in dormitory "D" as a visitor from another housing unit. The Defendants began conducting a mass search of "D" dorm while Plaintiff was still in the dorm. (See, Ex A, Pg 7)

2. Plaintiff informed Defendant McCoy that he was not assigned to "D" dorm and he was just visiting from another housing unit. Defendant McCoy strip searched the plaintiff resulting in no contrabands being found. (See, Ex A, Pg 7)

3. Defendant McCoy ordered Plaintiff to stand by the wall while the dorm was searched. (See, Ex A, Pg 7)

4. At an opportune time while an inmate had been stripped searched and all the time Officers' were busy in the search of the bedding area, Defendant McCoy

FILED USDC FLND TL
APR 18 '22 PM4:00



1

ordered the plaintiff to go back to the restroom area for a second strip search exclusive to the 2 parties, McCoy and Plaintiff. (See, Ex A, Pg 7)

5. During this suspicious 2nd strip search Defendant McCoy began making noises of approval at the plaintiff as he lifted his penis and testicles in compliance from the strip search protocol orders. As the plaintiff turn to squat and cough in compliance with the strip search protocol orders, Defendant McCoy order Plaintiff to turn back around at which point Defendant McCoy then used a metal detector wand to fondle the plaintiff's penis. (See, Ex A, Pg 7)

6. The plaintiff felt uncomfortable and violated. The plaintiff reacted by cursing at Defendant McCoy and fleeing from the bathroom area to report Defendant McCoy's actions while still naked. (See, Ex A, Pg 7)

7. Defendant McCoy pursued the plaintiff, grabbed him by the shoulder and struck the plaintiff in the side of the head and face with the metal detector wand. Plaintiff then shook Officer Defendant McCoy's grip and Plaintiff began calling out to the Warden for help.

8. Defendant Major Kenneth E. Stephens; Officer David Williams; Officer Joshua Shelton; Officer Jason McDonald; Officer Darren  White; Sgt Anthony Roe, entered the bathroom area at which point Defendant McCoy pointed at the plaintiff and stated to the other defendant's that the plaintiff had hit him and then ordered them to beat him up. (See, Ex A, Pg 18)

9. Defendant Major Kenneth E. Stephens; Officer David Williams; Officer Joshua Shelton; Officer Jason McDonald; Officer Darren  White; Sgt Anthony Roe, Sgt Charles D. McCoy then converged on the plaintiff with their fist in a manner to strike Plaintiff. Defendant McCoy still possessed the wand at this point (See, Ex A, Pg 18)

10. The plaintiff then witnessed Warden Heath Holland and Defendant Officer Vekeisha Johnson who was standing in the entry way of the dorm watching the incident. Officer Shanita Cooley was also witness to the incident. (See, Ex A, Pg 8)

11. The plaintiff was now in a state of panic and in fear for his life. He called to the Warden Heath Holland and attempted to run to him for help. (See, Ex A, Pg 8)

12. The plaintiff was then directed to the ground and placed in hand restraints by Major Kenneth Stephens; Officer David Williams; Officer Joshua Shelton; Officer Jason McDonald; Officer Darren White; Sgt Anthony Roe. (See, Ex A, Pg 8)

13. Once placed in hand restraints Defendant McCoy ordered the Defendant's to beat the plaintiff. At that point the plaintiff was lying on the ground with his hands restrained behind his back. (See, Ex A, Pg 8)

14. Looking back over his shoulder Plaintiff witnessed the following Defendant Officer Darren White stood on Plaintiff's feet holding him still. (See, Ex A, Pg 8)

15. Defendant Officer Jason McDonald straddled the plaintiff's thighs holding him still. (See, Ex A, Pg 8)

16. Defendant Sgt Anthony Roe began stomping and kicking the plaintiff in his side and back. (See, Ex A, Pg 9)

17. Defendant Officer David Williams then mounted the plaintiff's torso and continuously punched him in the face and head while screaming "Stop Resisting." (See, Ex A, Pg 9)

18. Defendant Major Kenneth Stephens then switched places with Defendant Officer David Williams and began punching the plaintiff in the face and head. Defendant Major Kenneth Stephens then stated that he would drown the plaintiff in the toilet. (See, Ex A, Pg 9)

19. Defendant Officer. Joshua Shelton then switched places with Officer Major Kenneth Stephens. Officer Joshua Shelton then began punching the plaintiff in his face and head. Finally Defendant McCoy then switched places with Officer Joshua Shelton and began striking the plaintiff in the head and face with metal wand. The plaintiff was beaten unconscious. (See, Ex. A Pg. 9)

