UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER, # T57824
      Plaintiff,

v.                           CASE NO.: 4-18-CV- 371- MW/MJF

CHARLES D MCCOY, ET .AL.,
_____Defendant._____/

## **PLAINTIFF'S LIST OF EXHIBITS**

Exhibit-A-Pg.1-1B—Civil Rights Complaint

Exhibit-B-Pg.1-76—Defendant's Interrogatory Questions

Exhibit-C-Pg.1-17— Defendant's Incident Report

Exhibit-D-Pg.1-44—Plaintiff's Medical Records

Exhibit-E-Pg.1-15—Miscellanous Grievances about document through FDOC
                Administration
Exhibit-F-Pg.1-8—Miscellaneous Incident Report documents

Exhibit-G-Pg.1-9—F.A.C. 33-601.314--Rules of Prohibited Conduct

Exhibit-H-Pg.1-20—F.A.C. 33-602.210—Rule for Use of Force

Exhibit-I-Pg.1-15—Plaintiff's Disciplinary Report

Exhibit-J-Pg.1-77—Inspector General Investigations

Exhibit-K-Pg.1-11—Plaintiff's Exhaustion of Administrative Remedies



**WHEREFORE** Plaintiff respectfully submits his list of exhibits he intends to introduce and admit at trial

Respectfully Submitted,

/s/ _____

Gregory B Cooper, DC # T57324
Taylor Correctional Institution
8501 Hampton Springs Road
Perry, Florida 32348
(Plaintiff *pro se*)

## CERTIFICATE OF MAILING

I certify that I place this List of Exhibits in the hands of Taylor Correctional officials for mailing to the Northern District of Florida Clerk of the Court, and Joe Belitzky, counsel for defendants, office of the Attorney General, the Capital, PL-01 Tallahassee Florida 32399-1050, on this ___12th___ day of ___April___ 2022.

/s/ _____

Gregory B Cooper, DC # T57324
(Plaintiff *pro se*)

2

2 AMENDED COMPLAINT



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

GREGORY B. COOPER _____,

Inmate ID Number: T57324 _____,

v.                                          CASE NO: 4:18-cv-371-MW/MJF

SERGENT CHARLES D. McCOY _____,

OFFICER SHANITA COOLEY _____,

OFFICER VEKIESHA JOHNSON _____,

WARDEN HEATH HOLLAND _____,

MAJOR KENNETH E. STEPHENS _____.

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

OFFICER DAVID WILLIAMS          SERGENT ANTHONY ROE

OFFICER JOSHUA SHELTON

OFFICER JASON McDONALD

OFFICER DARREN WHITE

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

PROVIDED TO FRANKLIN C.
FOR MAILING ON

10 / 2 / 2019

INMATE INITIALS G.C.

FILED USDC FLND TL
OCT 9 '20 PM4:15

Exhibit A-Pg 1

I.    **PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:     GREGORY BRIAN COOPER
Inmate Number          T57324
Prison or Jail:        FRANKLIN CORR. INST.
Mailing address:       1760 HIGHWAY 67 NORTH
                       CARRABELLE, FLORIDA
                                      32322

II.   **DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>**every**</u> Defendant:

(1)   Defendant's name:    CHARLES D. McCOY
      Official position:   SERGENT
      Employed at:         Jefferson C. I.
      Mailing address:     1050 BIG JOE RD.
                           MONTICELLO, FLORIDA

(2)   Defendant's name:    OFFICER SHANITA COOLEY
      Official position:   OFFICER
      Employed at:         Jefferson C.I
      Mailing address:     1050 BIG JOE RD.
                           MONTICELLO, FLORIDA

(3)   Defendant's name:    VEKIESHA JOHNSON
      Official position:   OFFICER
      Employed at:         Jefferson C.I.
      Mailing address:     1050 BIG JOE RD.
                           MONTICELLO, FLORIDA

**<u>ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS</u>**

2

Exhibit A Pg 2

HEATH HOLLAND
WARDEN
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

DARREN WHITE
OFFICER
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

KENNETH E. STEPHENS
MAJOR
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

JASON MCDONALD
SERGENT
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

DAVID WILLIAMS
OFFICER
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

JOSHUA SHELTON
OFFICER
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

ANTHONY ROE
SERGENT
JEFFERSON C.I.
1050 BIG JOE ROAD
MONTICELLO FLORIDA

Exhibit A Pg3

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

### IV.   PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( )          No( ✓ )

1.   Parties to previous action:
   (a)   Plaintiff(s): N/A
   (b)   Defendant(s): N/A
2.   Name of judge: N/A          Case #: N/A
3.   County and judicial circuit: N/A
4.   Approximate filing date: N/A
5.   If not still pending, date of dismissal: N/A
6.   Reason for dismissal: N/A
7.   Facts and claims of case: N/A

**(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )          No( ✓ )

1.   Parties to previous action:
   a.   Plaintiff(s): N/A
   b.   Defendant(s): N/A
2.   District and judicial division: N/A
3.   Name of judge: N/A          Case #: N/A
4.   Approximate filing date: N/A
5.   If not still pending, date of dismissal: N/A
6.   Reason for dismissal: N/A

3

Exhibit A Pg 4

7.   Facts and claims of case: _N/A_ _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( )                    No( ✓ )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.   Parties to previous action:
   a.   Plaintiff(s): _N/A_ _____
   b.   Defendant(s): _N/A_ _____
2.   District and judicial division: _N/A_ _____
3.   Name of judge: _N/A_ _____   Case #: _N/A_ _____
4.   Approximate filing date: _N/A_ _____
5.   If not still pending, date of dismissal: _N/A_ _____
6.   Reason for dismissal: _N/A_ _____
7.   Facts and claims of case: _N/A_ _____

_____

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )                    No( ✓ )

1.   Parties to previous action:
   a.   Plaintiff(s): _N/A_ _____
   b.   Defendant(s): _N/A_ _____
2.   District and judicial division: _N/A_ _____
3.   Name of judge: _N/A_ _____   Case Docket # _N/A_ ____
4.   Approximate filing date: _N/A_ ____   Dismissal date: _N/A_ ____
5.   Reason for dismissal: _N/A_ _____

4

Exhibit A pg 5

6.   Facts and claims of case: N/A _____

_____

**(Attach additional pages as necessary to list cases.)**

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

\* PERTAINING TO THE LIST OF JOHN DOE DEFENDANTS \*

1). PLAINTIFF HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES IN ATTEMPTION, TO OBTAIN CRITICAL INCIDENT REPORTS, USE OF FORCE REPORTS, DISCIPLINARY INVESTIGATIVE REPORTS, STATMENTS OF WITNESSES, PHOTOGRAPHS OF PLAINTIFFS INJURIES AND MEDICAL RECORDS TO NO AVAIL.

2). IN REQUESTING THESE DOCUMENTS THROUGH THE GRIEVANCE PROCESS, PLAINTIFF STATED THAT HE WAS FILING 1983 CIVIL RIGHTS COMPLAINT FORM, PLAINTIFF SPECIFICALLY STATED THAT HE NEEDED ALL NAMES OF PRISON OFFICIALS INVOLVED IN THE USE OF FORCE INCIDENT TO ATTACH TO THE CIVIL RIGHTS COMPLAINT

3). PLAINTIFF WAS TOLD IN THE GRIEVANCE RESPONSE THAT THE DEPARTMENT OF CORRECTIONS WOULD NOT PROVIDE THAT INFORMATION WITHOUT A COURT SUBPOENA. PLAINTIFF SENT A REQUEST TO THE INSPECTOR GENERAL'S OFFICE REQUESTING THE IDENTITIES OF THE OFFICERS INVOLVED. A INSPECTOR STATED IN HER RESPONCE TO THE REQUESTS FOR DOCUMENTS AND INFORMATION MUST BE OBTAINED THROUGH ADMINISTRATIONS (WHOM INITIALLY DENIED PLAINTIFFS REQUESTS WITHOUT A COURT SUBPOENA.

4). PLAINTIFF HAS COPIES OF ALL REQUEST AND GRIEVANCES INQUIRING ABOUT THE IDENTITIES OF THE OFFICERS INVOLVED TO SUBMIT TO THE COURT AT THE COURTS DISCRETION.

5). TO APPEASE THE COURT, PLAINTIFF WILL AGAIN SUBMIT A GRIEVANCE REQUEST TO ADMINISTRATIONS IN AN ATTEMPT TO OBTAIN THE IDENTITIES OF THE OFFICERS INVOLVED IN THE USE OF FORCE INCIDENT.

5

Exhibit A Pg 6

6). PLAINTIFF WOULD LIKE TO ADVICE THE COURT THAT IT TAKES UP TO (90) NINTY DAYS TO RECEIVE A FINAL ANSWER ON ALL GRIEVANCES AND THAT THE COURT DID NOT AFFORD THE PLAINTIFF ENOUGH TIME TO AGAIN ATTEMPT RETRIVAL OF THE IDENTITIES OF THE OFFICERS INVOLVED TO ATTEMPT TO THE AMENDMENT OF THIS COMPLAINT.

7). AGAIN, THE DEPARTMENT OF CORRECTIONS HAS STATED THAT THE IDENTITIES OF THE OFFICERS INVOLVED WILL ONLY BE RELEASED TO THE PLAINTIFF PER A COURT SUBPOENA. PLAINTIFF COULD UNCOVER THE IDENTITIES OF ALL JOHN DOE DEFENDANTS THROUGH A SUBPOENA FOR PRODUCTION OF DOCUMENTS AND DISCOVERY. PLAINTIFF COULD THEN AMEND THE COMPLAINT FORM WITH THE PROPER NAMES OF ALL JOHN DOE DEFENDANTS.

## * PERTAINING TO THE INCIDENT *

8). ON APRIL 13 2018 AT APROXIMATELY 10:30 AM WHILE PLAINTIFF WAS BEING HOUSED AT JEFFERSON C.I. THE DEFENDANTS CONDUCTED A SEARCH OF A DORMITORY WHERE THE PLAINTIFF WAS VISITING. PLAINTIFF INFORMED DEFENDANT MCCOY THAT HE DID NOT RESIDE IN THAT DORMITORY. DEFENDANT MCCOY THEN CONDUCTED A STRIP SEARCH OF THE PLAINTIFF. DEFENDANT MCCOY DID NOT FIND ANY CONTRABAND AND ORDERED PLAINTIFF TO STAND BY THE OFFICERS STATIONS.

9). AFTER ALL OTHER INMATES HAD BEEN STRIP SEARCHED AND PLACED IN THE DAY ROOM AND ALL OTHER OFFICERS WHERE INVOLVED IN THE SEARCH, DEFENDANT MCCOY APPROACHED THE PLAINTIFF AND DIRECTED HIM INTO THE BATHROOM WHERE NO ONE ELSE WAS PRESENT, TO BE STRIP SEARCHED A (2ND) SECOND TIME.

10). DURING THE STRIP-SEARCH, DEFENDANT MCCOY BEGAN MAKING NOISES OF APPROV-AL AS THE PLAINTIFF LIFTED HIS PENIS AND TESTICLES IN COMPLIANCE WITH THE STRIP-SEARCH. AS THE PLAINTIFF TURNED TO SQUAT AND COUGH IN COMPLIANCE WITH THE STRIP-SEARCH, DEFENDANT MCCOY TOLD THE PLA-INTIFF TO TURN BACK AROUND. DEFENDANT MCCOY THEN USED A METAL DETECTOR WAND TO FONDLE THE PLAINTIFFS PENIS.

Exhibit A - Pg 7

11). THE PLAINTIFF FELT UNCOMFORTABLE AND VIOLATED. THE PLAINTIFF CURSED AT DEFENDANT McCOY AND WHILE STILL NAKED, THE PLAINTIFF ATTEMPTED TO RUN OUT OF THE BATHROOM AND REPORT DEFENDANT McCOY'S ACTIONS TO THE WARDEN, WHOM WAS PRESENT IN THE DAY ROOM

12). DEFENDANT McCOY PURSUED THE PLAINTIFF, GRABBED HIM BY THE SHOULDER AND STRUCK THE PLAINTIFF IN THE SIDE OF THE HEAD AND FACE WITH THE METAL DETECTOR WAND, PLAINTIFF THEN SPUN OUT OF DEFENDANT'S GRIP

13). AS A RESULT OF THE COMMOTION AND THE PLAINTIFF'S CALLS TO THE WARDEN, DEFENDANTS MAJOR- KENNETH E. STEPHENS, OFFICER- DAVID WILLIAMS, OFFICER- JOSHUA SHELTON, OFFICER JASON McDONALD, OFFICER- DARREN WHITE, SERGEANT- ANTHONY ROE, ENTERED THE BATHROOM, DEFENDANT McCOY POINTED AT THE PLAINTIFF, STATED TO THE OTHER DEFENDANTS THAT THE PLAINTIFF HAD HIT HIM, AND ORDERED THEM TO BEAT HIM.

14). THE DEFENDANTS MAJOR- KENNETH E. STEPHENS, OFFICER- DAVID WILLIAMS, OFF.- JOSHUA SHELTON, OFF.- JASON McDONALD, OFF.- DARREN WHITE, SERGEANT- ANTHONY ROE, SGT.- CHARLES D. McCOY THEN CONVERGED ON THE PLAINTIFF WITH THEIR FIST'S IN A MANNER TO STRIKE THE PLAINTIFF, DEFENDANT McCOY STILL POSSESSED THE WAND AT THIS TIME.

15). THE PLAINTIFF THEN WITNESSED DEFENDANTS WARDEN- HEATH HOLLAND AND DEFENDANT OFF.- VEKEISHA JOHNSON STANDING IN THE ENTRY WAY TO THE BATHROOM WATCHING THE INCIDENT, DEFENDANT OFF.- SHANITA COOLEY WAS ALSO WITNESSED WATCHING THE INCIDENT TAKE PLACE BY THE PLAINTIFF.

16). OUT OF FEAR OF THE DEFENDANTS, PLAINTIFF AGAIN BAILED TO WARDEN- HEATH HOLLAND AND ATTEMPTED TO RUN TO HIM FOR HELP.

17) THE PLAINTIFF WAS THEN DIRECTED TO THE GROUND AND PLACED IN RESTRAINTS BY DEFENDANTS, MAJOR- KENNETH E. STEPHENS, OFF.- DAVID WILLIAMS, OFF- JOSHUA SHELTON, OFF.- JASON McDONALD, OFF.- DARREN WHITE SERGEANT- ANTHONY ROE, ONCE PLAINTIFF WAS PLACED IN RESTRAINTS, DEFENDANT McCOY AGAIN ORDERED THE DEFENDANTS TO BEAT THE PLAINTIFF, AT THIS TIME THE PLAINTIFF LAYING ON THE GROUND WITH HIS HANDS RESTRAINED BEHIND HIS BACK

18). PLAINTIFF LOOKED BACK AND WITNESSED THE FOLLOWING: DEFENDANT DARREN WHITE STOOD ON THE PLAINTIFF'S FEET HOLDING HIM STILL.

19) DEFENDANT OFF.- JASON McDONALD STRADDLED THE PLAINTIFF'S THIGHS HOLDING HIM STILL.

(7)

Exhibit A- Pg 8

20). DEFENDANT SERGENT ANTHONY ROE BEGAN STOMPING AND KICKING THE PLAINTIFF IN THE SIDES AND BACK.

21). DEFENDANT OFFICER DAVID WILLIAMS THEN MOUNTED THE PLAINTIFF'S TORSO AND CONTINUOSLY PUNCHED HIM IN THE FACE AND HELD WHILE SCREAMING "STOP RESISTING".

22). DEFENDANT MAJOR KENNETH STEPHENS THEN SWITCHED PLACES WITH DEFENDANT DAVID WILLIAMS AND BEGAN PUNCHING THE PLAINTIFF IN THE FACE AND HEAD, DEFENDANT MAJOR KENNETH STEPHENS THEN STATED THAT HE WOULD GOING TO DROWN THE PLAINTIFF IN THE TOILET.

23). DEFENDANT OFFICER JOSHUA SHELTON THEN SWITCHED PLACES WITH DEFENDANT MAJOR KENNETH STEPHENS, OFFICER JOSHUA SHELTON BEGAN PUNCHING THE PLAINTIFF IN HIS FACE AND HEAD

24). FINALLY DEFENDANT MCCOY THEN SWITCHED PLACES WITH DEFENDANT JOSHUA SHELTON AND BEGAN STRIKING THE PLAINTIFF IN THE HEAD AND FACE WITH THE METAL DETECTOR WAND, UNTILL THE PLAINTIFF WAS KNOCKED UNCONSCIOUSNESS.

25). RIGHT BEFOR DEFENDANTS. KENNETH STEPHENS MAJOR, DAVID WILLIAMS OFFICER JOSHUA SHELTON, JASON MCDONALD, DARREN WHITE-OFFICER, SERGENT ANTHONY ROE AND DEFENDANT MCCOY COMMENCED IN THE UNLAWFUL BEATING, PLAINTIFF WITNESSED DEFENDANTS WARDEN-HEATH HOLLAND, SHANITA COOLEY-OFFICER, VEKIESH JOHNSON-OFFICER, WATCHING. AS THE DEFENDANTS BEGAN ATTACKING PLAINTIFF, PLAINTIFF CALLED OUT FOR HELP TO DEFENDANT WARDEN HEATH HOLLAND, SHANITA COOLEY, VEKIESH JOHNSON, THE LATTER DEFENDANTS DID NOTHING TO INTERVENE IN THE UNLAWFUL BEATING OF THE PLAINTIFF

26). WHEN THE PLAINTIFF BEGAN REGAIN CONSCIOUSNESS. DEFENDANT WARDEN HEATH HOLLAND, COOLEY AND JOHNSON WHERE ALL STARING AT THE PLAINTIFF WITH ASTOUNDED LOOKS ON THEIR FACES AT HOW BADLY THE PLAINTIFF WAS BEATEN.

27). DEFENDANT WARDEN HEATH HOLLAND THEN WALKED INTO THE BATHROOM THE PLAINTIFF STATED "LOOK WHAT YOUR OFFICERS DID TO ME".

28). DEFENDANT OFFICER JOSHUA SHELTON THEN TOLD PLAINTIFF TO "SHUT UP" AND REPEATEDLY SLAMMED PLAINTIFFS FACE INTO THE WALL APPROX. (7) SEVEN TIMES, WHILE IN THE PRESENCE OF THE WARDEN.

29). DEFENDANT WARDEN HEATH HOLLAND AGAIN DID NOTHING TO INTERVENE

30). WHILE BEING ESCORTED TO CONFINEMENT BY KENNETH STEPHENS-MAJOR AND JOSHUA SHELTON OFFICER, SHELTON ATTEMPTED TO BREAK PLAINTIFFS

Exhibit A-Pg 9

WRIST BY BENDING IT

31) PLAINTIFF SUFFERED (1) SEVERE SWELLING AND BRUISING, FROM THE LEFT SIDE OF HIS HEAD TO THE FRONT OF HIS FACE; (2) A LACERATION ABOVE HIS LEFT EYE; (3) LACERATIONS AND BRUISING ON HIS RIGHT CHEEK AND EYE; (4) SEVERE BRUISING DOWN HIS BACK AND, RIBS SHINS, AND TOES; AND (5) NERVE DAMAGE IN HIS SPINE AND WRIST.

32) ALL DEFENDANTS ACTED WHILE UNDER COLOR OF STATE.

Exhibit A-Pg

STATEMENT OF CLAIMS CONTINUED

DEFENDANT MCCOY- PARAGRAPH 24
DEFENDANT #2 MAJOR KENNETH E. STEPHENS          PGH - 22
DEFENDANT #3 OFFICER DAVID WILLIAMS             PGH - 21
DEFENDANT #4 OFFICER JOSHUA SHELTON             PGH - 23, 28, 30
DEFENDANT #5 OFFICER JASON MCDONALD             PGH - 18
DEFENDANT #6 OFFICER DARREN WHITE               PGH - 19
DEFENDANT #7 SERGENT ANTHONY ROE                PGH - 20


3) DEFENDANTS #1 WARDEN HEATH HOLLAND, SHANITA COOLEY AND VEKIESHA
JOHNSON VIOLATED THE EIGHTH AMENDMENT BY FAILING TO INTERVENE AND
STOP THE OTHER DEFENDANTS FROM UNLAWFULLY BEATING THE PLAINTIFF.
REFER TO STATEMENT OF FACTS FOR THE FOLLOWING:

DEFENDANT #1 WARDEN HEATH HOLLAND          PGH - 15, 16, 25, 26, 27, 28, 29
DEFENDANT      SHANITA COOLEY              PGH - 15, 25, 26
DEFENDANT      VEKIESH JOHNSON             PGH - 15, 25, 26


Exhibit A- Pg 11

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

*All defendants acted under color of state law*

1) Defendant McCoy violated the Eighth Amendment by striking the plaintiff in the face with a weapon after he sexually assaulted the plaintiff. See paragraph 10, 11, 12 of statement of facts

2) Defendants McCoy, Stephens, Williams, Shelton, McDonald, White, Roe all violated the 8th Eighth Amendment by maliciously and sadistically beating the plaintiff while he was restrained; refer to statement of facts for the following;

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

Plaintiff request monetary relief in the amount of $2,000,000 per defendant for pain, suffering and permanent nerve damage.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

10-2-20
(Date)

(Signature of Plaintiff)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 2nd day of October, 20 20.

(Signature of Plaintiff)

Revised 03/07

Exhibit A - Pg 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE
FOREGOING, Amended MOTION FOR CIVIL RIGHTS COMPLAINT FORM HAS BEEN
GIVEN TO THE EMPLOYEES AT FRANKLIN CORR. INST. (MAIN UNIT)
LEGAL MAIL FOR THE PURPOSE OF MAILING VIA U.S. MAIL TO:
LORI HUSKISSON SENIOR ASSISTANT ATTORNEY GENERAL, OFFICE OF ATTORNEY
GENERAL, THE CAPITAL PL01 TALLAHASSEE, FLORIDA 32399-1050 AND
THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT TALLAHASSEE DIVISION
U.S. COURT HOUSE, 111 N. ADAMS ST. SUITE #322 TALLAHASSEE FLORIDA
32301-7730

/s/ _____

GREGORY B. COOPER
DC#T57324 G1150L
FRANKLIN CORR INST
1760 HIGHWAY 67 NORTH
CARRABELLE FLORIDA 32322-2157

10-2-20
DATE

Exhibit A - Pg 13



EX. A Pg 14



ExA Pg 15



Ex A Pg 16



Ex A. Pg 17



EX A. Pg 18

40

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
    **DC# T57324,**
    Plaintiff,

**v.**                             **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

    Defendants.
_____/

## DEFENDANT CARTER'S RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

    **Charles McCoy** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

    1.   Identify and attach a copy of any and all documents showing who was on duty in Delta Dorm Side 2 at Jefferson Correctional Institution on April 3, 2018, during a mass shakedown and strip search in the bathroom where the incident occurred involving several officers and the plaintiff.

    **Objection:** Defendant objects to this interrogatory to the extent that it requires the Defendant to produce documentation through an interrogatory.