4

20. Right before this vicious abuse of force, plaintiff witnessed Defendants Warden Heath Holland; Officer Shanita Cooley; Officer Vekeisha Johnson, watching as the Defendants began attacking Plaintiff. The plaintiff called out for help to Defendant Warden Heath Holland, Officer Shanita Cooley; Officer Vekeisha Johnson, at which they did not intercede to stop the attack on plaintiff. (See, Ex. A Pg. 9)

21. As the plaintiff began to regain consciousness he witnessed Defendants Warden Heath, Officer Holland, Officer Cooley, and Officer Johnson where all watching Plaintiff with astonished looks on their faces concerning how badly he was beaten.

22. Defendant Warden Heath Holland then walked into the bathroom and the plaintiff stated "Look what your officers' did to me." (See. Ex A Pg. 9)

23. Defendant Officer Joshua Shelton then told plaintiff to "Shut up" and repeatedly slammed Plaintiff's face into the wall approximately seven (07) times, in the presents of the Warden. (See EX. A Pg. 9)

24. Defendant Warden Heath Holland again did nothing to intervene. (See. Ex. A Pg. 9)

25. While being escorted to confinement by Defendant Major Stephens and Defendant Joshua Shelton attempted to break Plaintiff's wrist by bending it. (See Ex. A Pg. 10)

26. The plaintiff suffered serious, actual injury in the form of severe long lasting back pain; numbness in right wrist and hand; foot injury; burses to the face; abrasions to the face-left and right side of his back; lacerations to right cheek of face, left brow, upper and lower left chest; and discoloration to left ear.

27. The plaintiff asserts that he was in hand restraints and in submission to the orders of the Officers' when the force/attack was brought against him. There was no necessary means to bring physical force against plaintiff as no disorder or chaos was present once plaintiff was restrained. See, 33-602.210(2)(b) and (4) (b) 4. F.A.C.

28. The relationship between the need to use force and the amount of force actually used is atrocious as the minimal amount of force to step the plaintiff from running to the warden for help before he was in restraints.

29. Being that the physical force was brought against the plaintiff after the plaintiff was in hand restraints and in submission. The only reason to strike the plaintiff, and strike him repeatedly, taking turns, was to punish the plaintiff in a cruel and unusual form, maliciously and sadistically.

30. The threat the plaintiff posed to the defendant was in no way arguable to be even minimal at the time the physical force was used as the plaintiff was in hand restraints and on the floor and any reasonable Officer would never use any force in that situation. See, 33-208.002 (14) F.A.C.

6

31. No efforts were made in order to use less aggressive force.

32. Defendant Warden Heath Holland; Officer Shanita Cooley; Officer Vekeisha Johnson, must have known that the sanity of the plaintiff was at serious risk as their wanted plaintiff get beat by other staff.

33. Defendant Warden Heath Holland; Officer Shanita Cooley; Officer Vekeisha Johnson, as certified correctional officer under §942.131 Fla. Stat., knew that the type of force being used was against the law.

34. Defendant Warden Heath Holland; Officer Shanita Cooley; Officer Vekeisha Johnson, made no attempt to stop the breach of the public trust they were witnessing. They did not do anything.

35. The Defendant's fabricated the facts of the incident in order to have a viable excuse to have used excessive force. Defendant McCoy, Cooley and Johnson, alleged that the Plaintiff struck Defendant McCoy. (Exhibit B Pgs. 47, 52, 57, 6; Ex C Pg. 2, 8.)

36. All Defendants's, excluding Defendant Holland, alleged that the Plaintiff charged Defendants Williams and Shelton, in an aggressive manner and continued to combat/physically resist Defendants Williams and Shelton, once they allegedly took the Plaintiff to the ground. (Exhibit C Pgs. 1, 2, 3, 4, 6, 8, 10, 12, 14, 15, 16)

37. The following evidence will show that the allegations by the defendant's are fabricated.

38. Defendant McCoy wrote (3) three inconsistent statements on the day of the incident (4-13-18), fabricating the existence of a contraband cellular device and the allegation that he received his injury because Plaintiff struck him.