    **Objection:** Defendant objects to the release of confidential security

1

Exhibit B- Pg 1

information.   Officer duty log documents contain security sensitive information, for example, they show the movement of security personnel, equipment and other security checks.

**Response:**  Notwithstanding the above stated objections, to the extent that the Plaintiff is requesting the identification of documents which indicate employees on duty that information is contained in the officer duty logs.

2. Upon the beginning of your shift, were you issued a O.C. spray dispenser?

   **Response:**  Yes.

3. Explain the training you received when exercising reactionary use of force.

   **Response:**  I received training in use of force defensive tactics.

4. Do you still stand by your statement made in The Defendant's Response To Court Order to Identify Names of Unknown Defendants?

   **Objection:** Defendant objects to this interrogatory as it seeks to obtain an admission through an interrogatory.

   **Objection:** Defendant objects to this interrogatory as irrelevant and cumulative as it seeks information already provided in the referenced court filing.

2

Exhibit B - Pg2

5. At any time did you feel that any other officer may have used excessive force against the Plaintiff?

**Response:** No.

6. Explain and give details how plaintiff Cooper was redirected to the ground.

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

7. In your own words, describe in detail the events that took place, upon your entering the bathroom, up until the plaintiff was placed in confinement, Include which officers participated in the use of force, The actions they took and the actions the plaintiff displayed.

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

3

Exhibit B - Pg3

8. At any time did you or any other officer utilize their O.C. spray dispenser during the use of force?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

9. After the plaintiff was redirected to the ground and placed in restraints, what took place?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

10. Approximately how many officers came into the bathroom to assist you (McCoy) in this incident?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

4

Exhibit B-Pg 4

11. On April 13, 2018 At Delta Dormitory side 2, when the shakedown, team came to shakedown, was the warden or major present?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

12. In your statements you made in your D.R. Log #103-180585 the claim that plaintiff struck you one time with a closed fist, and then turned to flee, why didn't you utilize your O.C. spray dispenser after the plaintiff supposedly struck you?

**Objection:** Defendant objects to this interrogatory as it is argumentative and seeks to obtain an admission through an interrogatory.

13. In the D.R. Log #103-180585 you stated "After the plaintiff struck you, he attempted to flee, was redirected to the ground and placed in restraints" can you be more specific as to who redirected the plaintiff to the ground and placed him in restraints.

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer

5

Exhibit B-25

in viewing the disciplinary report worksheet, incident and use of force reports in this case.  Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

14. After the plaintiff was placed in restraints, did you still believe he was a threat?

**Objection:** Defendant objects to this interrogatory as it seeks to obtain an admission through an interrogatory.

15. Did you at any time strike the plaintiff with a metal detector wand, as he claims?

**Objection:** Defendant objects to this interrogatory as it seeks to obtain an admission through an interrogatory.

16. If not how did the plaintiff suffer such severe injuries to his head, abdomen, back, feet and legs?

**Objection:** Defendant objects to this interrogatory as it is argumentative, calls for speculation and seeks to obtain an admission through an interrogatory.

Exhibit B - Pg 6

17. After searching the plaintiff, and finding no contraband, and then ordering him to stand by the officers station, you approached the plaintiff in the presence of the warden and stated you had found individually wrapped packages of K-2 wrapped up in the plaintiffs blue shirt, Did the plaintiff act in an aggressive manner in any way at that time?

**Objection:** Defendant objects to this interrogatory as it is argumentative and seeks to obtain an admission through an interrogatory.

18. How many officers were present when you escorted the plaintiff into the bathroom to be searched?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case.  Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

19. At what point did you turn over custody of the plaintiff to other officers?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case.  Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

7

Exhibit B - Pg 7

20. What are the names of the officers who took custody of the plaintiff?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

21. Were there any officers present at the time you claim the plaintiff struck you?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

22. How many times do you claim the plaintiff struck you?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case. Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

8

Exhibit B - Pg 8

23. After you claim the plaintiff struck you and turned to flee, what was your immediate reaction?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the disciplinary report worksheet, incident and use of force reports in this case.  Defendant will arrange for the Plaintiff to view these documents through a call out procedure.

24. You claim that the plaintiff struck you and then turned to flee, Did you feel the plaintiff was still a threat to you at that time?

**Objection:** Defendant objects to this interrogatory as it seeks to obtain an admission through an interrogatory.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Charles McCoy

Executed on this 17 day of July, 2020.

9

Exhibit B-Pg 9

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
   **DC# T57324,**
   Plaintiff,

v.                                          **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

   Defendants.

_____/

## DEFENDANT SHELTON'S RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Joshua Shelton** ("Defendant"), by and through undersigned counsel, and

pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his

Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force

   administered against the plaintiff up until the plaintiff was escorted to the

   transport van?

   Response: I heard Sgt. McCoy yell for help from the bathroom area of D2

1

Exhibit B - Pg 10

Dormitory.  Officer David Williams and I entered the bathroom area and observed Plaintiff attempting to elude Sgt. McCoy.  Officer Williams and I gave Plaintiff several orders to cease his actions.  Plaintiff did not comply with our orders.  Plaintiff turned towards us in an aggressive manner and attempted to charge us.  Officer Williams and I grasped Plaintiff and redirected him to the ground.  Plaintiff continued his combative behavior and physically resisted us.  Officer Williams and I were ultimately able to restrain Plaintiff and apply restraints.  We assisted Plaintiff into a standing position and escorted him out of the dormitory.

Officer Williams and I were relieved from the escort of Plaintiff by Sgt. Roe and Major Stephens.  Plaintiff began resisting and pulling away from Sgt. Roe and Major Stephens.  Plaintiff was given several orders to cease his actions.  Plaintiff refused to comply with orders to stop resisting.  Sgt. Roe and Major Stephens redirected Plaintiff to the ground. Plaintiff then ceased his disruptive behavior and was assisted to a standing position.  I relieved Major Stephens from his escort.  Sgt. Roe and I escorted Plaintiff to medical for a post use of force examination.  I was relieved from escorting Plaintiff further and did not escort Plaintiff to the transport van.

6. What was the minimum method of force used to restrain the plaintiff?

Exhibit B - Pg 11

Response: Yes.

7. During the restraint of the plaintiff, at any time, did you punch, kick or strike the plaintiff or did you witness officer David Williams or any other official punch, kick or strike the plaintiff in any way?

Response: No.

8. At any time did you or any other official utilize your assigned O.C. dispenser against the plaintiff and if not, why?

Response: No, I did not use chemical spray. No other officer utilized spray to my knowledge as it would have affected the officers in the bathroom and interfered with restraint of Plaintiff.

9. Did you ever witness the plaintiff strike Sgt. McCoy at any time?

Response: I entered the bathroom after Plaintiff hit Sgt. McCoy. I did not see Plaintiff hit Sgt. McCoy.

10. At any time, did the plaintiff strike you or Officer Williams before, during, or after the restraint?

Response: Plaintiff physically resisted and would not submit to restraints. I do not recall Plaintiff striking me or Officer Williams.

11. Can you explain FDC training on what methods of force are to be used when restraining an inmate?

Response: The FDC academy provides initial training on use of force.

3

Exhibit B Pg 12

Correctional officers also complete training annually on use of force methods and techniques. The force used depends on the level of resistance of the inmate. I always try to use the least amount of force necessary in restraining an inmate.

12. After you and Officer Williams entered the bathroom did any other Officers enter?

Response: I do not recall.

13. Was Warden Heath Holland present during the restraint of the plaintiff?

Response: I do not know if Warden Holland was present during the restraint. I recall Warden Holland being present in the dorm area for the search.

14. When an inmate refuses to obey a lawful command, what methods are you trained to utilize to obtain the inmates compliance?

Response: We are trained to use the least amount of force necessary to gain compliance. The methods used depends on the situation and whether the inmate is posing a danger to himself or others.

15. Sgt. McCoy stated that he placed the inmate in hand restraints prior to taking him into the bathroom, was the plaintiff restrained when you and Officer Williams entered the bathroom?

Response: Plaintiff was not restrained. Plaintiff resisted restraints.

4

Exhibit B Pg 13

16. In what part of the bathroom did the incident take place?

    Response: I believe it was by the vestibule area in the bathroom.

17. Per the post use of force medical examination it was determined by SCI and UCI Medical employees that the plaintiff sustained multiple injuries to his head/face, back, wrists, feet, etc. Can you explain how the plaintiff sustained these injuries during the restraint conducted by you and Officer Williams?

    Response: Plaintiff did not sustain multiple injuries to my knowledge. Plaintiff physically resisted submitting to restraints and later physically resisted officers during the escort. I cannot speculate as to where or how Plaintiff received his alleged injuries, if they exist, except through Plaintiff's own aggressive actions.

18. Did any other Officer participate in the restraint of the plaintiff?

    Response: Officer Shelton assisted in the restraint of Plaintiff in the bathroom. I do not recall if any other officer was involved in the initial restraint. Sgt. Roe and Major Stephens were involved in use of force with Plaintiff during the escort after Plaintiff resisted and began pulling away from officers.

19. Were you ever interviewed by the Inspector General's Officer for allegations of excessive use of force or for criminal charges pertaining to

Exhibit B-Pg 14

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.: 0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Taylor Correctional Institution, 8501 Hampton Springs Rd., Perry, FL 32348, on ___7th___ day of June 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.



Exhibit B - Pg 15

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
    **DC# T57324,**
    Plaintiff,

v.                             **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

    Defendants.

_____/

## DEFENDANT WILLIAMS' RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

**David Williams**("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force administered against the plaintiff up until the plaintiff was escorted to the transport van?

Response:  I heard Sgt. McCoy yelling for help from the bathroom area

1

Exhibit B- Pg 36

spray to my knowledge. I did not have time to use my chemical spray because Plaintiff immediately charged us.

9. Did you ever witness the Plaintiff strike Sgt. McCoy at anytime?

Response: No.

10. At any time did the Plaintiff strike you or Officer Shelton, before during or after the restraining?

Response:    I do not recall Plaintiff striking me.  I do not know if Plaintiff struck Shelton.

11. Can you explain FDC training on what methods of force are to be used when restraining an inmate?

Response:  We are trained to use the least force necessary depending on the level of aggression from the inmate.  We are taught various take down moves, but it depends on the level of resistance encountered from the inmate.

12. After you and Officer Shelton entered the bathroom, did any other officer enter?

Response:  Not to my knowledge.  I do not recall any other officers entering the bathroom.

13. Was Warden Heath Holland present during the restraint of the Plaintiff?

Response:I do not recall seeing Warden Holland.  I was focused on

3

Exhibit B-Pg 18

restraining Plaintiff.

14. When an inmate refuses to obey a lawful command, what methods are you trained to utilize to obtain the inmate's compliance?

Response: We are trained to use the least force necessary depending on the level of aggression from the inmate. We are taught various take down moves, but it depends on the level of resistance encountered from the inmate.

15. Sgt. McCoy stated that he placed the inmate in hand restraints prior to taking him into the bathroom was the Plaintiff restrained when you and officer Shelton entered the bathroom?

Response: Plaintiff was not restrained. Plaintiff physically resisted our efforts to restrain him.

16. In what part of the bathroom did the incident take place?

Response: I believe it was near a bathroom toilet stall closer to the laundry door area.

17. Per the post use of force medical examination it was determined by SCI and UCI medical employees that the Plaintiff sustained multiple injuries to his head/face, back, wrists, feet, etc. Can you explain how the Plaintiff sustained these injuries during the restraint conducted by you and Officer Shelton?

4

Exhibit B-pg 19

Response:  Plaintiff did not sustain multiple injuries to my knowledge. Plaintiff physically resisted submitting to restraints and later physically resisted officers during the escort. I cannot speculate as to where or how Plaintiff received his alleged injuries, if they exist, except through Plaintiff's own aggressive actions.

18. Did any other officer participate in the restraint of the Plaintiff?

Response: Officer Shelton.

19. Were you ever interviewed by the Inspector General's Office for allegations of excessive use of force or for criminal charges pertaining to the Plaintiff?

Response: No.

20. At any time did any official with rank higher than your own, order you to falsify reports in any way pertaining to this incident?

Response: No.

21. Did Major Kenneth Stephens participate in the use of force in the bathroom area and outside of the dorm during the escort?

Response:  Stephens did not participate in the use of force in the bathroom. I do not recall seeing Stephens in the bathroom. I do not recall observing the use of force during the escort.

5

Exhibit B Pg 21

22. Are you full aware that the statement you gave in the incident report, and the answers you have offered, and will give in Interrogatories are under penalties of perjury and that if you are caught lying, you may be subjected to fines and/or jailtime or both?

Response: Yes.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

David Williams
Executed on this ___4th___ day of June, 2021.

For all objections,

**ASHLEY MOODY
ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

6

Exhibit B - Pg 31

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Taylor Correctional Institution, 8501 Hampton Springs Rd., Perry, FL 32348, on  10th  day of  June 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

7

Exhibit B - Pg 22

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
    DC# T57324,
    Plaintiff,

v.
                            Case No.: 4:18-cv-371/MW/MJF

CHARLES D. MCCOY, et al.,

    Defendants.
_____/

## DEFENDANT MCDONALD'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Jason McDonald** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force administered against the plaintiff up until the plaintiff was escorted to the transport van?

    Response:  I was assisting in searching a dorm when I heard an officer call

1

Exhibit B - Pg 23

for help. I ran into the bathroom and observed Sgt. McCoy bleeding in his facial area around his eye. Plaintiff was being secured by officers near the toilet and sink when I entered the room. I did not participate in securing Plaintiff. I was not involved in escorting Plaintiff to any other area.

6. What was the minimum method of force used to restrain the plaintiff?

   Response: Plaintiff was actively fighting officers. Plaintiff was restrained and handcuffed.

7. During the restraint of the plaintiff, at any time, did you punch, kick or strike the plaintiff, or did you witness officers Joshua Shelton, David Williams, or any other official punch, kick or strike the Plaintiff in any way?

   Response. No.

8. At any time, did you or any other official utilize your assigned O.C. dispenser against the plaintiff and if not, why?

   Response: I did not because it would have affected everyone in the bathroom. I am not aware of anyone else using OC spray.

9. In the incident report, Officer Joshua Shelton states that he and Officer David Williams entered the bathroom area upon hearing Sgt. McCoy call for help, at what point did you respond to the bathroom area?

   Response: I responded after hearing McCoy yell for help. I was in the

Exhibit B - Pg 24

back area of the dorm.  Plaintiff was being restrained by officers when I arrived.

10. The Plaintiff alleges that you participated in the excessive force administered against him.  Do you contest this?

Response:  Yes, I contest this allegation.

11. At what point did Captain McClaine Martin and Lieutenant William Thigpen become involved in the incident?

Response:  I did not know that they were involved.  I did not see either Martin or Thigpen.

12. After You, Officer Shelton and Officer Williams entered the bathroom, did any other officers entered?

Response:  There were other officers in the bathroom.  I do not remember who was in there at any particular time.

13. What caused the inmates in the dayroom to become unruly?

Objection:  This question calls for Defendant to speculate as to the state of mind or mental process of other inmates.

14. Was Officer Shannon Broxie present in the dorm at any time?

Response:  I do not recall.

15. Was Captain Melanie Martin present in the dorm at any time?

Response:  I do not recall.

3

Exhibit B- Pg 35

16. If any of the above-mentioned officials were present, what rolls did they play during the incident?

Objection:   Question is vague as Plaintiff does not expressly describe or state which officials he is referring to in this question.

Response:  Respective to the above objection and presuming Plaintiff is referring to Broxie or Martin, I do not recall either Broxie or Martin being present during the incident.

17. Can you recall what the plaintiff was wearing when you saw him prior to the incident?

Response: No.

18. At any time during the portion of events that you did witness, did you ever see the plaintiff in the area of the toilet, stall one, and if so, what took place?

Response:   Plaintiff was in the bathroom stall area on the floor by stall one.  Plaintiff was resisting officers and being restrained when I entered the bathroom.

19. Were you ever interviewed by the Inspector General's Officer for allegations of excessive force or for criminal charges pertaining to the plaintiff?

Response:  I do not recall.

4

Exhibit B - pg 26

20. At any time did any official with a rank higher than your own, order you to falsify reports in any way pertaining to this incident?

Response: No.

21. Are you fully aware that the statement you gave in the incident report and the answers you have offered, and will give in interrogatories are under penalties of perjury and that if you are caught lying, you may be subject to fines and/or jail time or both?

Response: Yes.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Jason McDonald
Executed on this 20th day of January, 2021.

5

Exhibit B- Pg 27

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
    DC# T57324,
    Plaintiff,

v.                               **Case No.: 4:18-cv-371/MW/MJF**

CHARLES D. MCCOY, et al.,

    Defendants.
    _____/

## DEFENDANT ROE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Anthony Roe** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force administered against the plaintiff up until the plaintiff was escorted to the transport van?

   Response: I was conducting a search in the dorm when I heard Sgt. McCoy

1

Exhibit B Pg 28

call for help.   I did not see the initial altercation, but Sgt. McCoy was standing to the side bleeding from his head.  Plaintiff was restrained by officers. Officer Williams and Shelton escorted Plaintiff out of the restroom.  Major Stephens and I took over the escort and took Plaintiff to H-dormitory.  During the escort, Plaintiff tried to remove himself from our grip.  Plaintiff was taken to the ground and ordered to stop resisting. Plaintiff finally stopped resisting and was assisted back to his feet. Plaintiff was then taken to H-dormitory. Medical staff evaluated Plaintiff. Plaintiff was escorted to a cell and his restraints were removed after Plaintiff was placed in his cell.  This ended my involvement with Plaintiff.

6. Officer Shelton states that he and officer Williams entered the bathroom area upon hearing pleas for help at which point did you enter the bathroom area?

Response:  I entered after Officer Williams and Shelton, but I do not remember the exact point that I entered.

7. During the restraint of the plaintiff and after the plaintiff was restrained, did you punch, kick or strike the plaintiff?

Response: No.

8. Did you witness any other official punch, kick or strike the plaintiff at any time during the struggle?

2

Exhibit B - Pg 30

Response: No.

9. What was the minimum method of force used to restrain the plaintiff?

   Response: I do not recall the specific actions of force used as this incident occurred three years ago.

10. Explain in your own words how the plaintiff attempted to pull away from you and Major Stephens during the escort, which includes how you and Major Stephens had the plaintiff gripped?

    Response:  Major Stephens and I were each on one side of Plaintiff. Plaintiff was gripped by each arm.  Plaintiff threw his shoulders forward to try to snatch away from our grip.  Plaintiff had to be taken down to the ground and ordered to stop resisting and to calm down.

11. Describe in your own words how you and Major Stephens were positioned when you had redirected the plaintiff to the ground during the time plaintiff was being escorted to confinement?

    Response:  See response to question ten.

12. At which point during the escort did Captain Barbra Brown and Officer Shannon Brouie appear with the handheld camera?

    Response: I do not recall seeing Captain Brown until we were at H-dorm. I am not sure who Officer Brouie is.

3

Exhibit B- Pg 31

13. Also, at what point did Captain McLanie Martin and Lieutenant William Thigpen become involved in the incident?

Response: I do not recall seeing either Captain Martin or Lt. Thigpen.

14. In your incident report statement, you stated that Officer Shelton and Williams entered the bathroom and attempted to restrain the plaintiff. Did you ever assist in the restraint?

Response: I do not recall writing an incident report and I do not recall if I assisted in the restraint.

15. Give detail as to how the plaintiff aggressively charged Shelton and Officer Williams?

Response: I do not recall.

16. Were you ever interviewed by the Inspector General's Office for allegations of excessive use of force or criminal charges pertaining to the plaintiff?

Response: No.

17. Was the plaintiff placed in restraints prior to taking into the bathroom by McCoy?

Response: I did not witness Plaintiff being taken into the bathroom by McCoy.

4

Exhibit B-Pg31

18. In which portion of the bathroom did the incident take place?

Response:  It was near the sink and the toilet stall.

19. Was officer Shannon Brokie present in the dorm at any time?

Response:  I am not sure.

20. Sir, are you fully aware that the statement you're offering in interrogatories are under the penalties of perjury and that if you are caught lying this will constitute fraud upon the court where you may be subject to fines and/or jail time or both?

Response:  Yes.

21. At any time did any official with a rank higher than your own, order you to falsify reports in any way pertaining to this incident?

Response:  No.

22. Are officials allowed to strip search inmates alone?

Response:  It depends on the situation.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Anthony Roe
Executed on this 20th day of January, 2021.

5

Exhibit B - Pg 32

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Franklin Correctional Institution, 1760 Highway 67 North, Carrabelle, Florida 32322, on January 20th, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

6

Exhibit B- Pg 33

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
  **DC# T57324,**
  Plaintiff,

**v.**                                          **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

  Defendants.
_____/

## DEFENDANT HOLLAND'S RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Heath Holland** ("Defendant"), by and through undersigned counsel, and
pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his
Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. In Defendant Vekiesha Johnson's response to interrogatories, she places
   you at the scene of the mass search. Can you please explain what you
   observed that day leading up to and after the use of force?

   Response:  I heard a commotion from the bathroom.  When I entered the

1

*Exhibit B-Pg 34*

bathroom, inmate Cooper was on the ground with his arms under his body resisting commands to remove his arms and submit to hand restraints. Staff were able to quickly gain compliance with minimal force used. Cooper was escorted out of the dormitory. I observed Sgt. McCoy bleeding from his head, and he was escorted to medical.

6. To the best of your knowledge, on the morning of the incident approximately how many staff members would you say participated in the shake down?

Response: I do not know what you mean by shakedown. There was a search of the dorm. I do not know exactly how many officers were involved in the dorm search, but I would estimate ten to twelve officers were involved in the search.

7. Prior to Sgt. McCoy strip searching plaintiff in the bathroom, do you recall if plaintiff was wearing a blue shirt?

Response: No, I do not recall.

8. According to the incident report only two correctional officers restrained the plaintiff, do you concur?

Response: I did not see the initial restraint. Other officers assisted at the end, but I do not recall who they were.

9. Did you ever hear someone call for help?

2

Exhibit B · Pg 35

Response:  I heard an officer call for help.

10. Can you distinguish Sgt McCoy's voice over the plaintiff's?

Response:  Absolutely.

11. During and after the restraint of plaintiff did you ever witness any staff member kick or punch the plaintiff?

Response: No.

12. Is there a rule which prohibits a staff member from strip searching an inmate alone, if so, why haven't Sgt. McCoy been reprimanded?

Response:  There is not a rule prohibiting a staff member from strip searching an inmate alone.

13. When plaintiff was restrained, was it by the mouth of the door?

Response:  I am not sure which door you are referring to.  I recall inmate Cooper being restrained near the sink and toilet area.

14. According to reports Sgt. McCoy found a small amount of drugs close by where plaintiff was sitting. The drugs were said to be in the pocket of a blue shirt with the name James Johnson on it. Sgt. McCoy approached plaintiff who consented to a pat down then instructed the plaintiff to strip. Do you recall if Sgt. McCoy believed the drugs belong to plaintiff?

Response:  I did not witness these events and do not know what Sgt. McCoy observed or believed.

3

Exhibit B - Pg 36

15. At any time before the plaintiff was taken into the bathroom, was he placed in handcuffs?

Response:   I did not observe Cooper being taken into the bathroom. Cooper would not have been handcuffed because he was laying on his arms and resisting hand restraints when I entered the bathroom.