39. **First Statement**: Disciplinary report Statement of Facts for Disciplinary Report (DR) Log # 103-180585, Battery or Attempt Battery Correctional Officer "At 11:15 a.m., in the bathroom area I was conducting a strip search of inmate Cooper" "I instructed inmate Cooper to bend and cough which caused a cellular device to fall from his rectum, as I attempted to retrieve the cell phone from him, inmate Cooper, with a closed fist, suddenly struck me to my head and facial area and proceeded to a toilet stall. Inmate Cooper's attempt to flee was disrupted and he was redirected to the ground and placed in restraints." Written at 1:00 p.m. (Exhibit I Pg.1)

40. **Second Statement:** DR Statement of Facts for Log # 103-180586, Unauthorized Possession Cell/Wireless Device. "At 10:50 a.m. ... shower stall # 3, I began conducting a strip search of inmate Cooper, Gregory DC # T57324 when I observed inmate Cooper concealing a black flip style cellular phone located inside of his anal cavity. During the incident inmate Cooper proceeded to flee to toilet stall # 1 where he flushed the cellular device down the toilet." Written at 1:40 p.m. (Exhibit I Pg. 9-11)

41. **Third Statement:** Sworn Incident Report: "At approximately <u>10:49</u> <u>a.m.</u> "In shower stall # 5. Inmate Cooper then removed a cellular device, black in color flip style phone, from his anal cavity." "Inmate Cooper then struck me with a clenched fist." "I called out for assistance while inmate Cooper attempted to allude me. Inmate Cooper ran to the first toilet stall and flushed the cellular device down." (Exhibit C Pg. 2)

42. **In Statement #1**, McCoy alleged to instruct Plaintiff to bend and cough which caused a cellular device to fall from Plaintiff's rectum. In statement # 2, McCoy alleges to have merely observed the Plaintiff concealing a cellular device in his anal cavity. In statement # 3 McCoy alleges Inmate Cooper then removed a cellular device from his anal cavity.

43. In statement # 1, McCoy alleges that he is conducting the strip search in the bathroom area." In statement # 2 McCoy alleges that he is conducting the strip search in "Shower stall #3 "In statement # 3, McCoy alleges that he is conducting the strip search in "Shower stall # 5."

44. In statement # 1, McCoy alleges that the Plaintiff never made it to the toilet before he was placed in restraints <u>without</u> incident. **In statement # 2** , McCoy alleges that the Plaintiff made it to toilet stall # 1, where he flushed the cellular device down the toilet. He doesn't allege that the Plaintiff is placed in restraints, but will be placed in administrative confinement. **In statement # 3**

McCoy again alleges that Plaintiff flushed the cellular device down the first toilet, but again that Plaintiff is now redirected to the ground and placed in restraints, <u>with</u> incident.

45. Defendant McCoy is the only Defendant to allege that the Plaintiff was in possession of a cellular device. Not one of the other nine (9) Defendants alleged that Plaintiff possessed a cellular device or ran to flush a cellular device. (Exhibit C Pgs. 4-17)

46. Defendant's Shanita Cooley and Vekeisha Johnson are the only other Defendant's to allege that they witnessed Plaintiff strike Defendant McCoy as Defendant McCoy alleges. However, they never even come close to alleging that Plaintiff possessed a cellular device or ran to flush a cellular device. ( Exhibit C Pgs. 8-9; 12-13)

47. At trial under the preponderance of the evidence stand, evidence will prove Defendant McCoy has made three (3) prior inconsistent statements. This is fatal to his credibility. Moreover, both Defendant's Cooley and Johnson's statements will be introduced and admitted as admissible evidence to impeach Defendant McCoy's testimony and prove he falsified and fabricated all three (3) of his statement of the existence of a cellular device on Plaintiff's person during the strip search. Defendant McCoy's allegation is unsupported by Defendant's Cooley and Johnson's statements and his prior inconsistent statements.

48. Defendant Shanita Cooley alleges that she observed the Plaintiff strike Defendant McCoy in which she initiated an emergency call. Defendants Williams and Shelton enter the bathroom immediately. At no point in the statement does Defendant Cooley even insinuate that the Plaintiff possess a cellular device before he allegedly struck McCoy, nor does Defendant Cooley alleges that the Plaintiff ran to a toilet to flush anything after Defendant Cooley alleges that the Plaintiff struck McCoy. (Exhibit C Pg. 8, Exhibit B Pg. 56, Exhibit B Pg. 61)

49. Defendant Johnson also does not allege that the Plaintiff ever possessed a cellular device before or after allegedly striking McCoy or flushing anything in the toilet. (Exhibit C Pg. 12 Exhibit B Pgs. 46-51)

50. Plaintiff stated in his 1983 complaint that at time frame he attempted to elude Defendant McCoy's sexual assault, which corresponds with all Defendant statement's that as they entered the bathroom the plaintiff was attempting to elude McCoy. In conclusion, the evidence supports the Plaintiff's denial of ever possessing a cellular device. (Exhibit C Pg's 2-17)