16. Please explain why you allowed Major Kenneth Stephens to review the use of force incident, in determining whether the force used was in compliance with Ch. 33-602.210 when Major Stephens was in fact a participant in the use of force against the plaintiff?

Response: Major Stephens was not a participant in the initial use of force in the bathroom area.   Major Stephens was part of the escort in the subsequent use of force when Cooper resisted officers during the escort.

17. Can you explain why it took you (24) business days twenty-four to deliver your report to the Inspector General which was (11) eleven business days outside of the required time?

Response:  The Inspector General is immediately notified through a MINS report and EAC (emergency action center) notification when an officer is injured so there was not a delay in notifying the Inspector General Office. A use of force incident is first reviewed by the Chief of Security, then it is reviewed by an Assistant Warden or Warden, and then it is submitted to

4

Exhibit B- pg 37

the use of force unit for review. We try to provide the information to the Inspector General within fifteen days, but sometimes there is a short delay. I do not recall this incident being delayed, but officers work twelve hour shifts so sometimes there is a delay in obtaining paperwork or in the routing of paperwork because of varying work schedules.

18. In the report issued by Defendant Cooley, she claimed that plaintiff struck Sgt. McCoy once, then other officials immediately went into the bathroom area to assist Sgt. McCoy when you reviewed this report were you able to determine who among your staff had participated in the use of force incident, initially?

Response:   Officers Williams and Shelton initially restrained inmate Cooper.

19. During your review of whether use of force was being administered lawfully did you have an opportunity to review the footage from Delta Dormitory during the incident and the hand held camera which recorded plaintiff arriving to Hotel Dormitory and when plaintiff was being escorted to transport van?

Response:  I do not recall.

Exhibit B - Pg 38

I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.

Heath Holland
Executed on this 27ᵗʰ day of May, 2021.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.: 0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Taylor Correctional Institution, 8501 Hampton Springs Rd., Perry, FL 32348, on May 27th, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

6

Exhibit B- Pg 39

DocuSign Envelope ID: 874E13B4-D561-41E8-8C13-38FBEAECE835

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
    **DC# T57324,**
    Plaintiff,

**v.**                          **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

    Defendants.

_____/

## DEFENDANT WHITE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Darren White** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force administered against the plaintiff up until the plaintiff was escorted to the transport van?

   Response:  I was not involved in the use of force and did not witness the

1

*Exhibit B- Pg 40*

incident.  I was a trainee and remained at my dorm station the entire time.

6.  During the restraint of the plaintiff, at any time, did you punch, kick or strike the plaintiff or did you witness officials Joshua Shelton, David Williams or any other official punch, kick or strike the plaintiff in any way?

Response:  No.  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

7.  At any time did you or any other official utilize your assigned O.C. dispenser against the plaintiff and if not, why?

Response:  No.  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

8.  In the incident report, officer Joshua Shelton states that he and Officer David Williams entered the bathroom area upon hearing Sgt. McCoy call for help. At which point did you respond to the bathroom area?

Response:   I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

9.  The Plaintiff alleges that you participated in the excessive force administered against him, do you contest this?

2

Exhibit B-Pg 41

DocuSign Envelope ID: 874E13B4-D561-41E8-8C13-38FBEAECE835

Response:   Yes.  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

10. At what point do Captain McClaine Martin and Lieutenant William Thigpen became involved in the incident?

Response:  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

11. After you, Officer Shelton and Officer Williams entered the bathroom, did any other officers enter?

Response:  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

12. What caused the inmates in the day room to become unruly?

Response:  I do not recall.

13. Was Officer Shannon Broxie/Brokie present in the dorm at any time?

Response:  I do not recall.

14. Was Captain Melainie Martin present in the dorm at any time?

Response:  I do not recall.

15. If any of the above mentioned officials were present, what rolls did they play during the incident?

Response:  I do not know.  I was not involved in the use of force and did

3

Exhibit B - Pg 42

DocuSign Envelope ID: 874E13B4-D561-41E8-8C13-38FBEAECE839

not witness the incident.  I was a trainee and remained at my dorm station the entire time.

16. Can you recall what the plaintiff was wearing when you saw him prior to the incident?

    Response:  I do not recall Plaintiff and do not know what he was wearing.

17. At any time during the portion of events that you did witness, did you ever see the plaintiff in the area of toilet, stall one, and if so, what took place?

    Response:  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

18. Were you ever interviewed by the Inspector General's Office for allegations of excessive use of force or for criminal charges pertaining to the plaintiff?

    Response:  No.  I was not involved in the use of force and did not witness the incident.  I was a trainee and remained at my dorm station the entire time.

19. At any time did any official with a rank higher than your own, order you to falsify reports in any way pertaining to this incident?

    Response:  No.

20. Are officials allowed to strip search inmates alone?

    Response:  I do not think so.

4

Exhibit B-Pg 44

DocuSign Envelope ID: 874E13B4-D561-41E8-8C13-38FBEAECE835

21. Are you fully aware that the statement you gave in the incident report and the answers you have offered and will give in interrogatories are under penalties of perjury and that if you are caught lying, you may be subject to fines and/or jail time or both?

Response: I did not write an incident report. I was not involved in the use of force and did not witness the incident. I was a trainee and remained at my dorm station the entire time. Yes, I am aware that answers in interrogatories are under penalty of perjury.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

DocuSigned by:

*Darren White*

B0B2E495D9A4458

Darren White

Executed on ___5/27/2021___.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

Exhibit B - Pg 44

DocuSign Envelope ID: 874E13B4-D561-41E8-8C13-38FBEAECE835

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Taylor Correctional Institution, 8501 Hampton Springs Rd., Perry, FL 32348, on __4th__ day of __June__, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

6

Exhibit B· Pg 45

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
    DC# T57324,
    Plaintiff,

v.                                  Case No.: 4:18-cv-371/MW/MJF

CHARLES D. MCCOY, et al.,

    Defendants.
_____/

## DEFENDANT JOHNSON'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

    **Vekeisha Johnson** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

    1. Were you present in Delta Dormitory Side 2# during a mass contraband search where an incident took place involving the Plaintiff?

**Response:** Yes.

    2. If so, name all other correctional officers, staff members and employees of D.O.C. who were involved or present in the incident and mass search?

**Response:** I do not know every employee who worked in that area on the day of the incident.  However, I recall Sgt. McCoy, Sergeant Jason McDonald, Warden Heath Holland, Assistant Warden Thomas Hester, Officer Darren White, and Officer Cooley being present or working during the search.

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case.  These documents were mailed to the Plaintiff's correctional institution to view through a call

1

*Exhibit B - Pg 46*

out procedure.

3. What was the name of the Warden, whom you worked under at the time of the incident?

**Response:** Warden Heath Holland

4. What was the name of the Major, whom you worked under at the time of the incident?

**Response:** I believe it was Major Kenneth Stephens.

5. Exactly, what did you witness during the incident involving the Plaintiff?

**Response:** I witnessed the Plaintiff fighting Sergeant McCoy. The Plaintiff repeatedly punched Sergeant McCoy. Sergeant McCoy attempted to defend himself by holding his arms up in an attempt to block the Plaintiff's punches. The Plaintiff continued to move forward towards Sergeant McCoy as Sergeant McCoy was walking backwards away from the Plaintiff. I yelled for help as I saw the Plaintiff punching Sergeant McCoy. Other officers responded to assist Sergeant McCoy.

6. How did the Plaintiff sustain such severe injuries during the incident?

**Response:** I did not witness the Plaintiff as he was restrained. I assisted in keeping other inmates in the dayroom area. I did not view any injuries on the Plaintiff.

7. Where was Sergeant McCoy at before, during and after the incident?

**Response:** Sergeant McCoy was originally in the bedding area before he assisted with the strip searches in the bathroom. I do not know where Sergeant McCoy went after the altercation.

8. Did you ever actually witness the Plaintiff strike Sergeant McCoy during the incident?

**Response:** Yes.

9. If so, how many times do you claim the Plaintiff struck Sergeant McCoy?

Exhibit B- Pg 47

**Response:** I saw the Plaintiff repeatedly punch Sergeant McCoy, but I did not count how times the Plaintiff punched Sergeant McCoy.

10. Which staff member entered the restroom to assist Sgt. McCoy in the incident?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case. These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.

11. Can you recall if any officers utilized their O.C. dispensers against the Plaintiff?

**Response:** No.

12. How were you trained to react to a reactionary use of force against an inmate?

**Response:** I am trained to use reasonable force to gain compliance and restore lawful order to maintain safety for myself and other inmates. Reactionary use of force is then reported to the control room and documented.

13. At any time did you personally witness the Plaintiff resisting restraints in an aggressive manner or at all and if so, please explain?

**Response:** I did not witness the Plaintiff as he was restrained. I assisted in containing other inmates in the dayroom.

14. Can you explain the state of the Plaintiff after he was placed in restraints?

**Response:** I did not see the Plaintiff after he was restrained.

15. Can you recall who escorted the Plaintiff to confinement?

**Response:** No.

16. How long have you worked at Jefferson C.I., where are you assigned and your duties are?

3

Exhibit B- Pg 49

**Response:** I have worked at Jefferson C.I. for approximately four years. I was a correctional officer at the time of the incident, but I do not recall what my assigned post was that day. However, I was assigned to assist in the cell search. As a correctional officer, my duties included the care, custody and control of inmates.

17. Can you recall what you have written in any reports about this incident?

**Response:** No.

18. Have you ever been disciplined?

**Objection:** Defendant objects based on the interrogatory being over broad, not relevant, not proportional to the needs of the case, and burdensome. This case pertains to the Plaintiff's excessive use of force and/or failure to protect allegation on April 13, 2018. This interrogatory seeks information pertaining to personnel matters, to inmates other than the Plaintiff and pertaining to events beyond the scope of this case. Any prior disciplinary history beyond any event other than April 13, 2018, is not pertinent to the Plaintiff's claim and seeks information beyond the claim in the case, which is not admissible pursuant to rules 401 and 404, Federal Rules of Evidence ("FRE"). See Segura v. City of Reno, 116 F.R.D. 42, 44 (D.Nev. 1987); see, e.g., United States v. Chavez, 204 F.3d 1305, 1316-17 (11th Cir. 2000) (attempt to admit evidence of prior assaults on defendant's wife under FRE 404(b) inadmissible in trial for same offense under FRE 401, because the prior assaults did not relate to the issues at trial or the defendant's defense); Williams v. Asplundh Tree Expert Co., No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, at *1-*2 (M.D.Fla. Oct. 6, 2006) (unpublished order). Further, this question is overbroad and not relevant or proportional to the needs of the case as an officer may be disciplined for many reasons, i.e. late for work. Defendant's discipline history has no bearing on the allegations contained in this case.

**Objection:** Defendant objects to the release of information to the Plaintiff about another inmate. Due to substantial privacy, safety, and security concerns, an incarcerated inmate cannot be provided access to information regarding another inmate. See § 945.10(1)(e), (h), Fla. Stat. (2016); Rule 33-601.901(1)(a)3., Fla. Admin. Code. As such, due to the type of information sought, the state privilege against disclosure balances in favor of the state's interest of confidentiality.

4

Exhibit B-Pg 50

**Objection:** Defendant objects to this question as it seeks discovery of information in an officer's personnel file which confidential and exempt from disclosure to an incarcerated inmate. Further, the Plaintiff need for this information does outweigh the Defendant's countervailing interest in maintaining the confidentiality of such information."

19.    State the name and address or otherwise identify and locate any person who, to you or your attorney's knowledge, claims to know of facts relevant to the conduct described in these interrogatories?

**Objection:** Defendant objects to the question to the extent that the question seeks to obtain the knowledge of Defendant's counsel as protected, privileged and/or work product information.   Further, the interrogatory response is directed at the Defendant to answer, not counsel.

**Objection:** Defendant objects to the question and release of any information regarding a current or former employee's address. This information is private and confidential information that cannot be disclosed to the Plaintiff for security and safety reasons.  See Rule 5.2, Fed. R. Civ. P.; §§ 119.071(4), 945.10(1)(e), (i), Fla. Stat.

**Response:** To the extent the Plaintiff seeks the names of individuals involved in the case, Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case.  These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.


**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Vekeisha Johnson

Executed on this  12th   day of August, 2020.

5

Exhibit B - Pg 51

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
    DC# T57324,
    Plaintiff,

v.                                                    Case No.: 4:18-cv-371/MW/MJF

CHARLES D. MCCOY, et al.,
    Defendants.
_____/

## DEFENDANT JOHNSON'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

**Vekeisha Johnson** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides her Objections to Plaintiff's Second Set of Interrogatories and states:

Questions 1-4 are instructions and do not require an answer. Based upon agreement of the parties, Defendant's objections and responses are to questions numbered five through eleven only as Defendant previously submitted answers to nineteen questions in Plaintiff's First Set of Interrogatories.

Questions 5: Was the Plaintiff placed in restraints before being taken to the bathroom by Sergeant McCoy?

Response: Plaintiff was not in restraints.

Question 6: In which portion of the bathroom did you see the plaintiff repeatedly strike Sergeant McCoy?

Response: Plaintiff was near the shower stall when he struck Sgt. McCoy.

1

Exhibit B - Pg 52

Question 7:   After You, Officer Shelton, and Officer Williams entered the bathroom, did any other officers enter?

Response:   I did not enter the bathroom.   I was near the officer station watching inmates in the dayroom.  I called for help.  Several officers came rushing but I am not sure who went into the bathroom.

Question 8:  What caused the inmates to become unruly?

Objection:  Question calls for Defendant to speculate as to the state of mind or motivation of other inmates.

Question 9:  Was Officer Shannon Broxsie present in the room at any time?

Response:  I do not recall.

Question 10:  Was Captain Melanie Martin present in the dorm at any time?

Response:  I do not recall.

Question 11:  Was Lieutenant William Thigpen present in the dorm at any time?

Response:  I do not recall.

Questions twelve through twenty.

Objection:  Plaintiff is only entitled to 25 interrogatory questions pursuant to Rule 33, Fed. R. Civ. P.  Plaintiff already provided Defendant 19 interrogatory questions in his first request.  Plaintiff may not obtain additional interrogatories without consent or leave of court.  As discussed with Plaintiff, Plaintiff requested

2

Exhibit B- Pg 53

that Defendant respond to questions five through eleven.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Vekeisha Johnson
Executed on this 20th day of January, 2021.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson

SeniorAssistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

Exhibit B- Pg 54

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Second Set of Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Franklin Correctional Institution, 1760 Highway 67 North, Carrabelle, Florida 32322, on this 21st day of January, 2021.

/s/ Lori Huskisson
LoriHuskisson, Esq.

4

Exhibit B· Pg 55

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
   DC# T57324,
   Plaintiff,

v.                                              Case No.: 4:18-cv-371/MW/MJF

CHARLES D. MCCOY, et al.,
   Defendants.

*A TYPO*

## DEFENDANT JOHNSON'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Shantia Cooley** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. Were you present in Delta Dormitory Side 2 during a mass contraband search where an incident took place involving the Plaintiff?

**Response:** Yes.

2. If so, name all other correctional officers, staff members and employees of D.O.C. who were involved or present in the incident and mass search?

**Response:** I do not know the names of the officers who were present and part of the search team. I remember that Sgt. Johnson, Sgt. McCoy were present.

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case. These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.

3. What was the name of the Warden, whom you worked under at the time of the incident?

1

Exhibit B - Pg 56

**Response:** I believe it was Warden Heath Holland.

4. What was the name of the Major, whom you worked under at the time of the incident?

**Response:** I believe it was Major Kenneth Stephens.

5. Exactly, what did you witness during the incident involving the Plaintiff?

**Response:** I saw the Plaintiff with a balled fist approaching Sgt. McCoy. Sgt. McCoy was backing up away from the Plaintiff. I saw the Plaintiff strike Sgt. McCoy. Other officers immediately responded to assist Sgt. McCoy. I worked to keep other inmates in the Dayroom. I was not involved in the restraint of the Plaintiff.

6. How did the Plaintiff sustain such severe injuries during the incident?

**Response:** I was not involved in the restraint of the Plaintiff. I did not witness the Plaintiff's restraint or any injuries of the Plaintiff.

7. Where was Sergeant McCoy at before, during and after the incident?

**Response:** I do not recall where Sgt. McCoy was prior to the incident. I heard a noise and observed the Plaintiff strike Sgt. McCoy in the bathroom area. I did not witness Sgt. McCoy after the incident.

8. Did you ever actually witness the Plaintiff strike Sergeant McCoy during the incident?

**Response:** Yes.

9. If so, how many times do you claim the Plaintiff struck Sergeant McCoy?

**Response:** I saw the Plaintiff strike Sgt. McCoy one time. Other officers immediately went into the bathroom area to assist Sgt. McCoy. My view was then obstructed, and I did not see how many times the Plaintiff struck Sgt. McCoy after the initial strike.

10. Which staff member entered the restroom to assist Sgt. McCoy in the incident?

2

Exhibit B - Pg 57

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case. These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.

11. Can you recall if any officers utilized their O.C. dispensers against the Plaintiff?

**Response:** No.

12. How were you trained to react to a reactionary use of force against an inmate?

**Response:** I am trained to use reasonable force to gain compliance and restore lawful order to maintain safety for myself and other inmates. Reactionary use of force is then reported to the control room and documented.

13. At any time did you personally witness the Plaintiff resisting restraints in an aggressive manner or at all and if so, please explain?

**Response:** I did not witness the restraint of the Plaintiff.

14. Can you explain the state of the Plaintiff after he was placed in restraints?

**Response:** I did not see the Plaintiff after he was restrained.

15. Can you recall who escorted the Plaintiff to confinement?

**Response:** No.

16. How long have you worked at Jefferson C.I., where are you assigned and your duties are?

**Response:** I started at Jefferson C.I. on October 9, 2015. I do not remember where I was assigned on the date of the incident. I believe I was the recreation officer at the time. My duties as a recreation officer were to monitor inmates during recreation time and make sure the recreational area is clean and safe for inmate use.

Exhibit B· Pg 58

17. Can you recall what you have written in any reports about this incident?

**Response:** Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the Defendant's witness statement in Plaintiff's DR report in this case. These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.

18. Have you ever been disciplined?

**Objection:** Defendant objects based on the interrogatory being over broad, not relevant, not proportional to the needs of the case, and burdensome. This case pertains to the Plaintiff's excessive use of force and/or failure to protect allegation on April 13, 2018. This interrogatory seeks information pertaining to personnel matters, to inmates other than the Plaintiff and pertaining to events beyond the scope of this case. Any prior disciplinary history beyond any event other than April 13, 2018, is not pertinent to the Plaintiff's claim and seeks information beyond the claim in the case, which is not admissible pursuant to rules 401 and 404, Federal Rules of Evidence ("FRE"). See Segura v. City of Reno, 116 F.R.D. 42, 44 (D.Nev. 1987); see, e.g., United States v. Chavez, 204 F.3d 1305, 1316-17 (11th Cir. 2000) (attempt to admit evidence of prior assaults on defendant's wife under FRE 404(b) inadmissible in trial for same offense under FRE 401, because the prior assaults did not relate to the issues at trial or the defendant's defense); Williams v. Asplundh Tree Expert Co., No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, at *1-*2 (M.D.Fla. Oct. 6, 2006) (unpublished order). Further, this question is overbroad and not relevant or proportional to the needs of the case as an officer may be disciplined for many reasons, i.e. late for work. Defendant's discipline history has no bearing on the allegations contained in this case.

**Objection:** Defendant objects to the release of information to the Plaintiff about another inmate. Due to substantial privacy, safety, and security concerns, an incarcerated inmate cannot be provided access to information regarding another inmate. See § 945.10(1)(e), (h), Fla. Stat. (2016); Rule 33-601.901(1)(a)3., Fla. Admin. Code. As such, due to the type of information sought, the state privilege against disclosure balances in favor of the state's interest of confidentiality.

**Objection:** Defendant objects to this question as it seeks discovery of information in an officer's personnel file which confidential and exempt from disclosure to an incarcerated inmate. Further, the Plaintiff need for this

Exhibit B- Pg 59

information does outweigh the Defendant's countervailing interest in maintaining the confidentiality of such information."

19.   State the name and address or otherwise identify and locate any person who, to you or your attorney's knowledge, claims to know of facts relevant to the conduct described in these interrogatories?

**Objection:** Defendant objects to the question to the extent that the question seeks to obtain the knowledge of Defendant's counsel as protected, privileged and/or work product information.   Further, the interrogatory response is directed at the Defendant to answer, not counsel.

**Objection:** Defendant objects to the question and release of any information regarding a current or former employee's address. This information is private and confidential information that cannot be disclosed to the Plaintiff for security and safety reasons.   See Rule 5.2, Fed. R. Civ. P.; §§ 119.071(4), 945.10(1)(e), (i), Fla. Stat.

**Response:** To the extent the Plaintiff seeks the names of individuals involved in the case, Pursuant to FRCP Rule 33(d), Plaintiff may obtain this answer in viewing the incident and use of force reports in this case.   These documents were mailed to the Plaintiff's correctional institution to view through a call out procedure.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

Shantia Cooley

Executed on this 10th day of August, 2020.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

5

Exhibit B-Pg60

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY B. COOPER,
    DC# T57324,
    Plaintiff,

v.                                   Case No.: 4:18-cv-371/MW/MJF

CHARLES D. MCCOY, et al.,
    Defendants.
_____/

## DEFENDANT COOLEY'S OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

**Shantia Cooley** ("Defendant"), by and through undersigned counsel, and pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides her Objections to Plaintiff's Second Set of Interrogatories and states:

Questions 1-4 are instructions and do not require an answer.  Based upon agreement of the parties, Defendant's objections and responses are to questions numbered five through eleven only as Defendant previously submitted answers to nineteen questions in Plaintiff's First Set of Interrogatories.

Questions 5:  Was the Plaintiff placed in restraints before being taken to the bathroom?

<u>Response</u>: I do not know.

Question 6:  In which portion of the bathroom did you see the plaintiff repeatedly strike Sergeant McCoy?

<u>Response</u>:  Plaintiff was near the toilet stall.

1

Exhibit B - Pg 61

Question 7:   After Officer's Johnson, Shelton, and Williams entered the bathroom, did any other officers enter?

Response:  I do not know if Officer Johnson entered the bathroom.  I do not know if any other officers entered after Shelton and Williams.

Question 8:  What caused the inmates in the dayroom of D2 to become unruly?

Objection:  Question calls for Defendant to speculate as to the state of mind or motivation of other inmates.

Question 9:  Was Officer Shannon Broxsie present in the dorm at any time?

Response:  I do not know if Officer Broxsie was present or not in the dorm.

Question 10:  Was Captain Melanie Martin present in the dorm at any time?

Response:  I do not know if Captain Martin was present in the dorm.

Question 11:  Was Lieutenant William Thigpen present in the dorm at any time during the search?

Response:  I do not know if Lt. Thigpen was present in the dorm during the search.

Questions twelve through twenty.