51. The evidence also supports the Plaintiffs' denial of the allegations of assault on Defendant McCoy. Defendant McCoy alleges that the Plaintiff struck him one time, in his first and third statements. (Exhibit C. Pgs. 2-3)

52. Defendant Shanita Cooley alleges that she observed the Plaintiff strike Defendant McCoy one time, by the shower area, coinciding with Defendant

11

McCoy's incident report statement, both written on the same day. (Exhibit C Pg. 8, Exhibit C Pg. 2-3)

53. However, in her interrogatory response her coinciding statement begins to falter as the specificity of the location changes from one punch by the shower area, to one punch in the "bathroom area" (Exhibit B Pg. 57 Q # 5)

54. Ultimately, Defendant Cooley is asked "In which portion of the bathroom did you see the Plaintiff repeatedly strike Sgt. McCoy" to which she stated "Plaintiff was near the toilet stall". (Exhibit B. Pg.61 Q # 6)

55. Defendant Cooley contradicts herself by alleging that the Plaintiff struck Defendant McCoy one time by the shower area (Exhibit C, Pg. 8), one time in the "Bathroom area" (Exhibit B Pg. 56 Q # 5) and "Repeatedly" by the toilet. (Exhibit B Pg. 61 Q # 6) Plaintiff asserts that the bathroom (area) at J.C.I., is located in between the toilets and showers. No longer does Defendant Cooley coincide with Defendant McCoy (Exhibit C Pg. 2-3)

56. Defendant Vekeisha Johnson alleges to have entered the bathroom upon hearing Defendant McCoy's call for help. However, Johnson never alleges to have witnessed the Plaintiff strike Defendant McCoy in her sworn incident report written on the day of the incident. 4-13-18 (Exhibit C Pg. 12)

57. Defendant Johnson was asked what she witnessed in interrogatory questions to which she stated: "I witnessed the plaintiff fighting Sgt. McCoy. The

Plaintiff repeatedly punched Sgt. McCoy. Sgt. McCoy attempted to defend himself by holding his arms up in an attempt to block the Plaintiff's punches." (Exhibit B Pg. 47 Q # 5).

58. Defendant Johnson not only severely contradicts any other statement given by Defendants McCoy and Cooley, but also her sworn incident report, where she never alleges to have witnessed the Plaintiff strike McCoy.

59. To further prove that the allegations of assault on Defendant McCoy by the Plaintiff was fabricated: The Plaintiff called Defendants Johnson and Cooley as witnesses, on his behalf, to prove that he did not strike Defendant McCoy as Defendant McCoy allege in the disciplinary report. Defendants Johnson and Cooley signed witness statements, stating: "I agree with the statement of facts stated in the D.R. The D.R. statement of facts that Defendant Johnson and Cooley agreed with, is Defendant McCoy's 1st statement.

60. Defendant McCoy's 1st statement totally conflicts with all other statements given by Defendants Cooley and Johnson, but their unanimous agreement is an absolute fabrication. Defendant McCoy clearly states that he was conducting a strip search of the Plaintiff, the department does not allow female staff members to be present while male inmates are strip searched, furthermore, Johnson stated in her report on 4-13-18 (Exhibit C, Pg. 12) that she didn't enter the bathroom until after McCoy allegedly called for help. Johnson and Cooley didn't

agree to Defendant McCoy's statement of facts until 4-25-18 (12) twelve days after the incident ... for full DR investigation packet (Exhibit-I-Pg.1-15)

61.   The Plaintiff has sufficiently demonstrated with evidence, that all statements submitted by Defendants McCoy, Cooley and Johnson were fabricated and falsified. Plaintiff never struck Defendant McCoy nor possessed a cellular device.

62.   The Defendants (Excluding Defendant Holland as he never submitted an incident report) submitted sworn incident reports on 4-13-18 (day of incident). The incident reports are "cookie cutter" in format. Some of them saying the same statement, verbatim, as if the Defendants copied one another's statements. (See Exhibit C Pg. 4, Defendant Roe's report and Exhibit C Pg. 17, and Defendant Stephen's report). All of the Defendants states that the Plaintiff charged Defendants Shelton and Williams in an aggressive manner, Williams and Shelton gained control of the Plaintiff and redirected him to the ground were the Plaintiff continued to combat and physically resist Defendants Shelton and Williams. Prior to the alleged "aggressive stance and charge", all (9) Defendants state that the Plaintiff was given several verbal orders to cease his disorderly behavior. (Exhibit C., Pg. 2-17).