Objection:  Plaintiff is only entitled to 25 interrogatory questions pursuant to Rule 33, Fed. R. Civ. P.  Plaintiff already provided Defendant 19 interrogatory questions in his first request.  Plaintiff may not obtain additional interrogatories without consent or leave of court.  As discussed with Plaintiff, Plaintiff requested

2

Exhibit B. Pg 62

that Defendant respond to questions five through eleven.

**I understand that a false statement in this response will subject me to penalty for perjury. I declare under penalty of perjury that the foregoing responses are true and correct.**

_____
Shantia Cooley
Executed on this _____ day of January, 2021.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

3

Exhibit B- Pg 63

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Objections and Responses to Plaintiff's Second Set of Interrogatories* was furnished by U.S. Mail to: Gregory B. Cooper, DC#T57324, Franklin Correctional Institution, 1760 Highway 67 North, Carrabelle, Florida 32322, on this 20th day of January, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

4

Exhibit B. Pg 64

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
  **DC# T57324,**
  Plaintiff,

**v.**                                    **Case No.: 4:18-cv-371/MW/MJF**

**CHARLES D. MCCOY, et al.,**

  Defendants.

_____/

## DEFENDANT STEPHENS' RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Kenneth Stephens** ("Defendant"), by and through undersigned counsel, and

pursuant to Rule 33, Federal Rule of Civil Procedure ("FRCP"), provides his

Responses and Objections to Plaintiff's First Set of Interrogatories and states:

1. The statement was merely instructive and does not require an answer.

2. The statement was merely instructive and does not require an answer.

3. The statement was merely instructive and does not require an answer.

4. The statement was merely instructive and does not require an answer.

5. Explain in detail what took place on 4-13-18 pertaining to the use of force

   administered against the plaintiff up until the plaintiff was escorted to the

   transport van?

   Response:  I did not witness the initial restraint of Plaintiff.  When I entered

1

Exhibit B-Pg 65

the bathroom area Plaintiff was already in a prone position being restrained. Minimal force was used on Plaintiff in my presence. I assisted in escorting Plaintiff to confinement. During the escort, Plaintiff was resistant and began pulling away from myself and Sgt. Roe. Plaintiff was given several verbal orders to cease his actions. Plaintiff refused to comply with orders at which time Plaintiff was redirected to the ground. Plaintiff then ceased his disruptive behavior and was assisted to a standing position. I was relieved from the escort by Officer Shelton. I do not recall having any interaction with Plaintiff after I was relieved from the escort.

6. What was the minimum method of force used to restrain the plaintiff?

Response: See, answer to #5.

7. During the restraint of the plaintiff, at any time, did you punch, kick or strike the plaintiff or did you witness officials Joshua Shelton, David Williams or any other official punch, kick or strike the plaintiff in any way?

Response: No.

8. At any time did you or any other official utilize your assigned O.C. dispenser against the plaintiff and if not, why?

Response: No, I did not use chemical spray. Plaintiff was already being restrained when I entered the bathroom area. No other officer utilized

2

Exhibit B- Pg 66

spray to my knowledge as it would have affected the officers in the bathroom and interfered with restraint of Plaintiff.

9. Did you review the inside and outside camera footage of the dormitory where all areas of force were used and preserve the footage?

   Response:   Force was used in the bathroom area which does not contain cameras.  The area where Plaintiff was redirected to the ground during his escort to confinement did not have camera surveillance in the middle of the compound.

10. If yes, then please explain what you witnessed in the bedding area, the entrance to the bathroom area and the escort of the plaintiff?

    Response:   I do not recall.

11. Is it procedure for an official to utilize force against an inmate and then sit over the review of the force used, to determine whether or not it was in compliance with Ch. 33-602.210?

    Response:  I am not aware of a specific procedure for this issue.  However, I was not involved in the initial use of force in the bathroom.

12. You reprimanded Officer Shannon Broxie/Brokie for delaying the initiation of the hand held camera, can you specify at which point in her recording, the camera initiation was delayed?

    Response:  I do not recall.

Exhibit B Pg 67

13. In the incident report, officer Shelton states that the plaintiff began pulling away from you and Sgt. Roe during the escort. Can you explain in your own words how you and Sgt. Roe had the plaintiff gripped?

Response: I believe that Sgt. Roe and I both gripped Plaintiff by the upper arms.

14. Officer Shelton then states that you and Sgt. Roe then redirected the plaintiff to the ground. However, Officer Shelton did not give details on how this happen. Being as such, can you explain how the plaintiff was redirected to the ground?

Response: I believe that we quickly maneuvered Plaintiff down to the ground using our body weight as leverage. Plaintiff was not injured, and he was helped up once he stopped resisting.

15. Why were the photos destroyed before they could be attached to the incident report to be submitted to the Office of the Inspector General?

Response: I do not recall photographs of Plaintiff because he was not injured. I recall photographs were taken of Sgt. McCoy's injuries which should be contained in the Inspector General file.

16. Why did it take you (20) twenty days to file your report after the incident occurred?

Response: My report was created and submitted on April 13, 2018.

4

Exhibit B- Pg 68

Incident reports go through a review process and are submitted to the I.G. Office after the reviews are completed.

17. In your report, you stated that Colonel Heather Hamlin reviewed the use of force incident report on 04.17.18. Do you still stand by that statement?

Response:  Col. Hamlin's name was crossed out of my report. I do not recall why Col. Hamlin was unable to complete a report review at that time.

18. Do you recall at which point officer Shannon Brokie/Broxie appeared with the hand held video camera during the escort?

Response:  I do not recall.

19. Why wasn't the handheld video footage of the plaintiff being escorted from confinement to the transport van not provided to the Inspector General for inspection?

Response:  I do not recall if there was handheld video footage of the escort to the transport van.

20. According to the plaintiff Sgt. McCoy made him feel very uncomfortable. Do you know what Sgt. McCoy's sexual orientation is?

Response:  To my knowledge, Sgt. McCoy is heterosexual.

21. Is it true that you participated in the incident, then sat on the review board?

Response:  I did not participate in the initial use of force in the bathroom.

5

Exhibit B- Pg 69

I did review that incident for use of force violations and found that no

violations occurred.

22. Do you understand that failure to tell the truth will result in perjury, which

you can be subject to fines and/or jail time or both?

Response: Yes.

23. Why was Delta Dormatory shook down on side #2?

Response:  I do not know what you mean by "shook down."  I do not recall

the specific reasons why the dorm was searched on the day in question.

**I understand that a false statement in this response will subject me to penalty**
**for perjury. I declare under penalty of perjury that the foregoing responses are**
**true and correct.**

Kenneth Stephens
Executed on this _1_ day of _June_, 2021.

For all objections,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
/s/ Lori Huskisson
**Lori Huskisson**
Senior Assistant Attorney General
Florida Bar No.:  0845531
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com

6

Exhibit B. Pg 70

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing

*Defendants' Objections and Responses to Plaintiff's Interrogatories* was furnished

by U.S. Mail to: Gregory B. Cooper, DC#T57324, Taylor Correctional Institution,

8501 Hampton Springs Rd., Perry, FL 32348, on 1st day of June 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

7

Exhibit B - Pg 71

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**GREGORY B. COOPER,**
    DC# T57324,
    Plaintiff,

v.

                                          Case No.: 4:18-cv-371/MW/MJF

**CHARLES MCCOY, et al.,**
    Defendants.

_____/

## ANSWER TO SECOND AMENDED COMPLAINT FOR DEFENDANTS HOLLAND AND STEPHENS

Defendants HEATH HOLLAND and KENNETH STEPHENS (hereinafter "Defendants"), through undersigned counsel, submit their Answer, defenses (with affirmative defenses), and demand for jury trial in response to Plaintiff's Amended Complaint (Doc. 90 ("Complaint")), and state as follows:

I.    **PLAINTIFF** (Doc. 90 at 2):

    Admit.

II.    **DEFENDANT(S)** (*Id.* at 2-3):

    1-3.    Admit that parties are named as Defendants in this action.

III.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES** (*Id.* at 4):

    *No response because this section only provides instructions.*

IV.    **PREVIOUS LAWSUITS** (*Id.*):

1

Exhibit B- Pg 72

Without knowledge as to whether this section is representative of the extent of Plaintiff's litigation history, therefore, denied.

## V.   STATEMENT OF FACTS (*Id.* at 6-10):

1. Without knowledge, therefore, denied.

2. Without knowledge, therefore, denied.

3. Without knowledge, therefore, denied.

4. Without knowledge, therefore, denied.

5. Without knowledge, therefore, denied.

6. Without knowledge, therefore, denied.

7. Without knowledge, therefore, denied.

8. Admitted that on April 13, 2018, a search was conducted in a dormitory where Plaintiff was located but not assigned.   Without knowledge, therefore, denied as to the remainder.

9.   Admit that several inmates were searched and later placed in the dayroom.  Admit that Plaintiff was taken into the bathroom by Defendant McCoy for a strip search.  Without knowledge, therefore, denied as to the remainder.

10. Without knowledge, therefore, denied.

11. As to Holland, admit that Holland was present during the search of the

Exhibit B-Pg 73

dorm but without knowledge as to Holland's specific location at the time Plaintiff was subjected to search. As to Holland and Stephens, without knowledge, therefore, denied as to the remainder.

12. Without knowledge, therefore, denied.

13. Admit that officers responded to the bathroom due to the commotion and McCoy's call for help. As to Holland, denied that Plaintiff called out to Holland. Admit that FDOC records indicate that Shelton and Williams responded to the bathroom to assist Sgt. McCoy's call for help. As to Stephens, denied that Stephens entered the bathroom prior to or during the initial use of force. Without knowledge, therefore, denied as to which other officers entered the bathroom during any specific time frame. Denied as to the remainder.

14. As to Defendant Holland, without knowledge, therefore, denied. A to Stephens, denied. Without knowledge, therefore denied, as to whether McCoy held a wand.

15. Without knowledge, therefore, denied as to what the Plaintiff claims he witnessed. As to Defendant Holland, Johnson and Cooley were not standing in the entryway or in the bathroom observing the restraint of Plaintiff. Holland entered the bathroom at the end of the restraint of Plaintiff. As to Stephens, without knowledge, therefore, denied.

3

Exhibit B- Pg 94

16.   Without knowledge, therefore, denied as to Plaintiff's alleged fear or motivations for his actions.  As to Defendant Holland, denied that Plaintiff called out to Holland.  As to Stephens, without knowledge, therefore, denied.

17.   Admit that Plaintiff resisted officers and was ultimately restrained while on the ground.  Admit that FDOC records indicate that Defendants Shelton and Williams restrained Plaintiff.  Without knowledge, therefore, denied as to which officers later assisted in the restraint of Plaintiff.   As to Stephens, denied as to restraining Plaintiff in the bathroom.  Denied as to the remaining allegations.

18.   Without knowledge, therefore, denied as to what the Plaintiff alleges he witnessed.  Denied as to the remainder.

19.   Without knowledge, therefore, denied.

20.   Without knowledge, therefore, denied.

21.   Without knowledge, therefore, denied.

22.   As to Holland, without knowledge, therefore, denied.  As to Stephens, denied.

23.   As to Holland, without knowledge, therefore, denied.  As to Stephens, denied.

24.   Without knowledge, therefore, denied.

25.   Without knowledge, therefore, denied as to what the Plaintiff allegedly

4

Exhibit B- Pg 75

witnessed.  As to Stephens, denied.  As to Holland, admit Holland entered the bathroom near the end of the restraint of Plaintiff and observed only minimal force used.  As to Holland, deny that Johnson or Cooley were standing in the bathroom area observing the use of force.  As to Holland, deny that Plaintiff called out to Holland.  Denied as to the remaining allegations.

26.  Denied that Plaintiff lost consciousness as Plaintiff continued to resist officers and only minimal lawful force was used.  As to Holland, denied that he stared at Plaintiff "with astounded look" for "how badly Plaintiff was beaten" as Plaintiff was not beaten.  As to Holland, deny that Cooley and Johnson were standing in the bathroom area observing the use of force incident.  As to Stephens, without knowledge, therefore, denied.

27.  As to Stephens, without knowledge, therefore, denied.  As to Holland, deny that Plaintiff spoke to Holland.  Admit that Holland entered the bathroom near the end of the use of force.

28.  Denied.

29.  Denied that excessive force was used, deny that there was a need to intervene or the ability to intervene by Defendants.

30.  As to Holland, without knowledge, therefore, denied.  As to Stephens, admit that Stephens and Roe (not Shelton) escorted Plaintiff part of the way to

5

Exhibit B - Pg 76

confinement when Plaintiff resisted officers and was placed in a prone position on the ground.  As to Stephens, deny that any officer attempted to break Plaintiff's wrist.

31.    Plaintiff suffered minor lacerations and bruising which were documented in his medical records.  Denied as to the remaining allegations.

32.  Admit that the Defendants acted within the scope of their employment and authority as correctional officers.  Denied as to any remaining allegations or insinuation that the Defendants acted in an unlawful manner towards the Plaintiff.

**VI.    STATEMENT OF CLAIMS** (*Id.* at 11-12):

Denied as to each claim.

**VI.    RELIEF REQUESTED** (*Id.* at 10):

Denied that Plaintiff is entitled to any relief.

**VI.    DEFENSES:**

1.    Defendant has not deprived Plaintiff of any rights, privileges, or immunities secured by the United States Constitution.

2.    Plaintiff fails to state a cause of action against Defendants.

3.    Plaintiff fails to state a claim upon which relief can be granted.

4.    Plaintiff cannot establish any violation or injury of his constitutional rights.

6

Exhibit B- Pg 77

# DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

Reporting Institution: Union Correctional Institution   213

Incident Report Number: _____

Reporting Employee: ▓▓▓▓▓▓▓▓

PREA Number: _____

Employee ID Number: ▓▓▓▓▓▓

Date of incident: April 13, 2018

Person(s) Involved: Inmate COOPER, Gregory #T57324

Time of incident: 1640 Hours

Witness (es): _____

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☐ Yes ☒ No  Time: ____
EAC Notified: ☐ Yes ☒ No  Time: ____
Supporting Documents Attached

Disciplinary Report Initiated: ☐ Yes ☒ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☐ Yes ☒ No  **24 9034**
Duty Officer Name: _____  **IG-18-06899**

**DETAILS OF INCIDENT:**   At approximately 1640 hours on April 13, 2018, while assigned as B Shift Supervisor, I was notified of an afterhours gain of Inmate COOPER, Gregory #T57324. Inmate COOPER was being transferred from Jefferson Correctional Institution following a staff assault/use of force incident which occurred at Jefferson CI. I instructed Officer Joshua Glenn to retrieve the V Dorm handheld video camera and act as camera operator. Video recording began at 1647 hours, at which time I conducted a lead-in statement. Inmate COOPER was received in V Dorm, and was escorted to the V Dorm Medical Treatment room, where he received a post use of force physical conducted by RN D. Harrell. Inmate COOPER was then escorted to his newly assigned cell, V3-2011, and secured at 1710 hours without incident. Inmate COOPER alleged that Jefferson CI officers assaulted him while he was restrained. Video recording was continuous and uninterrupted, concluding at 1710 hours.

Lieutenant Myles Sapp
Reporting Employee's Name (Print)      Reporting Employee's Signature      April 13, 2018 / Date

Shift Supervisor/ Department Head

**COMMENT:**   Photos were taken of Inmate COOPER'S injuries, and are attached. An Emergency Room Record (DC4-701C) and a Diagram of Injury (DC4-708) are attached. Filed for information and documentation purposes. Forward to the Chief of Security for further review and possible MINS Entry.

Lieutenant Myles Sapp
Shift Supervisor's/ Department Head's Name (Print)      Shift Supervisor's Signature      April 13, 2018 / Date

**REVIEW:** Properly reported. Inm Cooper was involved with a Reactionary Use of Force at Jefferson City on 4/13/18. Complete MINS.
C. Sgt. McLaughlin
Mindy Tomlinson

For
Jeff Lindsey, Colonel
Correctional Officer Chief's Name (Print)      Correctional Officer Chief's Signature      4/14/18 / Date

**REVIEW:** Noted, file copy.

Kevin Jordan, Warden
Warden's Name (Print)      Warden's Signature      4/16/18 / Date

DC6-210 (Effective 12/12)      Incorporated by Reference in Rule 33-602.210, F.A.C.      Page 1 of 2



Exhibit C Pg 6

DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| | | | |
|---|---|---|---|
| Reporting Institution: | Jefferson C. I. | Incident Report Number: | 2016-108-0760 I |
| Reporting Employee: | Sergeant Charles McCoy | PREA Number: | |
| Employee ID Number: | ████████ | Date of incident: | 04/13/2018 |
| Person(s) Involved: | Inmate Cooper, Gregory DC# T57324 | Time of incident: | 10:49am |
| | | Witness(es): | |

Control Room Log Entry Made: ☐ Yes ☐ No          Disciplinary Report Initiated: ☐ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☐ No          Work Order Initiated: ☐ Yes ☐ No
Duty Warden Notified: ☐ Yes ☐ No Time: _____     MINS Initiated: ☐ Yes ☐ No
EAC Notified: ☐ Yes ☐ No Time: _____             Duty Officer Name: _____
Supporting Documents Attached      _____

**DETAILS OF INCIDENT:**   On April 13, 2018 at approximately 10:49 am, while assigned as the Arsenal Sergeant, I, Sergeant

Charles McCoy was assisting with a mass search in Delta Dorm wing two. At this time I conducted a strip search of Inmate Cooper,

Gregory DC# T57324 in shower stall #5. Inmate Cooper then removed a cellular device, black in color flip style phone, from his anal

cavity. I instructed Inmate Cooper to relinquish the phone. Inmate Cooper was doing as instructed and had the cellular device in his

left hand. I reached out to obtain the cellular device from Inmate Cooper. Inmate Cooper then struck me with a clinched fist with his

right hand to the left side of my face and eye area. When Inmate Cooper struck me I fell back into the sinks directly behind me. I

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH,**

**AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Charles McCoy, Sergeant | | 04/13/2018 |
| **Reporting Employee's Name (Print)** | **Reporting Employee's Signature** | **Date** |

**Shift Supervisor/ Department Head**

**COMMENT:**

Supplemental Incident Report. Amersis worker's comp packet completed on Sergeant McCoy. Forwarded to the Chief of Security for

further review.

| | | |
|---|---|---|
| Barbara Brown, Captain | | 04/13/2018 |
| **Shift Supervisor's/ Department Head's Name (Print)** | **Shift Supervisor's Signature** | **Date** |

**REVIEW:** *Refer to RB6-210 submitted by Capt. J. Slaten*
*for comment*

| | | |
|---|---|---|
| ~~Heather Hamlin, Colonel~~ *Kimes Sykes* | | *5-8-18* |
| **Correctional Officer Chief's Name (Print)** | **Correctional Officer Chief's Signature** | **Date** |

**REVIEW:** *Attach to Log*

| | | |
|---|---|---|
| Heath Holland, Warden *Thomas Hixton* | | *5/8/18* |
| **Warden's Name (Print)** | **Warden's Signature** | **Date** |

*Exhibit C-Pg 2*

**DETAILS OF INCIDENT (cont.):**

called out for assistance while Inmate Cooper attempted to elude me. Inmate Cooper ran to the first toilet stall and flushed the cellular device down. Officer Joshua Shelton and Officer David Williams entered the bathroom area instructing Inmate Cooper to cease his actions. Inmate Cooper failed to comply with orders given and took an aggressive stance. Inmate Cooper then made advanced movements towards Officer Shelton and Officer Williams at which time they redirected him to the ground. Lieutenant William Thigpen and Captain Melanie Martin entered and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Lieutenant Thigpen then escorted me out of the dormitory to the medical department for evaluation and treatment. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Shift Supervisor instructed me to submit this report.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

**REVIEW (cont.):**

**REVIEW (cont.):**

Exhibit C-Pg 3

DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| | |
|---|---|
| Reporting Institution: Jefferson Correctional Institution | Incident Report Number: 208-103-07606 |
| Reporting Employee: Anthony Roe, Sergeant | PREA Number: |
| Employee ID Number: ▮ | Date of incident: 04/13/2018 |
| Person(s) Involved: Inmate Cooper, Gregory DC# T57324 | Time of incident: 10:49am |
| Major Kenneth Stephens - ▮ | Witness (es): |

| | |
|---|---|
| Control Room Log Entry Made: ☐ Yes ☒ No | Disciplinary Report Initiated: ☒ Yes ☐ No |
| Inmate Placed in Confinement: ☒ Yes ☐ No | Work Order Initiated: ☐ Yes ☐ No |
| Duty Warden Notified: ☒ Yes ☐ No  Time: 10:56a | MINS Initiated: ☐ Yes ☐ No |
| EAC Notified: ☒ Yes ☐ No  Time: 11:21a | Duty Officer Name: Knowles |
| Supporting Documents Attached  Yes | |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, while assigned as the Canine Officer, I, Sergeant Anthony Roe was present in D2 Dormitory assisting with a search of the bedding area, I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory. Officer David Williams and Officer Joshua Shelton entered the bathroom area observed Inmate Cooper, Gregory DC# T57324 attempting to elude Sergeant Charles McCoy, Officer Williams and Officer Shelton gave Inmate Cooper several orders to cease his actions at that time Inmate Cooper turned towards them in an aggressive manner and attempted to charge them, At approximately 10:50 am, Officer Williams and Officer Shelton grasped Inmate Cooper and redirecting him to the ground. Once Officer Williams and Officer Shelton gained control restraints were applied and Inmate Cooper was assisted to a standing position and escorted out of the dormitory. During the escort, Major Kenneth Stephens and I then relieved Officer Williams and Officer Shelton from the escort of Inmate Cooper, Inmate Cooper was resistant and began pulling away from Major Stephens and myself. Inmate Cooper was given several verbal orders to cease his actions. Inmate Cooper refused to comply with orders given at which time Major Stephen and myself

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Anthony Roe, Sergeant | _Sgt. A. Roe_ | 04/13/2018 |
| Reporting Employee's Name (Print) | Reporting Employee's Signature | Date |

Shift Supervisor/ Department Head

**COMMENT:**

Supplemental Incident Report, Forwarded to the Chief of Security for further review.

| | | |
|---|---|---|
| Barbara Brown, Captain | _signature_ | 04/13/2018 |
| Shift Supervisor's/ Department Head's Name (Print) | Shift Supervisor's Signature | Date |

**REVIEW:** _Refer to DR.210 Submitted by Officer J. Shelton for Comments_

| | | |
|---|---|---|
| ~~Heather Hamlin, Colonel~~ _Kenneth Stokes_ | _signature_ | 5-3-18 |
| Correctional Officer Chief's Name (Print) | Correctional Officer Chief's Signature | Date |

**REVIEW:** _forward to cof_

| | | |
|---|---|---|
| Heath Holland, Warden _Thomas Reams_ | _signature_ | 5/4/18 |
| Warden's Name (Print) | Warden's Signature | Date |

_Exhibit C - Pg 4_

| | |
|---|---|
| DC6-210 (Effective ) | Incorporated by Reference in Rule 33-602.210, F.A.C.  Page 1 of 2 |