63.   The (9) Defendants that submitted incident report statements all possessed chemical agent O.C. dispensers. At no time during this incident did any

14

of the (9) Defendants utilize their O.C. dispensers as they were trained to do. (Exhibit C, Pg. 2-17) F.A.C. Ch. 33-602.210 (4)(b)4 states that at no time are officers allowed to use hands on physical force unless lesser means of force is first utilized. (ie. Chemical agents) (Exhibit H Pg. 3)

64. Defendants McCoy, Cooley and Johnson have already alleged to have witnessed the Plaintiff strike Defendant McCoy before Shelton and Williams enter the bathroom. During the alleged "several verbal orders to cease his disorderly conduct", all (9) Defendants had ample amounts of time to utilize their O.C. dispensers as they were trained to do, before using hands on physical force against the Plaintiff. This fact begins to diminish the credibility of the (9) Nine Defendants allegations that the Plaintiff charged Defendants Williams and Shelton and combated them physically.

65. Defendant Shelton is asked in interrogatory questions "At anytime did the Plaintiff strike you or Officer Williams, before during or after the restraint?" to which Shelton responds, "I do not recall the Plaintiff striking me or Officer Williams." (Exhibit B, Pg. 11 Q # 10)

66. Defendant Williams is asked in interrogatory questions " At anytime did the Plaintiff strike you or Officer Shelton, before, during or after the restraint? To which Williams responds, "I do not recall the Plaintiff striking me. I do not know if Plaintiff struck Shelton." Exhibit B., Pg.  18 Q # 10). This fact fully diminishes the

credibility of the (9) Nine Defendants allegations that the Plaintiff turned towards Defendants Shelton and Williams in an aggressive manner, charged them and combated them physically.

67. Defendant Warden Heath Holland is asked in interrogatory questions " What did you witness?" to which he states: " I heard a commotion from the bathroom. When I entered the bathroom, <u>Inmate Cooper was on the ground with his arms under his body resisting verbal commands to remove his arms and submit to hand restraints. Staff were able to quickly gain compliance with minimal force used.</u> (Exhibit B., Pg. 34 Q # 5). This fact also fully discredits the other (9) Nine Defendants allegations that the Plaintiff combated and physically resisted Defendants Shelton and Williams while on the ground.

68. Defendants Cooley and Johnson are both asked in interrogatory questions: "How did the Plaintiff sustain such severe injuries?" to which they both state: "I did not witness the restraint of the Plaintiff." (Exhibit B., Pg. 47 Q # 6 Johnson. Exhibit B., Pg. 57 Q # 6 Cooley). Proving that their original <u>sworn</u> incident report statements of having witnessed the Plaintiff as an aggressor in the incident, were fabricated/ falsified.

69. The Plaintiff has sufficiently demonstrated with evidence, that the allegations in the Nine (9) Defendants "Cookie Cutter" incident reports that the

Plaintiff was ever an "Aggressor" at anytime during the incident, are entirely fabricated.

70. After the initial beating in restraints, Plaintiff was escorted to the confinement by Defendants Stephens and Shelton. Defendant Shelton attempts to break the Plaintiffs writs. Plaintiff fell to the ground in pain. (Exhibit A., Pg. 9).

71. Defendants Stephens and Roe fabricated their version of the escort and alleged that the Plaintiff attempted to pull away from them causing them to redirect him to the ground. (Exhibit C Pgs 4-5; 16-17).

72. All (9) Nine Defendants again fabricated/falsify and manipulate the facts pertaining to the escort portion of their "Cookie Cutter" incident reports. (Exhibit C., Pg 2-17).

73. Defendants Stephens and Roe contradict their versions of the escort in interrogatory questions. Defendants Stephens is asked how he and Defendant Roe gripped the Plaintiff was redirected to the ground to which he states: " I believe we quickly maneuvered Plaintiff down to the ground using our body weight as leverage." (Exhibit B., Pg. 68 Q # 14). Defendant Roe is asked the same question to which he states: "Plaintiff threw his shoulder forward to try and snatch away from our grip. Plaintiff had to be taken down to the ground." (Exhibit B., Pg. 30 Q # 10).

74. Defendants Stephens and Roes are both asked how they gripped the Plaintiff during the escort to which they both state that they gripped the Plaintiff by the upper arms. (Exhibit B., Pg. 68 Q # 3 Stephens) (Exhibit B., Pg. 30 Q # 10 Roe). The Florida Department of Corrections considers this hold a "custodial grip" in compliance with F.A.C.