**DETAILS OF INCIDENT (cont.):**

redirected Inmate Cooper to the ground. Inmate Cooper then ceased his disruptive and resistant behavior and was assisted to a standing position. Officer Shelton relieved Major Stephens from the escort. At approximately 10:55 am, Officer Shelton and I entered the Medical Triage Room located in H Dormitory. At approximately 10:58 am, Nurse C. Cooper, LPN entered the Triage Room and the post use of force medical examination commenced. At approximately 10:59 am, Sergeant Isaac Redding and Officer Dylan Morgan relieved Officer Shelton and myself of the escort of Inmate Cooper. The Shift Supervisor was notified and instructed me to submit this report. ███████████████████████████████████████████████ Only the minimum amount of force was used in this incident.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

DEPARTMENT OF CORRECTIONS

**INCIDENT REPORT**

| | |
|---|---|
| Reporting Institution: | Jefferson Correctional Institution |
| Reporting Employee: | David Williams, Officer |
| Employee ID Number: | ▇ |
| Person(s) Involved: | Inmate Cooper, Gregory DC# T57324 |
| | Officer Joshua Shelton - ▇ |

| | |
|---|---|
| Incident Report Number: | 2018-103-0760A |
| PREA Number: | |
| Date of incident: | 04/13/2018 |
| Time of incident: | 10:49am |
| Witness (es): | |

| | | |
|---|---|---|
| Control Room Log Entry Made: | ☐ Yes ☒ No | |
| Inmate Placed in Confinement: | ☒ Yes ☐ No | |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 10:56a | |
| EAC Notified: | ☒ Yes ☐ No Time: 11:21a | |
| Supporting Documents Attached | Yes | |

| | |
|---|---|
| Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Work Order Initiated: | ☐ Yes ☒ No |
| MINS Initiated: | ☒ Yes ☐ No |
| Duty Officer Name: | Knowles |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, while assigned as the Maintenance Officer, I, Officer David Williams was present in D2 Dormitory assisting with a search of the bedding area. I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory. Officer Joshua Shelton and I entered the bathroom area observed Inmate Cooper, Gregory DC# T57324 attempting to elude Sergeant McCoy. Officer Shelton and I gave Inmate Cooper several orders to cease his actions at that time Inmate Cooper turned towards us in an aggressive manner and attempted to charge us. At approximately 10:50 am, Officer Shelton and I then grasped Inmate Cooper and redirecting him to the ground. Once on the floor Inmate Cooper continued his combative behavior and physically resisting us. Once Officer Shelton and myself gained control of Inmate Cooper restraints were applied and we assisted Inmate Cooper to a standing position and escorted Inmate Cooper out of the dormitory. During the escort Sergeant Anthony Roe and Major Kenneth Stephens then relieved Officer Shelton and myself from the escort of Inmate Cooper. The Shift Supervisor was notified and instructed me to submit this report. ▇▇▇▇▇▇▇ Only the minimum amount of force

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| David Williams, Officer | _[signature]_ | 04/13/2018 |
| Reporting Employee's Name (Print) | Reporting Employee's Signature | Date |

**Shift Supervisor/ Department Head**

**COMMENT:**

Supplemental Incident Report. Forwarded to Chief of Security for further review.

| | | |
|---|---|---|
| Barbara Brown, Captain | _[signature] B._ | 04/13/2018 |
| Shift Supervisor's/ Department Head's Name (Print) | Shift Supervisor's Signature | Date |

**REVIEW:** Refer to D6-210 submitted by Ofcr Shelton for Concurr

| | | |
|---|---|---|
| Heather Hamlin, Colonel _Kenneth Snyder_ | _[signature]_ | 5-3-18 |
| Correctional Officer Chief's Name (Print) | Correctional Officer Chief's Signature | Date |

**REVIEW:** Attach PD cat

| | | |
|---|---|---|
| Heath Holland, Warden _Thomas Reimer_ | _[signature]_ | 5/8 |
| Warden's Name (Print) | Warden's Signature | Date |

| | | |
|---|---|---|
| DC6-210 (Effective ) | Incorporated by Reference in Rule 33-602.210, F.A.C. | Page 1 of 2 |

Ex. c. Pg 6

**DETAILS OF INCIDENT (cont.):**

was used in this incident.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

Ex. C. Pg 7

**DEPARTMENT OF CORRECTIONS**

**INCIDENT REPORT**

| | |
|---|---|
| **Reporting Institution:** | Jefferson Correctional Institution |
| **Reporting Employee:** | Shanita Cooley, Officer |
| **Employee ID Number:** | ▇▇▇▇ |
| **Person(s) Involved:** | Inmate Cooper, Gregory DC# T57324 |

| | |
|---|---|
| **Incident Report Number:** | 2018-103-0760 F |
| **PREA Number:** | |
| **Date of incident:** | 04/13/2018 |
| **Time of incident:** | 10:49am |
| **Witness (es):** | |

| | | |
|---|---|---|
| Control Room Log Entry Made: | ☐ Yes ☒ No | |
| Inmate Placed in Confinement: | ☒ Yes ☐ No | |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 10:56a | |
| EAC Notified: | ☒ Yes ☐ No Time: 11:21a | |
| Supporting Documents Attached | Yes | |

| | |
|---|---|
| Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Work Order Initiated: | ☐ Yes ☒ No |
| MINS Initiated: | ☒ Yes ☐ No |
| Duty Officer Name: | Knowles |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, I, Officer Shanita Cooley was present in D Dormitory Officer's Station, I was assisting with a search of D2 Dormitory, I observed Inmate Cooper, Gregory DC# T57324 strike Sergeant Charles McCoy in the shower area of D2 Dormitory, I initiated the Incident Command System requesting additional staff. Officer David Williams and Officer Joshua Shelton entered the bathroom area observed Inmate Cooper attempting to elude Sergeant McCoy. Officer Williams and Officer Shelton gave Inmate Cooper several orders to cease his actions at that time Inmate Cooper turned towards them in an aggressive manner and attempted to charge them. At approximately 10:50 am, Officer Williams and Officer Shelton redirected Inmate Cooper to the ground. Inmate Cooper continued his combative behavior and physically resisting them. Officer Williams and Officer Shelton gained control of Inmate Cooper and applied restraints. Inmate Cooper was assisted to a standing position and escorted out of the dormitory. The Shift Supervisor was notified and instructed me to submit this report.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Shanita Cooley, Officer | _Shanita R-Cooley_ | 04/13/2018 |
| Reporting Employee's Name (Print) | Reporting Employee's Signature | Date |

**Shift Supervisor/ Department Head**

**COMMENT:**

Supplemental Incident Report, Forwarded to the Chief of Security for further review.

| | | |
|---|---|---|
| Barbara Brown, Captain | _signature_ | 04/13/2018 |
| Shift Supervisor's/ Department Head's Name (Print) | Shift Supervisor's Signature | Date |

**REVIEW:** _Refer to GC6:uc observed by officer Shelton for Command_

| | | |
|---|---|---|
| Heather Hamlin, Colonel | _Kings Styles_ | 5-3-18 |
| Correctional Officer Chief's Name (Print) | Correctional Officer Chief's Signature | Date |

**REVIEW:** _Attach to use_

| | | |
|---|---|---|
| Heath Holland, Warden | _Thomas Harris_ | 5/6/18 |
| Warden's Name (Print) | Warden's Signature | Date |

EX. C - Pg 8

DC6-210 (Effective )          Incorporated by Reference in Rule 33-602.210, F.A.C.          Page 1 of 2

**DETAILS OF INCIDENT (cont.):**

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

**REVIEW (cont.):**

**REVIEW (cont.):**

Ex. C-pg9

# DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

**Reporting Institution:** Jefferson Correctional Institution   **Incident Report Number:** 2018-103-0760A

**Reporting Employee:** Shannon Broxsie, Officer   **PREA Number:** _____

**Employee ID Number:** ▮▮▮   **Date of Incident:** 04/13/2018

**Person(s) Involved:** Inmate Cooper, Gregory DC# T57324   **Time of incident:** 10:49am

Officer David Williams - ▮▮▮   **Witness (es):** _____

Officer Joshua Shelton - ▮▮▮

Control Room Log Entry Made: ☐ Yes ☒ No       Disciplinary Report Initiated: ☒ Yes ☐ No
Inmate Placed in Confinement: ☒ Yes ☐ No       Work Order Initiated: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 10:56a   MINS Initiated: ☒ Yes ☐ No
EAC Notified: ☒ Yes ☐ No Time: 11:21a       Duty Officer Name: Knowles
Supporting Documents Attached: Yes

### DETAILS OF INCIDENT:

On April 13, 2018 at approximately 10:49 am, while assigned as the Wellness Officer, I, Officer Shannon Broxsie was present in D2 Dormitory assisting with a search of the bedding area and removal of additional linens and winter jackets. I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory. Officer David Williams and Officer Joshua Shelton entered the bathroom area and observed Inmate Cooper, Gregory DC# T57324 attempting to elude Sergeant McCoy. Officer Williams and Officer Shelton gave Inmate Cooper several orders to cease his actions without results. At approximately 10:50 am, Officer Williams and Officer Shelton then grasped Inmate Cooper and redirecting him to the ground due to his aggressive and combative behavior. Once Officer Williams and Officer Shelton gained control of Inmate Cooper, restraints were applied, then they assisted Inmate Cooper to a standing position and escorted him out of the dormitory. I was then instructed to retrieve a handheld camera and prepare it for post use of force documentation on Inmate Cooper. I entered H Dormitory and retrieved a handheld camera as instructed. I inspected the camera and it appeared to be operable. When I attempted to initiated the camera the battery life depleted rendering the camera inoperable. I then

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Shannon Broxsie, Officer   SBroxsie   04/13/2018
**Reporting Employee's Name (Print)**   **Reporting Employee's Signature**   **Date**

Shift Supervisor/ Department Head

**COMMENT:**

As noted above, Supplemental Incident Report, Officer Broxsie conducted an inspection of the handheld camera however when the camera was initiated the battery life depleted and an additional battery was retrieved. Once the battery was replaced post use of force documentation commenced. During the post use of force video documentation, the handheld camera did not record the time or date on the video documentation. Due to the time discrepancy on the handheld camera the times for the incident were derived from the fixed wing camera operating system. There was a one hour time discrepancy on the fixed wing camera operating system. Forwarded to the Chief of Security for further review.

Barbara Brown, Captain   04/13/2018
**Shift Supervisor's/ Department Head's Name (Print)**   **Shift Supervisor's Signature**   **Date**

**REVIEW:**

_There was a delay in the initial recording, and the handheld video camera this was due to an operational error. Officer Broxsie was counseled with in regard to this issue. Because the DC6-210 submitted by Officer Shelton had additional comments_

Heather Hamlin, Colonel   Karen Stephens   5-3-18
**Correctional Officer Chief's Name (Print)**   **Correctional Officer Chief's Signature**   **Date**

**REVIEW:**

_Attach to unit_

Heath Holland, Warden   Thomas Reams   5/8
**Warden's Name (Print)**   **Warden's Signature**   **Date**

Ex C-pg 10

retrieved another camera battery and returned back to the vestibule of H Dormitory. At approximately 11:02 am, I initiated the handheld camera as Captain Barbara Brown gave a brief synopsis of events leading up to the use of force on Inmate Cooper. Inmate Cooper was present in the medical triage room receiving a medical examination. Upon the completion of the medical examination Inmate Cooper was escorted to a shower cell in H1 Wing and secured within for the purpose of the strip search. Upon the conclusion of the strip search Inmate Cooper was removed from shower cell and escorted to cell H1-103 where he was secured within and restraints removed without further incident. Captain Brown then gave a brief closing statement and camera operations ceased at approximately 11:24 am. The Shift Supervisor was notified and instructed me to submit this report.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

Ex. C. Pg 11

DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

**Reporting Institution:** Jefferson Correctional Institution

**Incident Report Number:** 2018-103-0760G

**Reporting Employee:** Vekeisha Johnson, Officer

**PREA Number:**

**Employee ID Number:** ███

**Date of incident:** 04/13/2018

**Person(s) Involved:** Inmate Cooper, Gregory DC# T57324

**Time of incident:** 10:49am

**Witness (es):**

| | | | | | | |
|---|---|---|---|---|---|---|
| Control Room Log Entry Made: | ☐ Yes | ☒ No | | Disciplinary Report Initiated: | ☒ Yes | ☐ No |
| Inmate Placed in Confinement: | ☒ Yes | ☐ No | | Work Order Initiated: | ☐ Yes | ☒ No |
| Duty Warden Notified: | ☒ Yes | ☐ No  Time: 10:56a | | MINS Initiated: | ☒ Yes | ☐ No |
| EAC Notified: | ☒ Yes | ☐ No  Time: 11:21a | | Duty Officer Name: | Knowles | |
| Supporting Documents Attached | Yes | | | | | |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, while assigned as D Dormitory Housing Officer, I, Officer Vekeisha Johnson was present in D2 Dormitory Dayroom. I was monitoring the inmate assigned to D2 Dormitory while a search of the bedding area was conducted. I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory and observed Inmate Cooper, Gregory DC# T57324 attempting to evade him. I responded to the bathroom area of the dormitory. Officer Joshua Shelton and Officer David Williams also responded and giving Inmate Cooper several verbal orders to cease his actions without results. Inmate Cooper attempted to charge them. Officer Shelton and Officer Williams redirected Inmate Cooper to the ground. The inmates in the Dayroom starting getting louder. I responded back to the Dayroom and gave them several verbal orders to cease their actions without results. Captain Melanie Martin stepped into the Dayroom and counseled with the inmates. The inmates ceased their actions. The Shift Supervisor instructed me to submit this report.

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

Vekeisha Johnson, Officer
**Reporting Employee's Name (Print)**          *Reporting Employee's Signature*          04/13/2018   **Date**

**Shift Supervisor/ Department Head**

**COMMENT:**

Supplemental Incident Report, Forwarded to the Chief of Security for further review.

Barbara Brown, Captain
**Shift Supervisor's/ Department Head's Name (Print)**     *Shift Supervisor's Signature*     04/13/2018   **Date**

**REVIEW:**

*for refer to Rpt 6-2ic submitted by Officer J. Shelton for comment*

Heather Hamlin, Colonel
**Correctional Officer Chief's Name (Print)**     *Correctional Officer Chief's Signature*     *3-1E*   **Date**

**REVIEW:**

*Attach to unit*

Heath Holland, Warden
**Warden's Name (Print)**     *Warden's Signature*     5/3/18   **Date**

*Ex. C-Pg 12*

DC6-210 (Effective )     Incorporated by Reference in Rule 33-602.210, F.A.C.          Page 1 of 2

**DETAILS OF INCIDENT (cont.):**

**SHIFT Supervisor/ Department Head**

**REVIEW (cont.):**

**REVIEW (cont.):**

EX. C.~ Pg 13

DEPARTMENT OF CORRECTION

## INCIDENT REPORT

| | |
|---|---|
| **Reporting Institution:** Jefferson Correctional Institution | **Incident Report Number:** 2018-103-0760 |
| **Reporting Employee:** Joshua Shelton, Officer | **PREA Number:** |
| **Employee ID Number:** ▮▮▮ | **Date of incident:** 04/13/2018 |
| **Person(s) Involved:** Inmate Cooper, Gregory DC# T57324 | **Time of incident:** 10:49am |
| Officer David Williams - ▮▮▮ | **Witness (es):** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Control Room Log Entry Made: | ☐ Yes | ☒ No | | Disciplinary Report Initiated: | ☒ Yes | ☐ No |
| Inmate Placed in Confinement: | ☒ Yes | ☐ No | | Work Order Initiated: | ☐ Yes | ☒ No |
| Duty Warden Notified: | ☒ Yes | ☐ No Time: 10:56a | | MINS Initiated: | ☒ Yes | ☐ No |
| EAC Notified: | ☒ Yes | ☐ No Time: 11:21a | | Duty Officer Name: | Knowles | |
| Supporting Documents Attached | Yes | | | | | |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, while assigned as the Canine Officer, I, Officer Joshua Shelton was present in D2 Dormitory assisting with a search of the bedding area. I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory. Officer David Williams and I entered the bathroom area observed Inmate Cooper, Gregory DC# T57324 attempting to elude Sergeant McCoy. Officer Williams and I gave several orders to cease his actions at that time Inmate Cooper turned towards us in an aggressive manner and attempted to charge us. At approximately 10:50 am, Officer Williams and I then grasped Inmate Cooper and redirecting him to the ground. Once on the floor Inmate Cooper continued his combative behavior and physically resisting us. Once Officer Williams and myself gained control of Inmate Cooper restraints were applied and we assisted Inmate Cooper to a standing position and escorted Inmate Cooper out of the dormitory. During the escort Sergeant Anthony Roe and Major Kenneth Stephens then relieved Officer Williams and myself from the escort of Inmate Cooper. Inmate Cooper was resistant and began pulling away from Sergeant Roe and Major Stephens. Inmate Cooper was given several verbal orders to cease his actions. Inmate Cooper

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Joshua Shelton, Officer | _[signature]_ | 04/13/2018 |
| Reporting Employee's Name (Print) | Reporting Employee's Signature | Date |

**Shift Supervisor/ Department Head**

**COMMENT:**

As noted above. Sergeant McCoy yelled for assistance due to being assaulted by Inmate Cooper after he attempted to recover a cellular device that Inmate Cooper had concealed. Inmate Cooper attempted to elude staff and dispose of the cellular device. Inmate Cooper was unreceptive to all verbal orders which resulted in the use of force. The incident occurred in an area that no fixed wing camera systems are available. During the escort of Inmate Cooper, he was still physically resistant at which time he attempted to pull away from the escorting staff members. Sergeant Anthony Roe and Major Kenneth Stephens gave him several verbal orders to cease his actions without results. Inmate Cooper was redirected to the ground. Inmate Cooper ceased his actions and all force ceased. Officer Shannon Broxsie was instructed to retrieve handheld camera and prepare it for operation. Officer Broxsie did as instructed and

| | | |
|---|---|---|
| Barbara Brown, Captain | _[signature]_ | 04/13/2018 |
| Shift Supervisor's/ Department Head's Name (Print) | Shift Supervisor's Signature | Date |

**REVIEW:**

_[handwritten]_ I reviewed this by Colonel H Hanley on 4/17/18. I have reviewed this report, all documentation, and all force provided. Force was utilized in order to cease the weapon behavior and report compliance to handheld camera, and for Inmate Cooper and to bring him into compliance at all levels. Staff was in compliance at all perfect with 33-602-210. However there was a delay in the handheld being retrieved due to operator error, officer Broxsie has been counseled with it's operation of Handheld Camera operation. Forced reviewed for Review

| | | |
|---|---|---|
| Heather Hamlin, Colonel | _[signature]_ | 5-3-18 |
| Correctional Officer Chief's Name (Print) | Correctional Officer Chief's Signature | Date |

**REVIEW:**

_[handwritten]_ The Inmate reviewed this use and it appears to be in compliance with the use policy

| | | |
|---|---|---|
| Heath Holland, Warden | _[signature]_ | 5/3/18 |
| Warden's Name (Print) | Warden's Signature | Date |

| | | |
|---|---|---|
| DC6-210 (Effective ) | Incorporated by Reference in Rule 33-602.210, F.A.C. | Page 1 of 2 |

EX. C. - Pg 14

**DETAILS OF INCIDENT (cont.):**

refused to comply with orders given at which time Sergeant Roe and Major Stephens redirected Inmate Cooper to the ground. Inmate Cooper then ceased his disruptive and resistant behavior and was assisted to a standing position. I relieved Major Stephens from the escort. At approximately 10:55 am, Sergeant Roe and I entered the Medical Triage Room located in H Dormitory. At approximately 10:58 am, Nurse C. Cooper, LPN entered the Triage Room and the post use of force medical examination commenced. At approximately 10:59 am, Sergeant Issac Redding and Officer Dylan Morgan relieved Sergeant Roe and I of the escort of Inmate Cooper. The Shift Supervisor was notified and instructed me to submit this report. ██████████████████████████████ ████████████████████. Only the minimum amount of force was used in this incident.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

initiated handheld for post use of force documentation. Inmate Cooper was given a post use of force medical examination with injuries noted. Upon the completion of the medical examination Inmate Cooper was placed in a spit shield. Inmate Cooper was then escorted to a shower cell and strip search conducted. Inmate Cooper was placed on property restrictions and escorted to cell H1-103 where he was secured within without further incident. Warden Heath Holland as well as Emergency Action Center Duty Officer Knowles was notified and assigned log #2018-04-10132. During the post use of force video documentation, the handheld camera did not record the time or date on the video documentation. Inmate Cooper will receive a disciplinary report for (9-17) disorderly conduct, (1-15) battery or attempted battery on correctional officer, (3-14) unauthorized possession or use of a cellular telephone or any other wireless communication device, or any components or peripherals to such devices, including but not limited to SIM cards, Bluetooth items, batteries, and charging devices; any other technology that is found to be in furtherance of possessing or using a communication device prohibited under Section 944.47(1)(a)6, F.S., (3-7) possession of aromatic stimulants or depressants, such as paint thinner, glue, toluene, etc. and (4-3) being in unauthorized area, including housing, job, or any other assigned or designated area. MINS report submitted. Forwarded to the Chief of Security for further review.