75. Video evidence shows the Plaintiff being escorted by his wrists, co berating Plaintiffs version of the escort and proving that Defendants Stephens and Roe, fabricated/ falsified and manipulated their version of the escort. (Video evidence Hotel entrance 03:381).

76. Defendant Stephens states in his incident report that he entered the bathroom upon hearing Defendant McCoy yell for help and alleges to have witnessed the entire incident from that point onward. (Exhibit C., Pg. 16).

77. After Plaintiff filed the 1983 complaint alleging that Defendant Stephens participated in the unlawful beating. (Exhibit A. Pg. 9 - # 22) Defendant Stephens denied ever entering the bathroom, conflicting with his previous incident report and proving that it was fabricated falsified and manipulated. (Exhibit B., Pg. 74).

78. Defendant Stephens later states that he did enter the bathroom saw the Plaintiff in a prone position on the ground, but did not witness the initial restraint. (Exhibit B., Pg. 6- Q # 51).

79. Defendant Warden Heath Holland, was fully aware that Defendant Stephens was inactive, documented, participant in the unlawful use of force. Defendant Holland allowed Defendant Stephens to sit over the review of the unlawful use of force, so that Defendant Stephens could destroy evidence and manipulate/fabricate and falsify the facts of the incident. (Exhibit F., Pg 1-3).

80. The colonel is the highest ranking security officer and is obligated by rank to sit over the review of all use of force incidents. Colonel Heather Hamlin was not allowed to review the incident. (Exhibit F., Pg. 1-3).

81. Defendant Stephens is asked during interrogatory questions: "Why were the photos destroyed before they could be attached to the incident report to be submitted to the office of the Inspector General?" to which he states: " I do not recall photographs of the Plaintiff because he was not injured." (Exhibit B., Pg. 68 Q# 15).

82. Video footage clearly shows Captain Barbra Brown taking multiple photographs of Plaintiff's injuries. (Hand held video camera at 09:18).

83. Defendant Stephens can be seen breathing heavily in a white shirt as he watches medical staff attend the Plaintiff's injuries (Fixed wing camera at 04:07) It is evident that Defendant Stephens destroyed the photographs of the Plaintiff's injuries taken at J.C.I. (Note: Existing photographs were taken at U.C.I.).

84. The Defendants give no explanation as to how the Plaintiff sustained his injuries. All (10) Defendants  claim that the minimum amount of force was used in the incident. (Exhibit C, Pg. 2-17) (Exhibit B., Pg. 10- Q # 6) (Exhibit B., Pg. 17 Q # 6) (Exhibit B., Pg. 3- Q # 5).

85. Furthermore, the following Defendants all alleged that at no time did any Defendant punch, kick or strike the Plaintiff in order to gain compliance of the Plaintiff during the restraint: (Holland – Exhibit B., Pg. 36- Q # 11) (Stephens Exhibit B., Pg. 66 Q # 7), (Williams Exhibit B., Pg. 17 Q# 7), (McDonald Exhibit B. Pg. 24 Q# 7), ( Roe Exhibit B Pg. 29 Q # 7), (Shelton Exhibit B., Pg. 11 Q # 7.).

86. The Plaintiff could not have sustained his injuries through "minimal force" and the extent of the Plaintiff's injuries goes beyond any reasonable injuries sustained during a lawful use of force. (Exhibit A. Pg., 18).

87. Defendants Johnson and Cooley are both asked in interrogatories: "How did the Plaintiff sustain such severe injuries?" to which they both state: "I did not witness the restraint of the Plaintiff." (Exhibit B., Pg. 47 Q# 6 Johnson) (Exhibit B., Pg. 57 Q# 6 Cooley).

88. Both Defendants naturally assume that the question refers to the restraint of the Plaintiff, but more importantly, it contradicts their sworn incident report statements where they claim to have witnessed the restraint of the Plaintiff. (Exhibit C., Pg 12-13 Johnson).

89. It can therefore be evidenced that the Plaintiff  sustained his injuries through an unlawful beating at the hands of the Defendants (Exhibit A., Pg. 1-13) ( Exhibit A ., Pg. 18).

90. Defendant Holland was permitted (11) eleven business days to turn over all evidence/information pertaining to the use of force to the Inspector General's Office. (Exhibit E., Pg. 32- Ch. 33-602.210(10)(a).

91. The incident took place on 4-13-18 but was not received by the Office of the Inspector General until (22) Twenty-Two business days had passed, on 5-15-18. (Exhibit F., Pg. 1-2).