Ex. C. Pg 15

DEPARTMENT OF CORRECTION

## INCIDENT REPORT

| | |
|---|---|
| **Reporting Institution:** Jefferson Correctional Institution | **Incident Report Number:** 2018-103-0760C |
| **Reporting Employee:** Kenneth Stephens, Major | **PREA Number:** |
| **Employee ID Number:** ▓▓▓▓ | **Date of incident:** 04/13/2018 |
| **Person(s) Involved:** Inmate Cooper, Gregory DC# T57324 | **Time of incident:** 10:49am |
| Sergeant Anthony Roe - ▓▓▓▓ | **Witness (es):** |

| | | | | | |
|---|---|---|---|---|---|
| Control Room Log Entry Made: | ☐ Yes | ☒ No | Disciplinary Report Initiated: | ☒ Yes | ☐ No |
| Inmate Placed in Confinement: | ☒ Yes | ☐ No | Work Order Initiated: | ☐ Yes | ☒ No |
| Duty Warden Notified: | ☒ Yes | ☐ No | Time: 10:56a | MINS Initiated: | ☒ Yes | ☐ No |
| EAC Notified: | ☒ Yes | ☐ No | Time: 11:21a | Duty Officer Name: | Knowles | |
| Supporting Documents Attached | Yes | | | | |

**DETAILS OF INCIDENT:**

On April 13, 2018 at approximately 10:49 am, while assigned as the Chief of Security, I, Major Kenneth Stephens was present in D2 Dormitory assisting with a search of the bedding area. I heard Sergeant Charles McCoy yelling for help from the bathroom area of D2 Dormitory. Officer David Williams and Officer Joshua Shelton entered the bathroom area observed Inmate Cooper, Gregory DC# T57324 attempting to elude Sergeant McCoy. Officer Williams and Officer Shelton gave Inmate Cooper several orders to cease his actions at that time Inmate Cooper turned towards them in an aggressive manner and attempted to charge them. At approximately 10:50 am, Officer David Williams and Officer Shelton then grasped Inmate Cooper and redirecting him to the ground. Once Officer Williams and Officer Shelton gained control of Inmate Cooper restraints were applied and they then assisted Inmate Cooper to a standing position and escorted him out of the dormitory. During the escort Sergeant Anthony Roe and I then relieved Officer Williams and Officer Shelton from the escort of Inmate Cooper. Inmate Cooper was resistant and began pulling away from Sergeant Roe and myself. Inmate Cooper was given several verbal orders to cease his actions. Inmate Cooper refused to comply with orders given at which time Sergeant

**I SOLEMNLY SWEAR OR AFFIRM THAT THE ABOVE REPORT IS TRUE AND ACCURATE AS WRITTEN, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, TO THE BEST OF MY KNOWLEDGE.**

| | | |
|---|---|---|
| Kenneth Stephens, Major | _(signature)_ | 04/13/2018 |
| **Reporting Employee's Name (Print)** | **Reporting Employee's Signature** | **Date** |

**Shift Supervisor/ Department Head**

**COMMENT:**

Supplemental Incident Report. Forwarded to the Chief of Security for further review.

| | | |
|---|---|---|
| Barbara Brown, Captain | _(signature)_ | 04/13/2018 |
| **Shift Supervisor's/ Department Head's Name (Print)** | **Shift Supervisor's Signature** | **Date** |

**REVIEW:** _Refer to DC6-210 submitted by Officer J. Shelton for comment_

| | | |
|---|---|---|
| ~~Heather Hamlin, Colonel~~ Kenneth Snyders | _(signature)_ | 5-3-18 |
| **Correctional Officer Chief's Name (Print)** | **Correctional Officer Chief's Signature** | **Date** |

**REVIEW:** _Approved W_

| | | |
|---|---|---|
| Heath Holland, Warden _Thomas Reimers_ | _(signature)_ | 5/5/18 |
| **Warden's Name (Print)** | **Warden's Signature** | **Date** |

_Ex. C - Pg 1_

| | | |
|---|---|---|
| DC6-210 (Effective ) | Incorporated by Reference in Rule 33-602.210, F.A.C. | Page 1 of 2 |

**DETAILS OF INCIDENT (cont.):**

Roe and I redirected Inmate Cooper to the ground. Inmate Cooper then ceased his disruptive and resistant behavior and was assisted to a standing position. Officer Shelton then relieved me from the escort. ████████ Only the minimum amount of force was used in this incident.

**SHIFT Supervisor/ Department Head**

**COMMENT (cont.):**

Ex.C. Pg 14

FLORIDA DEPARTMENT OF HEALTH SERVICES
BACK PAIN PROTOCOL

NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 04/20  Time: 0740  Age: 32  ☑ Sick Call  ☐ EMID

Allergies: NKDA

Current Medications: N/A

Medical Hx: N/A

Hx of back pain/back problems? ☐ No ☐ Yes → what was the problem/diagnosis?
What treatment did patient receive for previous back pain? Prednisone x 10 days, Ibu

Chief complaint: Anxiety, Back pain

When did current pain begin? 11/5 2018  Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☑ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10

What were you doing (activity) when the pain began? "I was turn down by security"

If back pain is the result of trauma, does patient have any other injuries? ☑ No ☐ Yes → Other injuries:

Description of pain: ☐ Sharp ☑ Aching ☐ Burning ☐ Other:

Location of pain:
| ☐ Cervical region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Thoracic region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Lumbar region | ☑ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Sacral region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

Is pain localized? ☐ No ☑ Yes OR Does pain radiate? ☑ No ☐ Yes, to:

Does pain increase with activity? ☑ No ☐ Yes → what activity?

Are you able to find position of comfort? ☐ No ☑ Yes: "The pain goes away once I get up out of bed

What decreases or relieves the pain? movement

Does pain increase with deep inspiration? ☑ No ☐ Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.

Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☑ No ☐ Yes

Back muscle spasms? ☑ No ☐ Yes

Numbness or tingling in any extremity? ☐ No ☑ Yes → which extremity? gluteus maximus (left)

Is numbness/tingling in extremities? ☑ Intermittent ☐ Constant

Problem with incontinence? ☑ No ☐ Yes → ☐ Bowel ☐ Bladder  Recent weight loss? ☑ No ☐ Yes

Pain with urination? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

Blood in urine? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: 97.1  Pulse: 84  Resp: 18  Blood Pressure: 140/80  O2 sat: 98 %  Weight: 28

3 prev. weights w/dates 269 9/29/20 219 9/29/20 226 10/19

Gait: ☑ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait

Back exam: Swelling noted? ☑ No ☐ Yes → where: _____

Discoloration/bruising noted? ☑ No ☐ Yes → where: _____

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
☐ Heart rate less than 60 or greater than 110
☐ Temperature greater than 100.4°F
☐ weight loss ≥ 10% of body weight in 6 months without trying

☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

T. Zur Heiden, RN
Franklin CI

INMATE NAME: 0-T57324 TM02 05/07/08
COOPER, GREGORY B.
DC#: _____
W/M DOB 03/10/1988 (32)
DATE OF BIRTH _____
INSTITUTION: _

SIGNATURE AND STAMP/ PRINT of person completing

RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)

Page 1 of 2

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

EX-D-Pg 1

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: *NKDA*

| DATE/TIME | |
|---|---|
| 2·11·21 0750 | Chart referred to clinician for the following items: Medical issues: 32 y/o male c̄ chronic backpain. Requesting backbrace and renewal on low bunk pass. |
| | Prescription refills: Naproxen 250mg |
| | Passes: Backbrace low bunk pass |
| | Nurse referring chart: H.Rush, LPN Franklin CI |
| 2/15/2021 0623 | 1) E-record reviewed. Low bunk pass granted due to BMI 35.6 — pt does not meet criteria per pass guidelines 9/30/2019 for backbrace Naproxen filled 1/26/2021 P. Paton, APRN Franklin CI Centurion |
| | Noted 8Smith LPN 2/15/21 @ 1230 T. Smith, LPN Franklin CI Centurion |
| 2/26/2021 1113 | 1) E-case reviewed c̄ Dr Hernandez. D/C MG mu follow c̄ CBC annually. P. Paton, APRN Franklin CI Centurion |
| | Noted 2/26/21 R.Franklin, Franklin CI |

---

T57324 COOPER, GREGORY B.
W/M DOB: 03/10/1988
FRANKLIN CI

_____
_____
_____

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

DC4-701 (Effective 4/8/10)     Incorporated by Reference in Rule 33-602.210

Ex-D-pg3

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
BACK PAIN PROTOCOL

NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date 7/2/2021 Time: 1340 Age: 32   ☑ Sick Call  ☐ EMID
Allergies: NKDA
Current Medications:
Medical Hx: Multiple Fx
Hx of back pain/back problems? ☐ No ☑ Yes → what was the problem/diagnosis? 2018
What treatment did patient receive for previous back pain? Records IN SAMS
Chief complaint: "My low back Hurts"
When did current pain begin? 2yrs pass   Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☑ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
What were you doing (activity) when the pain began? Assault
If back pain is the result of trauma, does patient have any other injuries? ☐ No ☐ Yes → Other injuries:
Assault was to 2018
Description of pain: ☑ Sharp ☐ Aching ☐ Burning ☐ Other:
Location of pain:
　☐ Cervical region      ☐ Left  ☐ Right  ☐ Center (over spinal column)
　☐ Thoracic region      ☑ Left  ☐ Right  ☐ Center (over spinal column)
　☑ Lumbar region        ☑ Left  ☐ Right  ☐ Center (over spinal column)
　☐ Sacral region        ☐ Left  ☐ Right  ☐ Center (over spinal column)
Flank region pain with or without radiation to groin? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No ☑ Yes OR  Does pain radiate? ☑ No ☐ Yes, to:
Does pain increase with activity? ☑ No ☐ Yes → what activity?
Are you able to find position of comfort? ☐ No ☑ Yes: @ times
What decreases or relieves the pain? Movement
Does pain increase with deep inspiration? ☑ No ☐ Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☑ No ☐ Yes
Back muscle spasms? ☑ No ☐ Yes
Numbness or tingling in any extremity? ☑ No ☐ Yes → which extremity?
Is numbness/tingling in extremities: ☐ Intermittent ☐ Constant
Problem with incontinence? ☑ No ☐ Yes → ☐ Bowel ☐ Bladder   Recent weight loss? ☑ No ☐ Yes
Pain with urination? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: 97.4 · Pulse: 82   Resp: 18   Blood Pressure: 142/88   O2 sat: 99 % Weight: 219 #
3 prev. weights w/dates 9/20 219 - 10/19 226 - 4/19 218
Gait: ☑ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted: ☑ No ☐ Yes or where:
Discoloration/bruising noted: ☑ No ☐ Yes or where:

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
　　　　　　　　　　　☐ Heart rate less than 60 or greater than 110
　　　　　　　　　　　☐ Temperature greater than 100.4°F
　　　　　　　　　　　☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

A. Hamlinger, LPN
Franklin CI
Centurion

0-T57324 TM02 05/07/08
COOPER, GREGORY B.
W/M DOB 03/10/1988 (32)   EX: _____

SIGNATURE AND STAMP/ PRINT of person completing form
RN OR CLINICIAN REVIEWER   K. Erickson, RN
　　　　　　　　　　　　　　　Franklin CI

DC4-683S (Revised 6/6/18)

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Ex-D-Pg 4

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
BACK PAIN PROTOCOL

NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 9/9/20  Time: 0950  Age: 32  ☑ Sick Call  ☐ EMID
Allergies: NKDA
Current Medications: N/A
Medical Hx: N/A
Hx of back pain/back problems? ☐ No ☑ Yes → what was the problem/diagnosis? Pt Lumbar chronic back pain
What treatment did patient receive for previous back pain?
Chief complaint: Chronic back pain     Since 2018
When did current pain begin? 2018
What were you doing (activity) when the pain began? Lifting Joys     Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☑ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
If back pain is the result of trauma, does patient have any other injuries? ☑ No ☐ Yes → Other injuries: _____

Description of pain: ☑ Sharp ☑ Aching ☐ Burning ☐ Other: _____
Location of pain:
☐ Cervical region        ☐ Left  ☐ Right  ☐ Center (over spinal column)
☐ Thoracic region        ☐ Left  ☐ Right  ☐ Center (over spinal column)
☑ Lumbar region          ☐ Left  ☐ Right  ☐ Center (over spinal column)
☑ Sacral region          ☐ Left  ☐ Right  ☐ Center (over spinal column)
Flank region pain with or without radiation to groin? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No ☑ Yes OR Does pain radiate? ☑ No ☐ Yes, to: _____
Does pain increase with activity? ☐ No ☑ Yes → what activity? any
Are you able to find position of comfort? ☐ No ☑ Yes: Resting
What decreases or relieves the pain? Naproxen
Does pain increase with deep inspiration? ☑ No ☐ Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☑ No ☐ Yes
Back muscle spasms? ☑ No ☐ Yes
Numbness or tingling in any extremity? ☑ No ☐ Yes → which extremity? _____
Is numbness/tingling in extremities: ☐ Intermittent ☐ Constant
Problem with incontinence? ☑ No ☐ Yes → ☐ Bowel ☐ Bladder
Pain with urination? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.  Recent weight loss? ☐ No ☐ Yes
Blood in urine? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: 97.2  Pulse: 76  Resp: 18  Blood Pressure: BP 150  O2 sat: 48 %  Weight: 219
3 prev. weights w/dates 226 10/7/19, 218 5/10/18, 218 4/24/19
Gait: ☑ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted? ☑ No ☐ Yes → where: _____
Discoloration/bruising noted? ☑ No ☐ Yes → where: _____

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
☐ Heart rate less than 60 or greater than 110
☐ Temperature greater than 100.4°F
☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

INMATE NAME: 0-T57324  TM 01 05/07/08
DC#: _____  COOPER, GREGORY B.
DATE OF BIRTH: W/M DOB 03/10/1988(31)
INSTITUTION: _____

T. Zur Heiden, RN
Franklin CI
SIGNATURE AND STAMP/ PRINT of person completing form

_____
RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Page 1 of 2

Ex-D-Pg 6

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
BACK PAIN PROTOCOL
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 4/14/19  Time: 100  Age: 31  ☒ Sick Call  ☐ EMID
Allergies: NKDA
Current Medications: none
Medical Hx: Chronic Back Pain
Hx of back pain/back problems? ☒ No ☐ Yes → what was the problem/diagnosis? Hx 4/14 Chronic Back pain
What treatment did patient receive for previous back pain?
Chief complaint: "
When did current pain begin? Years   Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☒ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
What were you doing (activity) when the pain began? Daily activities
If back pain is the result of trauma, does patient have any other injuries? ☒ No ☐ Yes → Other injuries: N/A

Description of pain: ☒ Sharp ☐ Aching ☐ Burning ☐ Other:
Location of pain:
| | | |
☐ Cervical region   ☐ Left ☐ Right ☐ Center (over spinal column)
☐ Thoracic region   ☐ Left ☐ Right ☐ Center (over spinal column)
☒ Lumbar region    ☐ Left ☐ Right ☒ Center (over spinal column)
☒ Sacral region    ☐ Left ☐ Right ☒ Center (over spinal column)
Flank region pain with or without radiation to groin? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No ☒ Yes  OR  Does pain radiate? ☒ No ☐ Yes, to:
Does pain increase with activity? ☐ No ☒ Yes → what activity? Movement  N/A
Are you able to find position of comfort? ☒ No ☐ Yes: N/A
What decreases or relieves the pain? "Nothing"
Does pain increase with deep inspiration? ☒ No ☐ Yes   NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☒ No ☐ Yes
Back muscle spasms? ☒ No ☐ Yes
Numbness or tingling in any extremity? ☒ No ☐ Yes → which extremity? N/A
Is numbness/tingling in extremities: ☐ Intermittent ☐ Constant
Problem with incontinence? ☒ No ☐ Yes → ☐ Bowel ☐ Bladder   Recent weight loss? ☒ No ☐ Yes
Pain with urination? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: 97.4  Pulse: 62  Resp: 18  Blood Pressure: 128/83  O2 sat: 100 % Weight: 230
3 prev. weights w/dates 3/21/19, 212  1/18/19, 210  11/10/19, 212
Gait: ☒ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted: ☒ No ☐ Yes → where:
Discoloration/bruising noted: ☒ No ☐ Yes → where: N/A

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
                        ☐ Heart rate less than 60 or greater than 110
                        ☐ Temperature greater than 100.4°F
                        ☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

INMATE NAME: Cooper, Gregory
DC#: T53737  RACE: W  SEX: M                    M. Ramos, RN
DATE OF BIRTH: 8/10/88                          Union CI/Centurion
INSTITUTION: UCI          SIGNATURE AND STAMP/ PRINT of person completing form
                          M. Ramos LPN

DC4-683S (Revised 6/6/18)    RN OR CLINICIAN REVIEWER

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.    Page 1 of 2

EX-D Pg 8

**~~F~~LORIDA DEPARTMENT OF CORRECTION~~S~~**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

---

| SUBJECTIVE: Date: 1/10/19   Time: 1025 - 1035 Age: 30   ☒ Sick Call ☐ EMID |
|---|

Allergies: NKDA
Current Medications: _tylenol_
Medical Hx: NO PMH

Hx of back pain/back problems? ☐ No ☒ Yes → what was the problem/diagnosis? _Ongoing back pain_
What treatment did patient receive for previous back pain? _tylenol, prednisone_
Chief complaint: _back pain_
When did current pain begin? _4/13/18_   Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☒ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
What were you doing (activity) when the pain began? _physical altercation_
If back pain is the result of trauma, does patient have any other injuries? ☒ No ☐ Yes → Other injuries: _N/A_

---

Description of pain: ☒ Sharp ☐ Aching ☐ Burning ☐ Other: _____
Location of pain:

| | | | |
|---|---|---|---|
| ☐ ~~Cervical region~~ | ☐ ~~Left~~ | ☐ ~~Right~~ | ☐ ~~Center (over spinal column)~~ |
| ☐ ~~Thoracic region~~ | ☐ ~~Left~~ | ☐ ~~Right~~ | ☐ ~~Center (over spinal column)~~ |
| ☒ Lumbar region | ☐ ~~Left~~ | ☐ ~~Right~~ | ☐ Center (over spinal column) |
| ☒ Sacral region | ☐ ~~Left~~ | ☐ ~~Right~~ | ☐ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☒ No ☐ ~~Yes → Use "Urinary Symptoms Protocol," DC4-683BB.~~
Is pain localized? ☐ No ☒ Yes OR Does pain radiate? ☐ No ☐ Yes, to: _N/A_
Does pain increase with activity? ☐ No ☒ Yes → what activity? _twisting/turning too fast_
Are you able to find position of comfort? ☐ No ☒ Yes: _laying down_
What decreases or relieves the pain? ① _knee on wall when lying down_
Does pain increase with deep inspiration? ☒ No ☐ ~~Yes~~ NOTE: If inmate has any URI symptoms use
~~"Cold/URI/Influenza Symptoms Protocol," DC4-683U~~ instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☒ No ☐ ~~Yes~~
Back muscle spasms? ☒ No ☐ ~~Yes~~
Numbness or tingling in any extremity? ☐ No ☒ Yes → which extremity? _Hand_
Is numbness/tingling in extremities: ☒ Intermittent ☐ ~~Constant~~
Problem with incontinence? ☒ No ☐ ~~Yes → ☐ Bowel ☐ Bladder~~   Recent weight loss? ☒ No ☐ Yes
Pain with urination? ☒ No ☐ ~~Yes → Use "Urinary Symptoms Protocol," DC4-683BB.~~
Blood in urine? ☒ No ☐ ~~Yes → Use "Urinary Symptoms Protocol," DC4-683BB.~~

---

| OBJECTIVE: Temp: 98.7 Pulse: 88 Resp: 16 Blood Pressure: 121/81   O2 sat: 100 % Weight: 212# |
|---|

3 prev. weights w/dates 1/1/16 9/1/16 4/1/16 _and_ 7/1/17
Gait: ☒ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted: ☒ No ☐ Yes → where: _N/A_
Discoloration/bruising noted: ☒ No ☐ Yes → where: _N/A_

---

| FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION |
|---|

☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
　　　　　　　　　　　　☐ Heart rate less than 60 or greater than 110
　　　　　　　　　　　　☐ Temperature greater than 100.4°F
　　　　　　　　　　　　☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

A. Tucker, RN
INMATE NAME: _Cooper, Gregory_　　　　_(signature)_ Union C.I./Centurion
DC#: _T57324_　RACE: _W_ SEX: _M_　SIGNATURE AND STAMP/ PRINT of person completing form
DATE OF BIRTH: _3/10/88_
INSTITUTION: _UCI_　　　　　　　RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)　　　　　　　　　　　　　　　Page 1 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

EX-D-Pg 10

**FLORIDA DEPARTMENT OF CORRECTIONS**
## Chronological Record of Health Care

Allergies: _NKDA_

| DATE/TIME | |
|---|---|
| 12-19-18 | DOCTORS CLINIC |

T 98.1  P 100  R 18 - F/U Labs- post thrombocytopenic
BP 120/80  O2 O WT 199     Scr1-Back pain

1430   S "F/U labs / back pain"
O   Neao, amb, A1 Ox3
Heart mmm, lungs CTA
Ab soft ⊕ BS, ⊗ tenderness
Bxt full rom, ⊗ tenderness
Chronic mid low back pain "burning sensation"
Pt states steroids helped.
A   ↓ Platelets - increased from May. ⊕ hx of hepatitis.
Probable sciatic pain
P   Tylenol ex; monitor CBC monthly acute - order in 1mo
F/U PRN
E   Pt verbalized understanding.

_____ / J. Putney, ARNP

12.24.18   S: Informal log # 213-1813-0127
1048   received + responded to.
O: Im wants to know what diagnosis
led to him being ordered Prednisone.
A: Back pain.
P: Denied.