92. Defendant Holland never requested an extension of time and no report was written as to why he violated the rule laid down in ch-33-602.210(10)(a) by exceeding the deadline to turn over all evidence and information to the I.G. by (11) eleven business days.

93. Defendant Holland falsified a memo to the I.G. stating  that the use of force was in compliance with F.A.C. and that all information evidence, had been forwarded to the I.G. on 5-3-18  (Exhibit F., Pg 4).

94. It has been evidenced that the evidence and reports were not received in the Inspector General's Office until 5-15-18, 13 days past 5-3-18 but there is no way that Defendant Holland could have reviewed the evidence pertaining to the incident by 5-3-18 as he alleges in his memorandum to the I.G. because all video

evidence was still in the possession of Defendant Stephens on 5-3-18 and was not reviewed by Defendant Holland until 5-10-18. (Exhibit F., Pg. 5-8).

95. Defendant Holland could not have reviewed the use of force and submitted everything to the I.G. as he alleges. Defendant Holland allowed Defendant Stephens to falsify the incident report by allowing Stephens to state that the initial review of the use of force was reviewed by Colonel Heather Hamlin on 4-17-18. Defendant Stephens scratched her name out on the report and writes in his name in place of hers (Exhibit F., Pg. 3).

96. Colonel Heather Hamlin never wrote a report pertaining to the use of force. Defendant Stephens falsely states that the Colonel reviewed the use of force initially on 4-17-18, but that date does not coincide with the date documented on the chain of custody form for the video evidence that alleges Colonel Hamlin reviewed the video evidence on 4-20-18 (Exhibit F. , Pg. 5-8).

97. If the court will observe the date written on the video evidence chain of custody. You will notice that the dates for Colonel Heather Hamlin do not match up, but that Defendant Stephens falsified the chain of custody documents. The handwriting is identical down to Defendant Major Kenneth Stephen possession of the video evidence. (EX. F. Pg 5-8). During the Plaintiff's medical exam at J.C.I., Captain Barbara Brown photographs the Plaintiff's injuries. Captain Brown can be

viewed taking the photos on the hand held video evidence. See Defendant (Exhibit D. at 9:18, 10:01, 10:23)

98. These photos were not attached to the incident report that was sent to the inspector generals office on 5-15-18 because Defendant Stephen's destroyed them.

99. Defendant Stevens is asked, "Why were the photos destroyed before they could be attached to the incident report to be submitted to the office of the Inspector General?" Defendants Stephens responded." I do not recall photographs of Plaintiff because he was not injured." (See Ex. B Pg.68 Q# 15).

100. The Plaintiff's injuries can be seen multiple times throughout the hand held video evidence. See Defendant's (Ex. D form beginning to end).

101. Defendant Stephens not only signed of on the video evidence chain of custody document stating that the he reviewed the hand held video evidence (See Ex. F. Pg 3) and (Ex. F Pg 5-8) but can clearly be seen on video breathing heavily as he watches medical staff clean the plaintiff wounds. Defendant Stephens is a white male wearing a white shirt. See (EX.      Hotel Fixed Wing Video at 04:07).

102. Officer Shannon Broxie recorded the plaintiff as he was escorted to the transport van. During the escort multiple inmates whom witnessed the unlawful beating are yelling and shouting at the Defendants, making statements such as "I saw you beat that man while he was cuffed". The video would have shown the identities of these witnesses. This video was destroyed as well.

103. The only evidence that the Plaintiff can provide that the video existed is the procedure laid down in Ch-33.602.210 use of force (4)© video recording Protocol 1 General a.- which states : video recordings of use of force incidents shall continue uninterrupted from commencement of recording until the situation is stable and under control and the inmate is placed in an secure cell or transport vehicle for transfer (Ex. H Pg.4) 33-602-210 (4)(c) 1-9.

104. Upon arriving at U.C.I., staff immediately begin recording the Plaintiff as the van pulls up to the unit. The Plaintiff is in such sever pain due to his injuries, he has to be helped out the van and into the unit. During the escort U.C.I members are blatantly making jokes about how badly U.C.I staff beat the Plaintiff. One staff member stated "Damn1 That's how the officers at Jefferson get down?" While another one stated, " They called before hand and said they put the boots to your ass but I didn't think it was this bad".

105. This video was also destroyed. However, the Plaintiff can provide documentation that this video existed. In his Mins report, Lt. Myles J. Sapp stated that Plaintiff was placed under video surveillance upon entering U.C.I. up until he was secured in a cell. (See Ex C-Pg1).