K. Minta, HSA
Union/Centurion

| Inmate Name_ COOPER, GREGORY | S- Subjective Data |
|---|---|
| DC#_____ DC# T57324 W/M | O- Objective Data |
| Date of Birth__ DOB: 03/10/1988 | A- Assessment of S and O Data |
| Institution____ | P- Plan |
| | E-Education |

Ex-D- PS #2

# FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 2.11.18 1525 | Incidental Note: |
| | Inmate request received: 11-20-18 |
| | Inmate request responded to: 2.11.18 |
| | K. Minta, HSA |
| | Union/Centurion |
| 12/7/18 | Doctors Clinic: Back Pain |
| 12/7/18 1140 | Dr.'s note! reviewed labs from 12/7/18 Thrombocytopenia - vallor test numbers are low 5/16/18 — PLTS 82 12/7/18 — PLTS 119 Agree to F/u Hepatitis in GBMS by 12/14/18 See CHO. thank. |
| Noted Cont. sched 12/11/18 A. PARRISH, LPN UNION CI | C. Gaudilla, ARNP Union C.I. Centurion |

---

Inmate Name_ COOPER, GREGORY
DC#_____ DC# T57324 W/M
Date of Birth   DOB: 03/10/1988
Institution   Union

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

Ex D Pg 14

**FLORIDA DEPARTMENT OF CORRECTION**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: _12/3/18_  Time: _1019_  Age: _30_  ☒Sick Call  ☐ EMID

Allergies: _NKDA_
Current Medications: _none_
Medical Hx: _thrombocytopenia_
Hx of back pain/back problems? ☐No ☒Yes → what was the problem/diagnosis? _UNKNOWN_
What treatment did patient receive for previous back pain? _prednisone x 10 day_
Chief complaint: _"twist flat PT request Flu after 10 day treatment with prednisone X10 d_
When did current pain begin? _April 2018_  Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☒ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
What were you doing (activity) when the pain began? _daily activities_
If back pain is the result of trauma, does patient have any other injuries? ☒No ☐Yes → Other injuries: _N/A_

Description of pain: ☒Sharp ☐Aching ☐Burning ☐Other: _N/A_
Location of pain:

| | | | |
|---|---|---|---|
| ☐ Cervical region | ☐Left | ☐Right | ☐ Center (over spinal column) |
| ☐ Thoracic region | ☐Left | ☐Right | ☐ Center (over spinal column) |
| ☒Lumbar region | ☐Left | ☐Right | ☐ Center (over spinal column) |
| ☒Sacral region | ☐Left | ☐Right | ☐ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☒No ☐Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐No ☒Yes OR  Does pain radiate? ☐No ☐Yes, to: _N/A_
Does pain increase with activity? ☐No ☒Yes → what activity? _daily activities_
Are you able to find position of comfort? ☐No ☒Yes → _lying down "not for long time"_
What decreases or relieves the pain? _lying down with the Lt knee up._
Does pain increase with deep inspiration? ☒No ☐Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☐No ☒Yes
Back muscle spasms? ☒No ☐Yes
Numbness or tingling in any extremity? ☒No ☐Yes → which extremity? _N/A_
Is numbness/tingling in extremities: ☐Intermittent ☐Constant
Problem with incontinence? ☒No ☐Yes → ☐ Bowel ☐Bladder   Recent weight loss? ☒No ☐Yes
Pain with urination? ☒No ☐Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☒No ☐Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: _92.8_  Pulse: _100_  Resp: _18_  Blood Pressure: _136/94_  O2 sat: _99_ % Weight: _204_   _5'8"_
3 prev. weights w/dates _9/26/18, 204, 9/19/18 204, 8/9/18 200_
Gait: ☒Normal ☐Limping ☐Walks bent over ☐Shuffling gait
Back exam: Swelling noted? ☒No ☐Yes → where:
Discoloration/bruising noted? ☒No ☐Yes → where: _N/A_

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐BP less than 90/60 or greater than 160/100
                        ☒Heart rate less than 60 or greater than 110
                        ☒Temperature greater than 100.4°F
                        ☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

INMATE NAME: _Cooper, Gregory_
DC#: _T52354_ RACE: _W_ SEX _M_
DATE OF BIRTH: _3/10/18_
INSTITUTION: _UCI_

M. Ramos, RN
_M. Ramos RN_
Union CI/Centurion
SIGNATURE AND STAMP/ PRINT of person completing form

RN OR CLINICIAN REVIEWER

_EX-D-P815_

DC4-683S (Revised 6/6/18)

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: _9/19/18_  Time: _1104_  Age: _30_  ☒ Sick Call  ☐ EMID
Allergies: _NKDA_
Current Medications: _none_
Medical Hx: _thrombocytopenia_
Hx of back pain/back problems? ☐ No ☒ Yes → what was the problem/diagnosis? _unknown_
What treatment did patient receive for previous back pain? _none_
Chief complaint: _"I am having consistent back pain"_
When did current pain begin? _"started in April"_ Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☒ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10
What were you doing (activity) when the pain began? _daily activities_
If back pain is the result of trauma, does patient have any other injuries? ☒ No ☐ Yes → Other injuries: ____ _N/A_

Description of pain: ☒ Sharp ☐ Aching ☒ Burning ☐ Other: _N/A_
Location of pain:

| | | | |
|---|---|---|---|
| ☐ Cervical region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Thoracic region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☒ Lumbar region | ☐ Left | ☐ Right | ☒ Center (over spinal column) |
| ☐ Sacral region | ☐ Left | ☐ Right | ☒ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No ☒ Yes **OR** Does pain radiate? ☒ No ☐ Yes, to: _N/A_
Does pain increase with activity? ☐ No ☒ Yes → what activity? _daily activities_
Are you able to find position of comfort? ☐ No ☒ Yes: _lying with the L knee up_
What decreases or relieves the pain? _lying with the L knee up_
Does pain increase with deep inspiration? ☒ No ☐ Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☐ No ☒ Yes
Back muscle spasms? ☒ No ☐ Yes
Numbness or tingling in any extremity? ☒ No ☐ Yes → which extremity? _N/A_
Is numbness/tingling in extremities: ☐ Intermittent ☐ Constant
Problem with incontinence? ☒ No ☐ Yes → ☐ Bowel ☐ Bladder    Recent weight loss? ☒ No ☐ Yes
Pain with urination? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☒ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: _97.7_  Pulse: _71_  Resp: _17_  Blood Pressure: _124 / 81_  O2 sat: _99_ %  Weight: _204_   _5'8"_
3 prev. weights w/dates: _210 2006  210.5/6 215_
Gait: ☒ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted? ☒ No ☐ Yes → where: _N/A_
Discoloration/bruising noted? ☒ No ☐ Yes → where: _N/A_

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
    _N/A_    ☐ Heart rate less than 60 or greater than 110
              ☐ Temperature greater than 100.4°F
              ☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

INMATE NAME: _Cooper Gregory_
DC#: _T54352_  RACE: _W_  SEX: _M_
DATE OF BIRTH: _3/19/18_
INSTITUTION: _UCI_

M. Ramos, RN
_M. Ramos RN_   Union CI/Centurion
SIGNATURE AND STAMP/ PRINT of person completing form

RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)                                         _Ex-D- Pg 17_

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.



EX D-P519

9/19/18   M. Ramos, RN

FLORIDA DEPARTMENT OF CORRECTION
OFFICE OF HEALTH SERVICES
BACK PAIN PROTOCOL
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 8/9/18  Time: 0825  Age: 30  ☒ Sick Call  ☐ EMID
Allergies: NKDA
Current Medications: none
Medical Hx: Thrombocytopenia
Hx of back pain/back problems? ☐ No  ☒ Yes → what was the problem/diagnosis? thrombocytopenia
What treatment did patient receive for previous back pain? unknown
Chief complaint: Back pain
When did current pain begin? 4 month ago  Pain level: ☐0 ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☒7 ☐8 ☐9 ☐10
What were you doing (activity) when the pain began? daily activity
If back pain is the result of trauma, does patient have any other injuries? ☒ No  ☐ Yes → Other injuries: _____

Description of pain: ☒ Sharp  ☐ Aching  ☐ Burning  ☐ Other: _____
Location of pain:

| | | | |
|---|---|---|---|
| ☐ Cervical region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Thoracic region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☒ Lumbar region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☐ Sacral region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No  ☒ Yes  OR  Does pain radiate? ☒ No  ☐ Yes, to: _____
Does pain increase with activity? ☐ No  ☒ Yes → what activity? daily activity
Are you able to find position of comfort? ☐ No  ☒ Yes: lying down
What decreases or relieves the pain? lying down
Does pain increase with deep inspiration? ☒ No  ☐ Yes   NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☒ No  ☐ Yes
Back muscle spasms? ☒ No  ☐ Yes
Numbness or tingling in any extremity? ☒ No  ☐ Yes → which extremity? _____
Is numbness/tingling in extremities? ☐ Intermittent ☐ Constant
Problem with incontinence? ☒ No  ☐ Yes → ☐ Bowel ☐ Bladder   Recent weight loss? ☒ No  ☐ Yes
Pain with urination? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

**OBJECTIVE:** Temp: 98  Pulse: 100  Resp: 17  Blood Pressure: 125/92  O2 sat: 99 %  Weight: 200   5'8"
3 prev. weights w/dates 6/6/21 215  4/23/18 219
Gait: ☒ Normal  ☐ Limping  ☐ Walks bent over  ☐ Shuffling gait
Back exam: Swelling noted: ☒ No  ☐ Yes → where: _____
Discoloration/bruising noted: ☒ No  ☐ Yes → where: _____

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
☐ Heart rate less than 60 or greater than 110
☐ Temperature greater than 100.4°F
☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

INMATE NAME: Cooper, Gregory
DC#: 757324  RACE: W  SEX: M
DATE OF BIRTH: 3/12/88
INSTITUTION: UCI

SIGNATURE AND STAMP/ PRINT of person completing form
M. Ramos, RN
Union CI/Centurion

RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)

EX D-PS20

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Page 1 of 2

FL__IDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
NON-TRAUMATIC JOINT/EXTREMITY PAIN PROTOCOL
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

SUBJECTIVE: Date: _8/9/18_ Time: _0825_ Age: _30_ ☒ Sick Call ☐ EMID

Allergies: _NKDA_
Current Medication/s: _none_
Medical History: _thrombocytopenia_

Do you have Sickle Cell Disease? ☒ No ☐ Yes → Does this joint/extremity pain feel like your usually SCC pain? ☒ No ☐ Yes → assess patient using *Sickle Cell Crisis Protocol*, DC4-683QQ.

Do you have hemophilia? ☒ No ☐ Yes

Have you had a recent tick bite? ☒ No ☐ Yes → when? _____

Chief Complaint (in patient's own words): _Rt hand pain_

Location where pain is the worse: _Rt hand pn_    Does pain radiate? ☒ No ☐ Yes → to: _____

NOTE:
If arm pain extends to neck, jaw, or shoulder and is accompanied by chest pressure or pain, assess pt. using DC4-683E protocol.

If bilateral, non-traumatic ankle swelling is present along with recent h/o chest pain, productive cough, or SOB, assess pt. using DC4-683D protocol.

If pt. is complaining of unilateral calf pain, swelling, or redness, assess pt. using DC4-683PP protocol.

Pain Level: ☒ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10    Initial onset of pain: ☐ Sudden ☐ Gradual

Onset of pain: x _4_ hours / days (months) / years (circle appropriate timeframe)

~~Onset of swelling: x _____ hours / days / months / years (circle appropriate timeframe)~~ OR ☒ No swelling

Recent trauma to painful area? ☒ No ☐ Yes → proceed to appropriate trauma Protocol

Have you had any recent unusual exertion or over use of this extremity (e.g., recently assigned to Laundry)? ☒ No ☐ Yes

Have you ever seen a clinician for this same pain/swelling? ☐ No ☒ Yes →  Most recent date: _6/6/18_ Dx: _thrombocytopen_

Are you able to walk or bear weight on affected leg? ☐ No ☒ Yes ☐ NA

Do you have any numbness or tingling in affected extremity? ☐ No ☒ Yes → ☐ Constant ☒ Intermittent, especially at _____

Are you able to bend and straighten the joint? ☐ No ☒ Yes    Does your joint feel stiff? ☒ No ☐ Yes

Have you lost 10 or more lbs. recently without trying? ☒ No ☐ Yes → last recorded wt. in medical record: _____ Date: _____

Have any noticed any other symptoms since your joint/extremity pain started? (e.g., decreased appetite, feels hot, no energy, etc.)

OBJECTIVE: Temp: _98_ ° Pulse: _100_ Resp: _17_ Blood Pressure: _125_ / _92_ O₂ sat: _99_ % Weight: _200_   _5'8"_
LMP: _N/A_ Blood sugar: _110_ (all patients)  If blood sugar is ≥ 200, assess patient ALSO with DC4-683MM protocol.
3 prev. weights w/dates: _6/6 210_ _5/1 215_ _4/13 219_
Physical assessment of affected joint/extremity:   (compare to corresponding, non-affected area - - i.e., L ankle vs. R ankle)

* Skin color (compare to non-affected side): ☒ Normal skin tone - No difference ☐ Reddened → diameter of reddened area: _____
                                              ☐ Red streaks extending out from affected area
* Skin temp (compare to non-affected side): ☒ No difference ☐ Warmer ☐ Feels hot to touch
* Swelling (compare to non-affected side): ☒ No swelling/pitting noted ☐ Mild swelling /1+ pitting
                                            ☐ Moderate swelling/2+ pitting ☐ Severe swelling/3+pitting ☐ Deep 4+ pitting
* Point tenderness: * ☒ No change in pain level with mild palpation ☐ Pain in affected area increases with mild palpation

INMATE NAME: _Cooper Gregory_
DC#: _T57324_ RACE: _W_ SEX: _M_
DATE OF BIRTH: _3/10/88_
INSTITUTION: _UCI_
DC4-683HH (Revised 6/6/18)

_M. Ramos RN_
SIGNATURE AND STAMP/ PRINT of person completing form
M. Ramos, RN
Union CI/Centurion
_____
RN OR CLINICIAN REVIEWER

Page 1 of 2
EX-D-P523

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**Chronological Record of Health Care**

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 4-23-18 1450 | Enc note: Inmate ambulatory to Sick Call with c/o his eyeglasses being "crushed" s/o assault at previous camp on 4-13-18 before being transferred and wants them replaced. Inmate states jaw pain & ankle pain has resolved. No treatment required. Chart to MD for possible replacement of eyeglasses. Advised to return to sick call prn. Inmate verbalized understanding and was released to security in stable condition. ‎—D Harrell |
| | D. Harrell, RN Union/Centurion |
| 4-24-18 | Inc note: Order written for Xrays and scheduled. ‎—D Harrell RN |
| 5-7-18 0415 | Patient refused CBC c diff, CMP, UA Dip lab draw. t WStevens |
| | W. Stevens, Registered Medical Assistant UCI/Centurion |
| 5/11/18 0900 | Inc note: Cell front to I/m for DC4711A of PE due to above, note patient refused labs. Patient voices I didn't know what that was about. I'm requesting reschedule of labs for PE. Spoke c medical scheduling. PE labs rescheduled for 5/14/2018 and PE rescheduled as well. ‎—K Cooper RN /wrapper RN |
| 5-11-18 0900 | X-RAY COMPLETED Date 5-11-18  K Johnson K. Johnson Medical Records Medical Scheduler Union CI/Centurion |

Inmate Name COOPER, GREGORY BRIAN
DC#  DC# T57324    W/M
Date of Birth  DOB: 03/10/1988
Institution   Jefferson CI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E- Education

EX-D-Pg 25

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**FRACTURE/DISLOCATION/SPRAIN PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 4-23-18  Time: 1330  Age: 30  ☒ Sick Call  ☐ EMID
Chief Complaint: Numbness in Right Hand S/p Assault and ⓇFoot pain
Allergies: NKDA
Current Medications: NONE
Date of last Tetanus Toxoid: 3-4-14
Mechanism of injury (MOI): S/p Assault
Hx of previous dislocations? ☐ No  ☒ Yes → Joint/s involved: 5ᵗʰ MC, 3ʳᵈ Joint finger When? 2014, 2013
Location of pain: Ⓡ pain  Pain level: ☒ 0  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5  ☐ 6  ☐ 7  ☐ 8  ☐ 9  ☐ 10

**OBJECTIVE:** Temp: 98.6  Pulse: 60  Resp: 18  Blood Pressure: 132/87  O2 sat: 98 %  Weight: 214
Pulse distal to injury: ☒ Present  ☐ Absent  ☐ N/A (fingers/toes)  Quality: ☐ Strong  ☐ Moderate  ☐ Weak
Pallor: Color of skin around the injury site: ☒ Pink  ☐ Pale  ☐ White  ☐ Ecchymotic  ☐ Hematoma
Temperature of skin around the injury site: ☐ Warm  ☒ Cool  ☐ Cold
Capillary refill (blanching) test: ☒ Less than 2 seconds  ☐ Greater than 2 seconds
Paresthesia:  Extremity numbness? ☐ No  ☒ Yes   Extremity tingling? ☒ No  ☐ Yes
Paralysis: Is patient able to move affected extremity (i.e., pt. is able to bend elbow, wiggle fingers, etc.)? ☐ No  ☒ Yes
Swelling: ☒ None  ☐ Mild  ☐ Moderate  ☐ Severe
Deformity present: ☒ No  ☐ Yes  If yes, describe:
Skin intact: ☐ No  ☒ Yes →  ☐ Abrasion  ☐ Laceration → Use also "Abrasion/laceration Protocol," DC4-683V/ for appropriate care.
Bleeding: ☒ N/A  ☐ No  ☐ Yes → Use also "Abrasion/Laceration Protocol," DC4-683V for appropriate care.
Additional comments/findings: *Able to wiggle toes on examination, Capillary refill <3 sec on ⓇFoot

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Patient has possible fracture and/or dislocation
☐ Patient has poor color, temperature, or sensation of affected limb.
☐ Bleeding not controlled with 10 minutes of direct pressure.
N/A

**PLAN**
☐ Clinician notified:
☐ Orders from clinician:                                                    Time:
☐ EMS activated as ordered.
☐ Control bleeding with direct pressure for 10 minutes to bleeding site.
☐ Splint joint above and below suspected fracture/dislocation site.
☐ Apply arm sling
☐ Elevate affected limb.
☐ Apply covered ice pack to affected area for 15 – 20 minutes.
☒ Give ibuprofen 200mg 2-3 tablets by mouth for pain OR ☐ acetaminophen 325mg 2 tablets by mouth for pain now
☐ Give T-Dap* 0.5mg IM or Td 0.5cc IM as prescribed by clinician.
☐ Apply ace wrap PRN (wrap distal to proximal, i.e., wrap up toward the heart)
☐ Provide crutches PRN
☐ Recheck affected distal pulse prior to discharge: ☐ Strong  ☐ Moderate  ☐ Weak
☐ Issue Pass:                          ☐ Other:

* If inmate has no record or history of receiving the Tdap vaccine (vaccine released in 2005), then Tdap should be given.
If inmate has a history of receiving the Tdap vaccine, then give the Td vaccine.  At this time, Tdap is licensed for only one lifetime dose per person.

(Continued on back....)

INMATE NAME: Cooper Gregory
DC#: T57324  RACE: W  SEX: M
DATE OF BIRTH  3-10-88
INSTITUTION:  UCI

Ex-D-Pg26

This form is not to be amended, revised, or altered without approval of the Chief of ...

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 4-23-18  Time: 1440  Age: 30  ☒ Sick Call  ☐ EMID

Allergies: NKDA

Current Medications: ① medications

Medical Hx: 5th Mc FX ® HAND, 3rd finger injury ® HAND, Avulsion fx 2nd joint finger

Hx of back pain/back problems? ☒ No  ☐ Yes → what was the problem/diagnosis? _____

What treatment did patient receive for previous back pain?  N/A

Chief complaint: "I am suffering from severe pain in my spine."

When did current pain begin? 4-13-18  Pain level: ☐ 0  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☒ 5  ☐ 6  ☐ 7  ☐ 8  ☐ 9  ☐ 10

What were you doing (activity) when the pain began? SIA ASSAULT

If back pain is the result of trauma, does patient have any other injuries? ☒ No  ☐ Yes → Other injuries: _____

---

Description of pain: ☒ Sharp  ☐ Aching  ☐ Burning  ☒ Other: THROBS

Location of pain:

| | | | |
|---|---|---|---|
| ☐ Cervical region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |
| ☒ Thoracic region | ☐ Left | ☐ Right | ☒ Center (over spinal column) |
| ☒ Lumbar region | ☐ Left | ☐ Right | ☒ Center (over spinal column) |
| ☐ Sacral region | ☐ Left | ☐ Right | ☐ Center (over spinal column) |

Flank region pain with or without radiation to groin? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

Is pain localized? ☐ No  ☒ Yes OR  Does pain radiate? ☒ No  ☐ Yes, to: _____

Does pain increase with activity? ☐ No  ☒ Yes → what activity? "STANDING OR PACING TOO MUCH"

Are you able to find position of comfort? ☒ No  ☐ Yes: _____

What decreases or relieves the pain?  NOTHING

Does pain increase with deep inspiration? ☐ No  ☒ Yes  NOTE: If inmate has any URI symptoms use "Cold/URI/Influenza Symptoms Protocol," DC4-683U instead. ① S/SX OF URI

Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☒ No  ☐ Yes

Back muscle spasms? ☒ No  ☐ Yes

Numbness or tingling in any extremity? ☒ No  ☐ Yes → which extremity? _____

Is numbness/tingling in extremities: ☐ Intermittent  ☐ Constant— N/A

Problem with incontinence? ☒ No  ☐ Yes → ☐ Bowel  ☐ Bladder  Recent weight loss? ☐ No  ☐ Yes

Pain with urination? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

Blood in urine? ☒ No  ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

---

**OBJECTIVE:** Temp 98.6  Pulse: 60  Resp: 18  Blood Pressure: 132/87  O2 sat: 98 %  Weight: 219

Gait: ☒ Normal  ☐ Limping  ☐ Walks bent over  ☐ Shuffling gait

Back exam:  Swelling noted? ☒ No  ☐ Yes → where: _____

Discoloration/bruising noted? ☒ No  ☐ Yes → where: _____

---

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**

☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
  ☐ Heart rate less than 60 or greater than 110
  ☐ Temperature greater than 100.4˚F

☐ Severe back pain

☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities

☐ Back pain which radiates through buttock and down one extremity

---

INMATE NAME: COOPER GREGORY

DC#: T57324  RACE: W  SEX: M

DATE OF BIRTH: 3-10-88

INSTITUTION: UCI

D. Harrell, RN

D. Harrell  Union/Centurion
SIGNATURE AND STAMP/ PRINT of person completing form

_____
RN OR CLINICIAN REVIEWER

DC4-683S (Revised 3/7/17)

Page 1 of 2   EX-D-Pg98

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS
## EMERGENCY ROOM RECORD

**Check all that apply:**  ☒ Inmate   ☐ Employee   ☐ Visitor
☒ Post-Use-of-Force Exam   ☒ Injury   ☒ Physical Altercation

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1055 _____ Time of exam: 1100

Description of occurrence:

PUFE / PCA - Altercation between inmate & staff

Post Use of Chemical Agent Instructions: Shower without soap? ☒ N/A   ☐ Yes   ☐ Refused→☐ educated on importance of showering
☐ Report any difficulty breathing ☐ Remain in upright position ☐ Do Not apply lotion to the skin ☐ Splash cool water to eyes 5-10 minutes

Vital Signs:   Temperature 98.0   Pulse 14   Respiration 20   O2 Sat 98 %   Blood Pressure 148 / 98

Arrived via: ☒ Ambulatory   ☐ Stretcher   ☐ Wheelchair   ☐ Other:_____

Condition on arrival (check all that apply): ☐ Alert   ☐ Oriented x 4 (person, place, time, situation)   ☐ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where? Head / Back

Examination summary:
Discolorations to R face, Abrasion to R face, small laceration to R cheek, small laceration to R brow, small laceration to back of head, Abrasions to R & L back, discoloration to L ear, Abrasion noted to R chest/arm pit, minor laceration to R chest.

Physician notified?   ☐ No   ☒ Yes   Name: Varona _____ Time: 1150
Treatment provided?   ☐ No   ☒ Yes   If yes, describe: Ibuprofen 800mg

Response to Treatment:

Disposition:   ☐ Population   ☒ Confinement   ☐ Infirmary   ☐ Hospital   ☐ Rescue   ☐ Other (explain):

Discharge Instructions and Education:
Carry out Return for worsening symptoms

Health Care Provider's Signature and Stamp: Cooper / Cooper LPN _____ Date/Time: 4/13/18 1100

Reviewing Physician's Signature and Stamp: _____  A. Varona SMD   Jefferson CI   Date/Time: 4/13/18 1400

**Name** Cooper, Greg
**DC#** T57324   Race/Sex W/M
**Date of Birth** 3/10/84
**Institution** Jefferson CI

Inmate Distribution:   White—Health Record
Canary—Inspector General
Pink—Local Requirements

Employee Distribution:   White—Safety Officer/Designee
Canary—Employee Copy
Pink—DESTROY

DC4-701C (Effective 12/12)

EX-D-PG 30

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence  4|13|18

Date injury assessed by medical  4|13|18          Time of occurrence  1035

☐ No injury identified                            Time injury assessed by medical  1100

Description of injury:

Discolorations to Ⓡ Face, Abrasions to Ⓡ Face, small laceration to Ⓡ cheek, small laceration to Ⓛ brow, small laceration to back of head, Abrasions to Ⓛ back + Ⓡ shoulder, Discolorations to Ⓡ ear, small area noted to Ⓛ Chest, minor Abrasions noted to Ⓡ resp't/chest, Abrasions to Ⓡ Back

_Cooper Cooper Ⓛᵐ_
Staff Signature

Inmate Name  Cooper, Greg

DC#  IS 7324          Race/Sex  W/M

Date of Birth  3|10|89

Institution  Jefferson CI  103

This form is not to be amended, revised, or altered without approval by the Director of Health Services Administration.