106. Defendants use their own "cookie cutter" formatted statements as their only evidence to attest to their version of events.

24

107. Plaintiff has already proven that Defendant Major Kenneth Stephens falsified his incident report. Defendant Anthony Roe's incident is literally word for word verbatim. The only variance in the reports is their names. See Stephen's report at (Ex C-Pg 16-17) and Defendants Roe's report at (Ex C-Pg 4-5).

108. To reiterate, in defendant Roe's incident report he states that he observed Plaintiff take an aggressive stance and charge Defendants Shelton and Williams to which he was redirected to the ground and placed in restraints.

109. In Defendant Anthony Roe's Interrogatory responses he is ask what took place during the incident to which he states: "I did not see the initial altercation, but Sgt. McCoy was standing to the side bleeding from his head. Plaintiff was restrained by officers. Officers Williams and Shelton escorted Plaintiff out of the restroom." See (Ex-B- Pg 29-Q#5).

110. Defendant Roe's statement in Interrogatories that Plaintiff was merely restrained by officers proves that his incident report statement that Defendants use as evidence in Ex. B of their motion, was falsified.

111. Pertaining to the excessive force utilized in the bathroom: Defendants Shelton and Williams statements are verbatim except for name variances. In their incident reports, they both sate that the plaintiff charged them in an aggressive manner & continued to combat them while on the ground. (Ex. C- Pg 6-7 Williams) (Ex C-Pg 14-15 Shelton).

112. Defendant Warden Health Holland clearly stated in interrogatories: "Inmate Cooper (Plaintiff) was on the ground with his arms under his body resisting commands to remove his arms and submit to hand restraints. Staff were able to quickly gain compliance with minimal force used."

113. Defendant Holland's statements proves that Defendants Shelton and Williams incident report statements were falsified. Defendants use Shelton and Williams incident reports as evidence in their motion at (Ex. B-1-20).

114. Defendant's Shanita Cooley & Vekeisha Johnson both claim to have witnessed the Plaintiff charge Defendants Shelton & Williams, and the restraint of the Plaintiff, in their incident reports. (Ex. C-Pg 8-9 Cooley (Ec Pg-12-13 Johnson).

115. Defendant Health Holland states in his answers to Plaintiff's 2nd amended complaint, "Johnson & Cooley were not standing in the entry way, or the bathroom during the restrain". Ex B-Pg 74 par. #25).

116. Defendants Cooley & Johnson both state in interrogatories: I did witness the restraint of the Plaintiff" (Ex B Pg 58 Q#13, Q#14, Cooley) Ex B Pg 49 Q#13, Q#14 Johnson).

117. As to Plaintiff striking Def. McCoy, Plaintiff agrees that McCoy was injured, but not because he struck him. Defendants use McCoy's statements as "fact" that Plaintiff struck him. Defendants McCoy, (Ex C Pg 2-3) Vekeisha

Johnson, (Ex-C- Pg 12-13, Q#5) and Shanita Cooley, (Ex C Pg 8-9) (Ex B Pg 57 Q#5,) (Ex B-Pg 61 Q#6).

**WHEREFORE** Plaintiff respectfully submits this Statement of Facts in response to the order of the Court.

Respectfully Submitted,

/s/ _____
Gregory B Cooper, DC # T57324
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, Florida 32348
(Plaintiff *pro se*)

### Unnotarized Oath

I declare under the penalty of perjury that I have read the foregoing petition, that I understand the English language and the contents of the petition and that the facts as stated are true and correct.

_____
Date

/s/ _____
Gregory B Cooper, DC # T57324
(Plaintiff *pro se*)

### CERTIFICATE OF MAILING

I certify that I place this Statement of Fact in the hands of Taylor Correctional Officials for mailing to the Northern District of Florida Clerk of the

Court, and Joe Belitzky, counsel for defendants, Office of the Attorney General, the Capital, PL-O1 Tallahassee Florida 32399-1050, on this _____ day of _____ _____ 2022.

/s/ _____
Gregory B Cooper, DC # T57324
(Plaintiff *pro se*)

Gregory Cooper T57304
Taylor Correctional Institution
8501 Hampton Springs Rd.
Perry, FL 32-348

Exhibits,
Split
in
both
Envelopes.

APR 1 8 2022

Clerk
U.S.D.C. Northern District of Florida
Tallahassee, Div. & Div.
U.S. Courthouse 111 N. Adams St.
Suite #322
Tallahassee, FL 32301

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION



US POSTAGE
ZIP 32348
02 4W
0000359797
$ 009.25
APR 13 2022