Copies distribution:  White/Health Record   Canary/Inspector General   Pink/Warden or Asst. Warden

DC4-708 (Revised 10/07)                                        EX-D-Pg31

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence ___4-13-18___          Time of occurrence ___1000___
Date injury assessed by medical ___4-13-18___   Time injury assessed by medical ___1501___

☐ No injury identified

Description of injury:
① Laceration Approx 1cm, ② © cheekbone laceration Approx 4cm, ③ left chin area 1cm ④ Bruised Ear, ⑤ Bruised Elbow ⑥ bruising ⑦ bruising, ⑧ laceration Approx 3cm, ⑨ laceration, ⑩ laceration ⑪ bruised Toe, ⑫ laceration

b. Harrell, RN
Union/Centurion

___Dharrell RN___          ___E·N___
**Staff Signature**                     ___4-16-18___

**Inmate Name** Cooper, Gregory
**DC#** 157342    **Race/Sex** WM
**Date of Birth** 3.10.88                E. L. Toledo,
**Institution** Union CI                        MD
                                    Union CI - Centurion

This form is not to be amended, revised, or altered without
approval by the Director of Health Services- Administration.

Copies distribution:   White/Health Record   Canary/Inspector General   Pink/Warden or Asst. Warden

DC4-708 (Revised 10/07)                              Ex-D-Pg 32

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

**Check all that apply:** ☒ **Inmate**  ☐ **Employee**  ☐ **Visitor**
☐ **Post-Use-of-Force Exam**  ☐ **Injury**  ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1000 approx                    Time of exam: 1702 Union CI VADM Nsg

Description of occurrence: s/p use of force (physical force) d/t assault on staff at Jefferson CI

Post Use of Chemical Agent Instructions: Shower without soap? ☒ N/A  ☐ Yes  ☐ Refused→☐ educated on importance of showering
N/A ☐ Report any difficulty breathing ☒ Remain in upright position ☐ Do Not apply lotion to the skin ☐ Splash cool water to eyes 5-10 minutes

Vital Signs:   Temperature 98.4  Pulse 92  Respiration 20  O2 Sat 100 % Blood Pressure 134/91

Arrived via: ☒ Ambulatory   ☐ Stretcher   ☐ Wheelchair   ☐ Other:

Condition on arrival (check all that apply): ☒ Alert  ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☒ C/O pain? If checked, where? Generalized

Examination summary:
Bruised, left ear, laceration cheekbone approx 4cm, laceration on left forehead approx 1cm, laceration left face (chin area < 1cm. Bruising bilateral back (flank area), bruise on (L)elbow, (L) foot laceration <1cm, right foot laceration <1cm, (L) toe bruising, (R) cheekbone laceration appro 3cm, laceration (R)cheekbone area 1cm,

Physician notified? ☒ No  ☐ Yes   Name:_____   Time:_____

Treatment provided? ☒ No  ☐ Yes   If yes, describe:_____

Response to Treatment:
None provided

Disposition:  ☐ Population  ☒ Confinement  ☐ Infirmary  ☐ Hospital  ☐ Rescue  ☐ Other (explain):

Discharge Instructions and Education:
F/u c sickcall prn

Health Care Provider's Signature and Stamp: D.Harrell RN              Date/Time: 4-13-18 1702
                                           D. Harrell, RN
Reviewing Physician's Signature and Stamp: E.Toledo MD              Date/Time: 4-16-18 0750
                                           E. L. Toledo, MD
                                           Union CI - Centurion

**Name** Cooper Gregory                  Inmate Distribution:  White—Health Record
**DC#** T57324     **Race/Sex** W/M                              Canary—Inspector General
**Date of Birth** 3-10-88                                        Pink—Local Requirements
**Institution** UCI                       Employee Distribution:  White—Safety Officer/Designee
                                                                  Canary—Employee Copy
                                                                  Pink—DESTROY

DC4-701C (Effective 12/12)

Ex-D-Pg33

Incorporated by Reference in Rule 33-602.210, F.A.C.

EX-D- Pg 34

**FLORIDA DEPARTMENT OF CORRECTIONS**
## CLINICIAN'S ORDER SHEET
**USE BALL POINT PEN ONLY–PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE**

| Institution: 113 | Date: 2/26/2021 | Time: 1116 | ☐ Inpatient ☒ Outpatient | Inmate Name: Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm: _____
Diagnosis: _____

| | List Allergies Here |
|---|---|
| STAT — Initial Each Order as Transcribed | NKDH |

① DLC MC, MC labs
② CBC 11/2021 c̄ flu 1-2 wks after v

P. Paton, APRN
Franklin CI
Centurion

| Date/Time Noted: _____ | Nurse Signature/Stamp | Clinician Signature/Stamp | Date/Time: 2/26/2021 1116 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)     Distribution: White Original—Pharmacy     Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
## CLINICIAN'S ORDER SHEET
**USE BALL POINT PEN ONLY–PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE**

| Institution: 113 | Date: | Time: | ☐ Inpatient ☐ Outpatient | Inmate Name: Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm: _____
Diagnosis: _____

| | List Allergies Here |
|---|---|
| STAT — Initial Each Order as Transcribed | NKDH |

Naproxen 750 mg – PO BID PRN #30 X 90 days

VOID

| Date/Time Noted: _____ | Nurse Signature/Stamp | Clinician Signature/Stamp | Date/Time: |
|---|---|---|---|

DC4-714B (Revised 11/7/17)     Distribution: White Original—Pharmacy     Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
## CLINICIAN'S ORDER SHEET
**USE BALL POINT PEN ONLY–PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE**

| Institution: 113 | Date: 2/10/2021 | Time: 1108 | ☐ Inpatient ☒ Outpatient | Inmate Name: Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm: _____
Diagnosis: _____

| | List Allergies Here |
|---|---|
| STAT — Initial Each Order as Transcribed | NKDH |

① CBC, CMP, lipids + HA1 d/w bmes PTC

P. Paton, APRN
Franklin CI
Centurion

| Date/Time Noted: _____ | Nurse Signature/Stamp | Clinician Signature/Stamp | Date/Time: 2/10/2021 1108 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)     Distribution: White Original—Pharmacy     Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

FLORIDA DEPARTMENT OF CORRECTIONS
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: Fra CI    Date: 12/6/21    Time: 0902    ☐ Inpatient  ☐ Outpatient

Inmate Name: Cooper, Gregory
DC#: T57324
Dorm: _____
Diagnosis: _____

List Allergies Here

NKDA

① Prednisone 20 mg po BID x 3 days
② Flexeril 10 mg po QH PRN x 3 days
③ Naproxen 500 mg po BID PRN - #30 tabs x 90 days

Date/Time Noted: 0902
Nurse Signature/Stamp: C. Arroyo LPN  Franklin C.I.
Clinician Signature/Stamp: P. Paton, APRN  Franklin C.I.  Centurion
Date/Time: 12/6/2021 0902

DC4-714B (Revised 11/7/17)
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.
Distribution:  White Original—Pharmacy    Canary—Medical Record

---

FLORIDA DEPARTMENT OF CORRECTIONS
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: Fra CI    Date: 12/1/2020    Time: 1240    ☐ Inpatient  ☒ Outpatient

Inmate Name: Cooper, Gregory
DC#: T57324
Dorm: _____
Diagnosis: _____

List Allergies Here

① Continue c daily dressing changes + packing.

Date/Time Noted: 1325
Nurse Signature/Stamp: T. Smith, LPN  Franklin CI  Centurion
Clinician Signature/Stamp: P. Paton, APRN  Franklin CI  Centurion
Date/Time: 12/1/2020 1240

DC4-714B (Revised 11/7/17)
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.
Distribution:  White Original—Pharmacy    Canary—Medical Record

---

FLORIDA DEPARTMENT OF CORRECTIONS
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

Institution: FCI    Date: 11/28/2020    Time: 1100    ☐ Inpatient  ☐ Outpatient

Inmate Name: Cooper G.
DC#: T57324
Dorm: _____
Diagnosis: _____

List Allergies Here

Pack wound c Iodoform daily

Date/Time Noted: 11/28/2020 1100
Nurse Signature/Stamp: A. Hamlin LPN  Franklin CI  Centurion
Clinician Signature/Stamp: P. Paton, APRN  Franklin CI  Centurion
Date/Time: 11/28/2020 1100

DC4-714B (Revised 11/7/17)
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administrat.
Distribution:  White Original—Pharmacy    Car

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Franklin | Date: 11/27/2020 | Time: 0930 | ☐ Inpatient ☐ Outpatient | Inmate Name Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm _____
Diagnosis: abscess

List Allergies Here
**NKDA**

STAT / Initial Each Order as Transcribed

BACTRIM DS 1 PO BID x 10 days. SUMA

| Date/Time Noted: | Nurse Signature/Stamp K. Erickson, RN Franklin CI | TOPB 11/27/XX K. Erickson, RN | Clinician Signature/Stamp | Date/Time: |
|---|---|---|---|---|

DC4-714B (Revised 11/7/17)
Distribution: White Original—Pharmacy    Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Franklin CI | Date: 10/14/20 | Time: 1035 | ☐ Inpatient ☐ Outpatient | Inmate Name Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm _____
Diagnosis: _____

List Allergies Here
**NKDA**

STAT / Initial Each Order as Transcribed

① Prednisone 70 mg PO on 1st day then decrease by 10 mg PO daily until D/C
② Tapioxer 500 mg PO BID PRN x 90 days (#30)
③ CP checks once a day x 7 days. 7/11. ex 2 wks.

| Date/Time Noted: 1940 | Nurse Signature/Stamp H. Rush, LPN Franklin CI | Clinician Signature/Stamp A. Cortes, MD Franklin CI | Date/Time: OCT 14 2020 1135 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)
Distribution: White Original—Pharmacy    Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: 113 | Date: 5/6/2020 | Time: 1021 | ☐ Inpatient ☒ Outpatient | Inmate Name Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm _____
Diagnosis: _____

List Allergies Here
**NKDA**

STAT / Initial Each Order as Transcribed

① CBC in 6 months
② Enroll in MC to monitor thrombocytopenia
P. Paton, APRN
Franklin CI
Centurion

| Date/Time Noted: | Nurse Signature/Stamp K. Erickson, RN Franklin CI | Clinician Signature/Stamp | Date/Time: 5/6/20 2021 |
|---|---|---|---|

DC4-714B (Revised 11/7/17)
Distribution: White Original—Pharmacy    Canary—Medical Record
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

---

### FLORIDA DEPARTMENT OF CORRECTIONS
### CLINICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Sr CI | Date: 5-10-19 | Time: 09:45 | ☐ Inpatient ☑ Outpatient | Inmate Name Cooper, Gregory |
|---|---|---|---|---|

DC# T57324
Dorm 3|10|88
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

C̄  Ibuprofen 400mg PO BID as needed for pain #30 x90 days
(KOP)

| Date/Time Noted: 5/10/19 1230 | Nurse Signature/Stamp C. Neely LPN  Santa Rosa CI / Annex | Clinician Signature/Stamp D. Fickling, APRN  Santa Rosa CI / Annex | Date/Time: 6/10/19 0945 |
|---|---|---|---|

DC4-714B (Revised 12/20/16)   Distribution: White Original—Pharmacy   Canary—Medical Record

---

### FLORIDA DEPARTMENT OF CORRECTIONS
### CLINICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Union | Date: 7-23-19 | Time: 1:30 | ☐ Inpatient ☐ Outpatient | Inmate Name Cooper (Gregg) |
|---|---|---|---|---|

DC# T57324
Dorm U Dorm
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

Naproxen 500 mg 1 tab PO BID #30

COT

| Date/Time Noted: | Nurse Signature/Stamp ___/ Armstrong Lpn | Clinician Signature/Stamp C. Balbuena, MD  Union CI | Date/Time: 7-23-19 |
|---|---|---|---|

DC4-714B (Revised 12/20/16)   Distribution: White Original—Pharmacy   Canary—Medical Record

---

### FLORIDA DEPARTMENT OF CORRECTIONS
### CLINICIAN'S ORDER SHEET
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: | Date: | Time: | ☐ Inpatient ☑ Outpatient | Inmate Name Cooper Greg |
|---|---|---|---|---|

DC# T57324
Dorm U-Dorm
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

J. Putney, ARNP
Union / Centurion

| Date/Time Noted: | Nurse Signature/Stamp G. WALDEN LPN  UNION CI | Clinician Signature/Stamp | Date/Time: |
|---|---|---|---|

DC4-714B (Revised 12/20/16)   Distribution: White Original—Pharmacy   Canary—Medical Record

**FLORIDA DEPARTMENT OF CORRECTIONS**
**PHYSICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: UNION CI | Date: 5/29/18 | Time: 700 | ☐ Inpatient ☐ Outpatient | Inmate Name: Cooper, Gregory |
|---|---|---|---|---|

DC# T57324

Dorm 114202 L

Diagnosis:

List Allergies Here

NKDA

STAT — Initial Each Order as Transcribed

Schedule pt to see md (↓ platelets) - Scheduled 6/6/2018

E. L. Toledo, MD
Union CI - Centurion

Time Noted: 3/29/18 1045

Nurse Signature/Stamp • Submitted ☒ Reviewed
Dianna Mobley LPN
Union Correctional 1045
Date 5-29-18   Time 1045

Doctor Signature/Stamp: E.L. Toledo MD   5-29-18   0750

Distribution: White Original—Pharmacy   Canary—Medical Record

DC4-714B (9/05)

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**PHYSICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: UCI | Date: 2/4/18 | Time: 0805 | ☐ Inpatient ☒ Outpatient | Inmate Name: Cooper, Gregory |
|---|---|---|---|---|

DC# T57324

Dorm V-DORM

Diagnosis:

List Allergies Here

NKDA

STAT — Initial Each Order as Transcribed

1) X rays C + LSC spine
2) RTC after X rays

E. L. Toledo, MD
Union CI - Centurion

Time Noted: 0805

Nurse Signature/Stamp: D. Harrell, RN
Union/Centurion

Doctor Signature/Stamp: E.L. Toledo MD   2-4-18   0805

Distribution: White Original—Pharmacy   Canary—Medical Record

DC4-714B (9/05)

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**PHYSICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY-PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: WAL | Date: 9/27/17 | Time: 0900 | ☐ Inpatient ☐ Outpatient | COOPER, GREGORY BRIAN |
|---|---|---|---|---|

DC# T57324   W/M

DOB: 03/10/1988

List Allergies Here

NKDA

STAT — Initial Each Order as Transcribed

Nasal otic irrgts NID X 7days (KOP)
NO RF

9/27/17

Time Noted: 0915

Nurse Signature/Stamp: K. SIMMONS, LPN
WALTON CI

Doctor Signature/Stamp: Reviewed by
B. Asprilio, MD
Walton CI

Distribution: White Original—Pharmacy   Canary—Medical Record

DC4-714B (9/05)

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Union | Date: 12/17/18 | Time: 1140 | ☐ Inpatient ☐ Outpatient | Inmate Name: Grazer, Guagon |
|---|---|---|---|---|

DC# _____
Dorm _____
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

Please have inmate FLU + CHO 12/19/18
w. back pain
thrombocytopenia          thanks

A. PARRISH
UNION CI

Gaudilla, ARNP
Union C.I./Centurion

| Date/Time Noted: | Nurse Signature/Stamp | Clinician Signature/Stamp | Date/Time: 12/17/18 1140 |
|---|---|---|---|

DC4-714B (Revised 12/20/16)      Distribution: White Original—Pharmacy      Canary—Medical Record

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: UCI | Date: 12/4/18 | Time: 1530 | ☐ Inpatient ☐ Outpatient | Inmate Name: Grazer, Gauge |
|---|---|---|---|---|

DC# 767352?
Dorm U-Dorm
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

(1) TSH, CMP at next draw
(2) Available to see provider regarding labs (past thrombocytopenia)

J. Putney, ARNP
Union / Centurion

| Date/Time Noted: | Nurse Signature/Stamp  M. Ramos, RN  Union CI/Centurion | Clinician Signature/Stamp | Date/Time: 12/4/18 1530 |
|---|---|---|---|

DC4-714B (Revised 12/20/16)      Distribution: White Original—Pharmacy      Canary—Medical Record

---

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CLINICIAN'S ORDER SHEET**
USE BALL POINT PEN ONLY—PRESS FIRMLY—NO MORE THAN ONE ORDER PER LINE

| Institution: Union | Date: | Time: 1120 | ☐ Inpatient ☐ Outpatient | Inmate Name: |
|---|---|---|---|---|

DC# _____
Dorm U-Dorm
Diagnosis: _____

List Allergies Here

NKDA

STAT / Initial Each Order as Transcribed

| Date/Time Noted: | Nurse Signature/Stamp  G. WALDEN, LPN  UNION CI | Clinician Signature/Stamp | Date/Time:  C. BALBUENA, MD  BAKER CI |
|---|---|---|---|

DC4-714B (Revised 12/20/16)      Distribution: White Original—Pharmacy      Canary—Medical Record

EX D - pg 40

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

| Allergies: | NKDA |
|---|---|

**DATE/TIME**

9-26-18  DOCTORS CLINIC  - *SCRL back pain*
T 97.6  P 97  R 19
BP 127  127  WT 214

Pain on going thru [illegible] to be, help in changing position.
Trunca area + hurts upon palpation

Gen: A&O x3, verbally [illegible]
1/8 mm [illegible] c [illegible]
Head - nrm, no @ no gait
Lungs: CTA x2 w wu
Back: Tenderness upon palpation, ↓ flexion + extension movement
Ext: no [illegible], no edema, palpable pulse
Neuro w/ deficit

Ⓑ  Back pain

①  [illegible]  [illegible]
Prednisone 10 [illegible] @ [illegible] x 10 days

C. BALBUENA, MD
BAKER CI

| Inmate Name | Cooper Gregory |
|---|---|
| DC# | 157324 | Race/Sex | W | M |
| Date of Birth | 3-10-88 | | | |
| Institution | Union Correctional Institution | | | |

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

EX-D-Pg41

**FLORIDA DEPARTMENT OF CORRECTIONS**
## Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 11·02·18 11·50 | Incidental Note: |
| | Inmate request received: 10·29·18 |
| | Inmate request responded to: 11·02·18 |
| | K. Minta |
| | K. Minta, HSA |
| | Union/Centurion |
| 11·02·18 11·53 | S: Informal Grievance log #213-1811-0002 received + responded to. |
| | O: Im states he was supposed to see the doctor for a FU 2 weeks after his last appointment + has not. |
| | A: The provider did not request a FU. Sick call is available should Im have further concerns. |
| | P: Grievance denied. |
| | K. Minta |
| | K. Minta, HSA |
| | Union/Centurion |
| 11·9·18 11·23 | S: Formal Grievance log # 1811-213-029 received + responded to. |
| | O: Im states that he was supposed to FU c provider after 2 weeks of medication. |
| | A: Im seen by PCP on 9·26·18 + Ordered Prednisone x10 days. No FU requested. Im has not accessed sick call regarding concerns. |
| | P: Grievance denied. |
| | K. Minta   K. Minta, HSA |
| | Union/Centurion |

| | | | |
|---|---|---|---|
| Inmate Name | COOPER, GREGORY | | S- Subjective Data |
| DC# | DC# T57324 W/M | | O- Objective Data |
| Date of Birth | DOB: 03/10/1988 | | A- Assessment of S and O Data |
| Institution | Union | | P- Plan |
| | | | E-Education |

EX D- Pg 42

**FLORIDA DEPARTMENT OF CORRECTIONS**
# Chronological Record of Health Care

Allergies: NKDA

| DATE/TIME | |
|---|---|
| 1-2-19 1150 | S: Formal log # 1901-213-004 received + responded to. |
| | O: Inm wants to know what his diagnosis is. |
| | A: Diagnosis is chronic back pain. X-rays completed in May 2018 were normal. Inm informed that sick call is available should he feel that further evaluation is needed. |
| | P: Grievance denied. |
| | K. White |
| | K. Minta, HSA |
| | Union/Centurion |

Inmate Name_____
DC#_____  COOPER, GREGORY
Date of Birth_  DC# T57324  W/M
Institution_____  DOB: 03/10/1988

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

DC4-701 (Effective 4/8/10)     Incorporated by Reference in Rule 33-602.210

FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

EX-D-P543

| Allergies: | NKDA |
|---|---|

| DATE/TIME | | |
|---|---|---|
| 10/14/20 1035 | Review & Clinic Appt / Visit  Temp 97.3 Pulse 82 Resp 18   98'.  B.P. 160/100 Wgt 245.2 | Sick Call Referral |

S. Case of a 33 y/o male pt who refer
has been c̄ low back pain since se
weeks and is not responding to any
OTC analgesics states pain radiates
down to left leg and is about 5-6
denies chest pain, SOB and dry of a
systemic illness. Also denies H/t of Ht

O. GA: A&O×3         HEENT: PERLA, EOMI
HEENT: RRR NO⊕     LUNGS: CTA×2
ABD: SONT BS⊕      EXT: no edema no
low back tender to digital press
and to both active / passive moveme

A. ① Lumbosciatic pain
② elevated BP reading without H/t of H

P. ① Prednisone 70mg PO on 1st day
then decreased by 10 mg PO qd unt
② Naproxen 500 mg PO BID PRN ×90
③ BP checks once a day × 7 days        (#30)
④ F/U in 2wks (with BP checks)

E. Educated about diet, exercise a
meets compliance

Noted
10/14/20 1940
H Rush LPN
Franklin CI

A Cortez MD
Franklin CI

0-T57324 TM02 05/07/08

Inmate Name COOPER, GREGORY B.
DC#_____ W/M DOB 03/10/1988 (32)
Date of Birth_____
Institution_____ FRANKLIN C.I._____

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

FLORI  DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

EX D - Pg 44

Allergies: _NKDA_

| DATE/TIME | |
|---|---|
| 5/1/19 1100 | PPD implant + referral D. Ma R.N. D. Neu ? R.N. |
| 5/6/19 9:45 | In: s/c referrAl - BACK PAIN |
| | 132/78  pulse: 85  resp: 18  temp: 98.4 |
| | wt: 217  ht: 5'8"  O2: 98% |
| | — A.Blagg, MA          A. Bragg<br>Medical Assistant<br>Santa Rosa CI/Annex/WC |
| 5/6/19 | S: 31 yo cm c̄ chronic back is requesting a refill |
| | for naproxen 500mg. low back pain started |
| | back in April 13, 2018. He stated his pain is |
| | 5-6/10. |
| | O: A+O x3, PERRL, nares patent, pharynx pink |
| | lungs CTA (B) Heart S₁S₂, RRR. Abd soft ⊕ BS. |
| | Back full ROM c̄ some tenderness. ⊖ deformity |
| | A: Chronic back pain |
| | P: Instructed I/D/R on back ROM exercises |
| | to take Ibuprofen for pain as needed. |
| | flu via sick call if needed. |
| | [signatures]    C. Neely LPN   Santa Rosa CI / Annex    D. Fickley   D. Fickling, APRN<br>Santa Rosa CI / Annex |

Inmate Name _Leopo Gregory_
DC# _____   Race/Sex _W/M_
Date of Birth _3-10-88_
Institution _____

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

Gregory Cooper T57384
Taylor Correctional Institution
8361 Hampton Springs Rd.
Perry, FL 32348

Exhibits
split
in
both
Envelopes.

APR 18 2022

Clerk
U.S.D.C. Northern District of Florida
Tallahassee, Division.
U.S. Courthouse 111 N. Adams St.
Suite #322
Tallahassee, FL 32301

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION



US POSTAGE
$ 009.25
ZIP 32348
02 4W
0000359797  APR 13 2022